1
2
3
4

RESHMA KAMATH
700 El Camino Real, Suite 120, #1084
Menlo Park, California 94025, United States
Ph.: 650 257 0719
E.: reshmakamath2021@gmail.com
Plaintiff, *In Propria Persona*

5
6
7

IN AND FOR THE UNITED STATES DISTRICT COURT
WESTERN DIVISION

8
9

RESHMA KAMATH, an individual,

CASE NO.:

10

Plaintiff,

COMPLAINT FOR DAMAGES FOR:

11
12

vs.

1. BREACH OF CONTRACT;
2. FRAUD;

13
14
15
16

ITRIA VENTURES, LLC, a Delaware
LLC; AMIT MISHRA, an individual;
BIZ2CREDIT, INC., a New York
Corporation; PATRICK COLE, an
individual with the pseudonym, and DOES
1-10, inclusive;

3. FALSE AND MISLEADING ADVERTISING.
4. BREACH OF FIDUCIARY DUTY;
5. FRAUDULENT LIEN/FRAUDULENT UCC
FILING; AND,
6. DEFAMATION

17

Defendants.

DEMAND FOR JURY TRIAL

18
19
20
21
22
23
24
25
26
27
28

*TO THE HONORABLE COURT, ALL PARTIES, AND ATTORNEYS[S] OF RECORD,
HEREIN:*

---

**COMPLAINT FOR DAMAGES**

COMPLAINT

I.

PARTIES AND JURISDICTION

1.      Plaintiff RESHMA KAMATH ["Plaintiff KAMATH"] is an individual and natural person residing in the state of Arizona.

2.      Plaintiff KAMATH is a lawyer licensed in the State of California. Plaintiff KAMATH is a sole proprietor and operates under the doing business as [d/b/a] LAW OFFICE OF RESHMA KAMATH working only for clients in the State of California and any *pro hac vice* work.

3.      The LAW OFFICE OF RESHMA KAMATH operates with lawyer Reshma Kamath, California Bar No. 333800; 700 El Camino Real, Suite 120, #1084, Menlo Park, California 94025, United States, Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com and has a business checking account affiliated to Plaintiff KAMATH's licensure.

4.      Defendant BIZ2CREDIT, INC. ["BIZ2CREDIT"] is a New York corporation which, per information and belief, has conducted business within California and nationwide at all times relevant hereto. Defendant BIZ2CREDIT advertises on South Asian and Indian television channels in California and nationwide to offer business loans to individuals and organizations.

5.      Defendant ITRIA VENTURES, LLC ["ITRIA"] is a Delaware LLC, and trademark of BIZ2CREDIT. Unbeknownst to Plaintiff KAMATH, on July 5, 2023, Defendant ITRIA filed a false UCC-lien against RESHMA H. KAMATH, and LAW OFFICE OF RESHMA KAMATH.

6.      Defendant PATRICK COLE ["COLE"] is an individual who, per information and belief, has resided and conducted business within the State of New York at all times relevant hereto. It is unclear whether COLE is a pseudonym.

7.      Defendant AMIT MISHRA ["MISHRA"] is an individual who, per information and belief, has resided and conducted business within the State of New York at all times relevant hereto. Unbeknownst to Plaintiff KAMATH, on July 5, 2023, Defendant MISHRA filed a false UCC-lien against RESHMA H. KAMATH, and LAW OFFICE OF RESHMA KAMATH.

8.      Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1-10, inclusive, and for that reason sues said Defendants by such fictitious names. Based on information

and belief, each of the Defendants designated herein as a DOE is legally responsible in some manner for the events and happenings herein referred to, and/or proximately and actually caused injuries and damages to the Plaintiff, as alleged herein. As necessary, and as discovery continues, Plaintiff will file and serve one and/or more amendments to this pleading upon learning the true names and identities of these DOE Defendants.

9.     Venue is proper in this Court, which has jurisdiction over all Defendants for the acts and omissions alleged herein, as the obligations or liabilities arose from within this County.

II.

GENERAL ALLEGATIONS

10.     In May and June 2023, Plaintiff KAMATH was seeking a business loan to expand her law firm and to hire staff due to the gaining traction of her law firm and increasing demands of clientele.

11.     In May 2023, Plaintiff KAMATH had reached out to Defendant BIZ2CREDIT because the latter had advertised on local South Asian and Indian television channels. Plaintiff KAMATH had included her PNC and CHASE bank statements for Defendants to review the incoming revenue. Defendants BIZ2CREDIT and COLE wanted to know the Plaintiff's source of income, and Plaintiff had - only for limited purposes of KYC/AML source of income - authorized defendants to check her business checking account.

12.     In May and June 2023, Defendants had finalized the terms of the agreement of an amount that Defendant BIZ2CREDIT had offered Plaintiff KAMATH in the amount of over $50,000 with an origination fee to defendants.

13.     Defendant COLE, on behalf of Defendant BIZ2CREDIT, e-mailed and telephonically contacted Plaintiff KAMATH.

14.     In June 2023, Defendant BIZ2CREDIT with an individual named Rahul had a funding call with Plaintiff KAMATH.

15.     On June 22, 2023, Plaintiff KAMATH had informed Defendant BIZ2CREDIT that Plaintiff did **not** need the funding until July 12, 2023, and **not to wire** any funding to her. Defendant BIZ2CREDIT and Defendant COLE had agreed.

16.     On July 12, 2023, Plaintiff KAMATH had e-mailed Defendant BIZ2CREDIT and Defendant COLE whether the funding can be extended then.

17.     On July 17, 2023, Plaintiff KAMATH had e-mailed Defendant BIZ2CREDIT and Defendant COLE whether the wire transfer was sent. Defendant COLE had stated the wire was not sent.

18.     On July 24, 2023, Plaintiff KAMATH had informed Defendant BIZ2CREDIT and Defendant COLE that Plainitff did **not** want any funding from Defendant BIZ2CREDIT. Thus, Plaintiff declined any monetary offer. There was **no exchange of monetary sum** between parties thereafter.

19.     On August 2, 2023, Defendant BIZ2CREDIT stated that it could not send the $50,000, but it could send $20,000-$30,000.

20.     On August 3, 2023, Plaintiff KAMATH informed Defendant COLE that it was "odd" that Defendant BIZ2CREDIT was "changing after the funding call" and "reneging on the contract." Any and all of the above conversations were recorded electronically, as well as telephonically with Defendant COLE. It is unclear whether the calls were recorded, and if so, a subpoena will be in process.

21.     Between July 12, 2023 and August 1, 2023, Defendant BIZ2CREDIT stated that it had to verify the bank accounts of Plaintiff KAMATH, to which plaintiff had agreed.

22.     The communication then ceased and ended between Plaintiff KAMATH with Defendant BIZ2CREDIT and Defendant COLE. There was **no communication** between Plaintiff KAMATH with Defendant BIZ2CREDIT and Defendant COLE in July 2023, until the latter part of August 2023.

23.     From the initial e-mail on May 22, 2023 until August 4, 2023, and even thereafter, none of the Defendants had ever informed Plaintiff KAMATH that they had filed a false UCC lien against RESHMA H. KAMATH and business, LAW OFFICE OF RESHMA KAMATH.

24.     On August 30, 2023, Plaintiff KAMATH while searching the CA Secretary of State website, Plaintiff saw that a false UCC lien was filed against her name and that of her business, LAW OFFICE OF RESHMA KAMATH.

25.     Plaintiff KAMATH was stunned to see a UCC-lien against RESHMA H. KAMATH and LAW OFFICE OF RESHMA KAMATH that some creditor had allegedly filed on July 05, 2023 appearing publicly the CA Secretary of State website.

26.     On August 30, 2023, Plaintiff KAMATH contacted CSC Corporation, the registered agent for service of process of the alleged creditor [whose name was not stated on the CA Secretary of State website].

27.     On August 30, 2023, CSC Corporation reached out to Plaintiff KAMATH with the name of the individual and corporation who had filed against RESHMA H. KAMATH.

28.     CSC Corporation e-mailed that the alleged creditor was an individual and corporation, defendant MISHRA and defendant ITRIA, respectively.

29.     Plaintiff KAMATH had **never met, talked to, and/or heard** who the individual and corporation, defendant MISHRA and defendant ITRIA, were. Plaintiff KAMATH had **never** interacted with any such individual and/or organization.

30.     Plaintiff KAMATH contacted via e-mail that individual and corporation, defendant MISHRA and defendant ITRIA, who were non-responsive to the undersigned date.

31.     Plaintiff KAMATH performed an online name and case law search to check who were the defendants MISHRA and ITRIA.

32.     Plaintiff KAMATH, on a hunch, contacted defendant COLE and defendant BIZ2CREDIT about this false lien.

33.     Plaintiff KAMATH was right, and defendant COLE admitted and conceded that defendant BIZ2CREDIT had filed the false lien.

34.     Plaintiff KAMATH informed defendant COLE, agent on behalf of defendant BIZ2CREDIT, that she had **declined** any funding from defendant BIZ2CREDIT; there was no money exchanged between any parties; and thus, defendants have filed a fraudulent and defamatory lien. Thus, Plaintiff KAMATH has informed defendant COLE that the defamatory false lien that defendants fraudulently and maliciously filed against her must be terminated immediately.

35.     Defendant COLE stated he would terminate the lien. It was terminated after some time. However, it was not expunged. It was circulated and seen by several individuals and third parties.

36.     On July 05, 2023, Defendants caused the filing of a fraudulent lien against Plaintiff KAMATH, and her business, LAW OFFICE OF RESHMA KAMATH. Until August 30, 2023, there was no notice from any and all defendants about this false lien.

37.     From July 05, 2023 and on-going, Defendants personally and professionally defamed Plaintiff KAMATH, and her business, LAW OFFICE OF RESHMA KAMATH, because the defendants had filed a fraudulent lien against Plaintiff. Defendants have tarnished the reputation of Plaintiff. Defendants have caused Plaintiff KAMATH to not get other loans that Plaintiff may want to get.

38.     From July 05, 2023 and on-going, Defendants had **never** actually, and/or constructively notified Plaintiff KAMATH, and her business, LAW OFFICE OF RESHMA KAMATH that the defendants had filed a UCC-lien against Plaintiff.

39.     Plaintiff did not have any and all actual, and/or constructive knowledge of such a lien filing during that time-period – until a third-party had informed her.

40.     From May 2023 and on-going, Plaintiff KAMATH and defendants had **never** exchanged any kind of monetary sum in cash, and/or in kind. There was no need to file a lien, because money was **never** exchanged, and there was **never** a debt owed from plaintiff to defendants.

41.     As a direct and proximate result of the actions and omissions of Defendants, Plaintiff has suffered damages in an amount to be proven at trial. Filing a false lien can result in a misdemeanor and/or even a felony charge.

42.     For Defendants, the California Penal Code § 115 PC makes it a criminal offense in California knowingly to file, register, or record a false or forged document in any public office within the state. Doing so is a felony offense that is punishable by up to three years in jail or prison.

43.     For Defendants ITRIA, Delaware enacted the uniform information statement remedy in Del. Code Ann. tit. 6 § 9-518. Delaware enacted the uniform Article 9 remedies for non-compliance in Del. Code Ann. tit. 6 § 9-625. Del. Code Ann. tit. 11 § 877. A person is guilty of offering a false instrument for filing when, knowing that a written instrument contains a false statement or false information, and intending to defraud the State, a political subdivision thereof or another person, the person offers or presents it to a public office or a public servant with the knowledge or belief that it will

be filed with, registered or recorded in or otherwise become a part of the records of the public office or public servant.

44.     Since August 30, 2023, Plaintiff KAMATH has reached out to the attorney for the defendants.

45.     Plaintiff KAMATH has provided Defendants, as well as their attorney, HARRISON over a month to resolve this, but to no avail. The attorney was very uncivil, unprofessional, and retaliatory. The attorney for the defendants has/had not investigated facts, and was not at all amicable in resolving the false UCC lien that his clients had defamatorily and maliciously filed against Plaintiff KAMATH and her law firm.

46.     Thus, Plaintiff KAMATH now seeks legal recourse against the defendants after trying for over a month – even as recent as October 02, 2023, to resolve this out-of-court.

III.

CLAIMS FOR RELIEF

FIRST CAUSE OF ACTION

BREACH OF CONTRACT

[Against All Defendants]

47.     Plaintiff re-pleads, re-alleges, and incorporates via reference each of the preceding paragraphs as though set forth fully herein.

48.     Plaintiff entered into an agreement Defendants according to which, a business loan was to be extended to Plaintiff in the amount of over $50,000 investment with an origination fee and interest.

49.     Plaintiff had never accepted any and all sum of over $50,000 with an origination fee, because Defendants reneged on the contract, and after signing of the contract, Defendants wanted to only pay $20,000. Plaintiff had declined the renewed offer. Yet, defendants filed a false UCC-lien on July 05, 2023, without notifying and informing Plaintiff; and, without any monetary exchange between parties.

50.     Plaintiff had/has done everything in accordance to the parties' contract.

51.     Defendants, however, had/have failed to perform under the parties' contract, because the Defendants had not only reneged on the contract, but they had also maliciously-filed a false lien without the exchange of any and all monetary sum between parties.

52.     Defendants' conduct and omission caused harm and damages to Plaintiff KAMATH, including but not limited to clientele, defamation, professional reputational damages, and other third-parties not engaging in transactions with Plaintiff KAMATH based on the false lien maliciously filed by Defendants.

53.     The harm is not only to Plaintiff KAMATH's business as in clients who may do a public search and find this false lien, but also an impediment to Plaintiff KAMATH's future ability to acquire loans. Thus, the harm because of Defendants' conduct and lack thereof is trifold, i.e., monetary, non-monetary, and punitive.

54.     Accordingly, Plaintiff KAMATH was and is actually and proximately harmed in an amount of damages to be determined at trial according to proof at trial, plus interest, fees, and costs.

<u>SECOND CAUSE OF ACTION</u>

FRAUD

[Against All Defendants]

55.     Plaintiff re-pleads, re-alleges, and incorporates via reference each of the preceding paragraphs as though set forth fully herein.

56.     Plaintiff was fraudulently induced by Defendants.

57.     In May and June 2023, Plaintiff KAMATH had reached out to Defendant BIZ2CREDIT because the latter had advertised on local South Asian and Indian television channels.

58.     Defendants knew their representations were false at the time they were made, and intended for Plaintiffs to rely thereon to induce them to provide a sum of over $50,000.

59.     In May and June 2023, Plaintiff KAMATH was seeking a business loan to expand her law firm and to hire staff due to the gaining traction of her law firm and increasing demands of clientele.

60.     In May and June 2023, Plaintiff KAMATH had reached out to Defendant BIZ2CREDIT because the latter had advertised on local South Asian and Indian television channels. Plaintiff

**COMPLAINT**

KAMATH had included her PNC and CHASE bank statements for Defendants to review the incoming revenue. Defendants BIZ2CREDIT and COLE wanted to know the Plaintiff's source of income, and Plaintiff had - only for limited purposes of KYC/AML source of income - authorized defendants to check her business checking account.

61.     In May and June 2023, Defendants had finalized the terms of the agreement of an amount that Defendant BIZ2CREDIT had offered Plaintiff KAMATH in the amount of over $50,000 with an origination fee to defendants.

62.     Defendant COLE, on behalf of Defendant BIZ2CREDIT, e-mailed and telephonically contacted Plaintiff KAMATH.

63.     In June 2023, Defendant BIZ2CREDIT with an individual named Rahul had a funding call with Plaintiff KAMATH.

64.     On June 22, 2023, Plaintiff KAMATH had informed Defendant BIZ2CREDIT that Plaintiff did **not** need the funding until July 12, 2023, and **not to wire** any funding to her. Defendant BIZ2CREDIT and Defendant COLE had agreed.

65.     On July 12, 2023, Plaintiff KAMATH had e-mailed Defendant BIZ2CREDIT and Defendant COLE whether the funding can be extended then.

66.     On July 17, 2023, Plaintiff KAMATH had e-mailed Defendant BIZ2CREDIT and Defendant COLE whether the wire transfer was sent. Defendant COLE had stated the wire was not sent.

67.     On July 24, 2023, Plaintiff KAMATH had informed Defendant BIZ2CREDIT and Defendant COLE that Plainitff did **not** want any funding from Defendant BIZ2CREDIT. Thus, Plaintiff declined any monetary offer. There was **no exchange of monetary sum** between parties thereafter.

68.     On August 2, 2023, Defendant BIZ2CREDIT stated that it could not send the $50,000, but it could send $20,000-$30,000.

69.     On August 3, 2023, Plaintiff KAMATH informed Defendant COLE that it was "odd" that Defendant BIZ2CREDIT was "changing after the funding call" and "reneging on the contract." Any and all of the above conversations were recorded electronically, as well as telephonically with Defendant COLE. It is unclear whether the calls were recorded, and if so, a subpoena will be in process.

70.     Between July 12, 2023 and August 1, 2023, Defendant BIZ2CREDIT stated that it had to verify the bank accounts of Plaintiff KAMATH, to which plaintiff had agreed.

71.     The communication then ceased and ended between Plaintiff KAMATH with Defendant BIZ2CREDIT and Defendant COLE. There was **no communication** between Plaintiff KAMATH with Defendant BIZ2CREDIT and Defendant COLE in July 2023, until the latter part of August 2023.

72.     From the initial e-mail on May 22, 2023 until August 4, 2023, and even thereafter, none of the Defendants had ever informed Plaintiff KAMATH that they had filed a false UCC lien against RESHMA H. KAMATH and business, LAW OFFICE OF RESHMA KAMATH.

73.     On August 30, 2023, Plaintiff KAMATH while searching the CA Secretary of State website, Plaintiff saw that a false UCC lien was filed against her name and that of her business, LAW OFFICE OF RESHMA KAMATH.

74.     Plaintiff KAMATH was stunned to see a UCC-lien against RESHMA H. KAMATH and LAW OFFICE OF RESHMA KAMATH that some creditor had allegedly filed on July 05, 2023 appearing publicly the CA Secretary of State website.

75.     On August 30, 2023, Plaintiff KAMATH contacted CSC Corporation, the registered agent for service of process of the alleged creditor [whose name was not stated on the CA Secretary of State website].

76.     On August 30, 2023, CSC Corporation reached out to Plaintiff KAMATH with the name of the individual and corporation who had filed against RESHMA H. KAMATH.

77.     CSC Corporation e-mailed that the alleged creditor was an individual and corporation, defendant MISHRA and defendant ITRIA, respectively.

78.     Plaintiff KAMATH had **never met, talked to, and/or heard** who the individual and corporation, defendant MISHRA and defendant ITRIA, were. Plaintiff KAMATH had **never** interacted with any such individual and/or organization.

79.     Plaintiff KAMATH contacted via e-mail that individual and corporation, defendant MISHRA and defendant ITRIA, who were non-responsive to the undersigned date.

80.     Plaintiff KAMATH performed an online name search and case law search to check who were the defendants MISHRA and ITRIA.

81.     Plaintiff KAMATH, on a hunch, contacted defendant COLE and defendant BIZ2CREDIT about this false lien.

82.     Plaintiff KAMATH was right, and defendant COLE admitted and conceded that defendant BIZ2CREDIT had filed the false lien.

83.     Plaintiff KAMATH informed defendant COLE, agent on behalf of defendant BIZ2CREDIT, that she had **declined** any funding from defendant BIZ2CREDIT; there was no money exchanged between any parties; and thus, defendants have filed a fraudulent and defamatory lien. Thus, the defamatory false lien that defendants fraudulently and maliciously filed must be terminated immediately.

84.     Defendant COLE stated he would terminate the lien. However, it was not expunged. It was circulated and seen by several individuals and third parties.

85.     On July 05, 2023, Defendants caused the filing of a fraudulent lien against Plaintiff KAMATH, and her business, LAW OFFICE OF RESHMA KAMATH. Until August 30, 2023, there was no notice from any and all defendants about this false lien.

86.     From July 05, 2023 and on-going, Defendants personally and professionally defamed Plaintiff KAMATH, and her business, LAW OFFICE OF RESHMA KAMATH, because the defendants had filed a fraudulent lien against Plaintiff. Defendants have tarnished the reputation of Plaintiff. Defendants have caused Plaintiff KAMATH to not get other loans that Plaintiff may want to get.

87.     From July 05, 2023 and on-going, Defendants had **never** actually, and/or constructively notified Plaintiff KAMATH, and her business, LAW OFFICE OF RESHMA KAMATH that the defendants had filed a UCC-lien against Plaintiff.

88.     Plaintiff did not have any and all actual, and/or constructive knowledge of such a lien filing during that time-period – until a third-party had informed her.

89.     Even prior to July 05, 2023, Defendants COLE and BIZ2CREDIT knew and/or should have known that no money was exchanged between plaintiff KAMATH and Defendants; that on or

*before* July 05, 2023, Defendants MISHRA and ITRIA had filed a false UCC lien; and, that even after the communication by Defendant COLE with Plaintiff KAMATH *after* July 05, 2023, Defendant COLE had never informed and notified Plaintiff KAMATH that defendants had filed a false-UCC lien.

90.      Anyway, notice to Plaintiff is not a requirement for fraudulent and false UCC liens.

91.      Defendants' knowledge, and/or reasonable constructive knowledge of the act of filing the false UCC lien when no money was exchanged and no outstanding debt was owed is what the fraud cause of action turns on.

92.      From May 2023 and on-going, Plaintiff KAMATH and the defendants had **never** exchanged any kind of monetary sum in cash, and/or in kind. There was no need to file a lien, because money was **never** exchanged, and there was **never** a debt owed from Plaintiff KAMATH to defendants.

93.      As a direct and proximate result of the actions and omissions of Defendants, Plaintiff KAMATH has suffered damages in an amount to be proven at trial. Filing a false lien can result in a misdemeanor and/or even a felony charge.

94.      For Defendants, the California Penal Code § 115 PC makes it a criminal offense in California knowingly to file, register, or record a false or forged document in any public office within the state. Doing so is a felony offense that is punishable by up to three years in jail or prison.

95.      Plaintiff KAMATH has provided Defendants, as well as their attorney, HARRISON over a month to resolve this, but to no avail.

96.      Plaintiff justifiably relied on Defendants' misrepresentations.

97.      The harm is not only to Plaintiff's business as in clients who may do a public search and find this false lien, but also an impediment to Plaintiff's future ability to acquire loans. Thus, the harm because of Defendants' conduct and lack thereof is trifold, i.e., monetary, non-monetary, and punitive.

98.      As a result of Defendants' fraudulent misrepresentations, Plaintiff suffered damages in an amount to be determined at trial according to proof.

99.      Defendants' conduct was oppressive, fraudulent, and malicious so as to justify an award of punitive damages.

THIRD CAUSE OF ACTION

FALSE AND MISLEADING ADVERTISING

Lanham Act 15 U.S.C. §§ 1051 *et seq*.,; California Business and Professions Code § 17500;

Bus. Prof. Code, § 17536; Consumer Legal Remedies Act / Civil Code § 1750 *et seq.;*

[Against All Defendants]

100.    Plaintiff re-pleads, re-alleges, and incorporates via reference each of the preceding paragraphs as though set forth fully herein.

101.    In May and June 2023, Plaintiff KAMATH had reached out to Defendant BIZ2CREDIT because the latter had falsely and misleadingly advertised on local South Asian and Indian television channels.

102.    In violation of the aforementioned Acts and statutes, Defendants made several false and misleading statements on the television channels such as lending to South Asian/Indian women. Defendants had no intention of lending to Plaintiff KAMATH.

103.    In violation of the aforementioned Acts and statutes, Defendants did not ever intend to provide a business loan to a law firm such as that of Plaintiff KAMATH's. However, Defendants made a farce to gather bank account information and personal data from Plaintiff KAMATH.

104.    In violation of the aforementioned Acts and statutes, Defendants only intended to file a false and fraudulent UCC filing against Plaintiff KAMATH more so without notice to the latter. This was in the guise and pretense of Defendants lending to her, and seeking Plaintiff KAMATH's personal and business bank account statements.

105.    Pursuant to the Lanham Act 15 U.S.C. §§ 1051 *et seq.*, Plaintiff KAMATH can recover because Defendant BIZ2CREDIT's trademark Defendant ITRIA had filed a false lien against Plaintiff KAMATH. Plaintiff KAMATH has standing, because Defendants misled that they would lend to law firms based on their false and misleading advertising. Pursuant to this Act, Plaintiff KAMATH can recover reasonable attorneys' fees.

106.    The injury-in-fact and harm is not only to Plaintiff KAMATH's business as in clients who may do a public search and find this false lien, but also an impediment to Plaintiff's future ability to

acquire loans. Thus, the harm because of Defendants' conduct and lack thereof is trifold, i.e., monetary, non-monetary, and punitive. Plaintiff KAMATH has lost compensation and monies because of Defendants' conduct and lack thereof.

107.    As a result of Defendants' acts and omissions, Plaintiff KAMATH was actually and proximately harmed in an amount to be determined at trial according to proof, plus interest, fees and costs.

108.    Defendants' conduct was oppressive, fraudulent, and malicious so as to justify an award of punitive damages.

<u>FOURTH CAUSE OF ACTION</u>

BREACH OF FIDUCIARY DUTY

[Against All Defendants]

109.    Plaintiff re-pleads, re-alleges, and incorporates via reference each of the preceding paragraphs as though set forth fully herein.

110.    Defendants agreed to lend a sum of over $50,000 business loan for working capital at a high-interest rate to Plaintiff.

111.    As a financial credit institution, Defendants owed Plaintiffs a fiduciary duty of the highest good faith.

112.    Not only did defendants renege but they also filed a falsified and fraudulent lien on Plaintiff's persona name and professional law office.

113.    Defendants' acts and lack thereof constitute a breach of their fiduciary duty to Plaintiff.

114.    Plaintiff has suffered damages actually and proximately caused as a result of Defendants' breach of each of their fiduciary duties.

115.    The harm is not only to Plaintiff's business as in clients who may do a public search and find this false lien, but also an impediment to Plaintiff's future ability to acquire loans. Thus, the harm because of Defendants' conduct and lack thereof is trifold, i.e., monetary, non-monetary, and punitive.

116.    As a result of Defendants' acts and omissions, Plaintiff was/is actually and proximately harmed in an amount to be determined at trial according to proof, plus interest, fees and costs.

117.     Defendants' conduct was oppressive, fraudulent, and malicious so as to justify an award of punitive damages.

## FIFTH CAUSE OF ACTION

### FRAUDULENT LIEN/FRAUDULENT UCC FILING

UCC § 9518(c); Cal U Com Code § 9518; and, Cal U Com Code § 9625;

Del. Code Ann. tit. 6 § 9-518; Del. Code Ann. tit. 6 § 9-625;

[Against All Defendants]

118.     Plaintiff re-pleads, re-alleges, and incorporates via reference each of the preceding paragraphs as though set forth fully herein.

119.     Under Article 9, specifically UCC § 9518(c), a bogus lien can be terminated but not expunged and remains publicly filed for its lifetime of at least five years. Defendants have filed such a bogus false lien against Plaintiff KAMATH.

120.     Accordingly, a false lien is a publicly filed document, such as UCC-1 and UCC-3 that purports to describe a lien, but which has no legal basis, and/or which is based upon false, fictitious, or fraudulent statements and/or representations. In the United States, the filing of false liens has been used as a tool of harassment and revenge, because Plaintiff KAMATH as an Indian woman and lawyer is doing well in her work.

121.     There was no monetary exchange between parties at any time.

122.     The fraudulent UCC filing was maliciously filed, i.e., the Defendants-filer falsely submitted a lien against their target, i.e., Plaintiff KAMATH, alleging that the target, Plaintiff KAMATH, owes the filer, Defendants, some sum of money.

123.     The lien is inexpensive and relatively easy to file for Defendants but, for the target, requires significant time and attorneys' fees to be dissolved by a court.

124.     Even if a termination was filed after Plaintiff KAMATH notified Defendants of finding the false lien against her name; and, even if an informational statement was filed, Plaintiff KAMATH can recover against Defendants for the mere filing of a false lien under UCC Article 9.

125.     Prior to filing the false lien, California enacted a pre-filing remedy where the Cal. Gov't. Code § 12181, which states in relevant part that the Secretary of State's office may refuse to perform a service and/or refuse a filing based on a reasonable belief that the service or filing is being requested for an unlawful, false, or fraudulent purpose, to promote or conduct an illegitimate object or purpose, and/or is being requested or submitted in bad faith or for the purpose of harassing or defrauding a person or entity.

126.     Upon the filing of a false lien, to protect consumers, California enacted the uniform information statement remedy in Cal U Com Code § 9518.

127.     Upon the filing of a false lien, to protect consumers, California enacted the uniform Article 9 remedies for noncompliance in Cal U Com Code § 9625.

128.     Defendants BIZ2CREDIT et al violated UCC § 9518; Cal U Com Code § 9518; and, Cal U Com Code § 9625.

129.     Defendants BIZ2CREDIT et al filed a fraudulent lien against Plaintiff KAMATH for an unlawful, false, or fraudulent purpose, to promote and/or conduct an illegitimate object and/or purpose, and/or is being requested and/or submitted in bad faith and/or for the purpose of harassing and/or defrauding RESHMA H. KAMATH, and the LAW OFFICE OF RESHMA KAMATH pursuant to Cal. Gov't. Code § 12181.

130.     An injury claim form for the government code is not required, because Plaintiff KAMATH is suing under the California Commercial Code, and the Uniform Commercial Code.

131.     Defendants BIZ2CREDIT et al could have criminal penalties instituted against them under Cal. Pen Code § 115.

132.     Similarly, because Defendant ITRIA is allegedly incorporated in Delaware, the state of Delaware enacted the uniform information statement remedy in Del. Code Ann. tit. 6 § 9-518. Delaware enacted the uniform Article 9 remedies for non-compliance in Del. Code Ann. tit. 6 § 9-625.

133.     Defendants BIZ2CREDIT et al violated Section 9–518 of Delaware's UCC, which authorizes a person to file an "information statement" (or a "correction statement" under the UCC) if the person believes that the existing record is inaccurate or a statement has been wrongly filed. 6 Del. C. §

9–518. Defendants BIZ2CREDIT et al did not file any information statement, and/or any statement correcting any wrongly-filed statement against Plaintiff KAMATH.

134.    Pursuant to Del. Code Ann. tit. 11 § 877, Defendants BIZ2CREDIT et al can have criminal penalties levied against them.

135.    Defendants BIZ2CREDIT et al violated the Delaware uniform information statement remedy in Del. Code Ann. tit. 6 § 9-518; and, the uniform Article 9 remedies for non-compliance in Del. Code Ann. tit. 6 § 9-625.

136.    The injury-in-fact, and harm is not only to Plaintiff's business as in clients who may do a public search and find this false lien, but also an impediment to Plaintiff's future ability to acquire loans. Thus, the injury-in-fact, and harm to Plaintiff is also because Defendants' conduct and lack thereof caused defamation and tarnished professional reputation as a lawyer and business person causing monetary harm and loss.

137.    The harm to Plaintiff is trifold, i.e., monetary, non-monetary, and punitive.

138.    Defendants should be penalized under the remedies provided for a malicious and fraudulent UCC filing.

139.    Plaintiff demands damages, relief and remedies pursuant to proof at trial with interest, fees and costs.

<u>SIXTH CAUSE OF ACTION</u>

DEFAMATION

[Against All Defendants]

140.    Plaintiff re-pleads, re-alleges, and incorporates via reference each of the preceding paragraphs as though set forth fully herein.

141.    Defendants have defamed - in libel and slander - Plaintiff KAMATH personally and professionally in that Defendants publicly filed a false, fraudulent and malicious UCC-lien filing on July 05, 2023 and circulated thereafter.

142.    Defendants have made a false statement on the CA Secretary of State website, for which each publication is a single act of defamation – for libel and slander - on July 05, 2023, and circulated thereafter.

143.    Defendants' UCC filing is false, i.e., it is not true. It is bogus.

144.    Defendants have tarnished the reputation of Plaintiff KAMATH.

145.    Because of Defendants' conduct and lack thereof, i.e., slander and libel, Defendants have actually and proximately caused other individuals to not lend to Plaintiff KAMATH, and/or to engage in business transactions with Plaintiff KAMATH.

146.    Because of Defendants' conduct and lack thereof, i.e., slander and libel, Defendants have actually and proximately caused harm and injury in fact to Plaintiff KAMATH.

147.    Plaintiff demands monetary, non-monetary and punitive damages, relief and remedies pursuant to the statutory code, and attorneys' fees and costs, according to proof at trial.

IV.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

On Each Cause of Action:

1.    For an award of $2.90 million in damages based on plaintiff's personal and professional income and revenue according to proof at trial;

2.    For an award of general damages according to proof at trial;

3.    For an award of actual, and special, damages according to proof at trial;

4.    For an award of expectancy and consequential damages in the amount of $2.30 million according to proof at trial;

5.    For present and future loss of income;

6.    For an award of treble and punitive damages according to proof at trial;

7.    For an award of restitution, and all other appropriate legal and equitable relief;

8.    For an award of emotional distress damages in the amount over $250,000 according to proof at trial;

9.      For costs of suit herein;

10.     For reasonable attorneys' fees as authorized by statute such as the Lanham Act and other statutes, according to proof at trial;

11.     For pre-judgment and post-judgment interest;

12.     For declaratory relief of rights and remedies of all parties and properties;

13.     For such further relief as the Court may deem proper in the interests of justice;

///

DATED: October 02, 2023


/s/ Reshma Kamath

Reshma Kamath,
Plaintiff, *In Propria Persona*

**COMPLAINT**

## PROOF OF SERVICE
F.R.C.P. 5 / C.C.P. § 1013(a)(3), C.C.P. § 1010.6(a)(6) / Cal. R. Ct. R. 2.260

I am employed in, the County of San Mateo, California. I am over the age of 18, and not a party to this action. My business address is: 700 El Camino Real, Suite 120, #1084, Menlo Park, California 94025, United States, and electronic-service address is reshmakamath2021@gmail.com. On October 02, 2023, I served the following document(s), by method(s) indicated below, on the parties in this action: *SEE ATTACHED SERVICE LIST.*
///
COMPLAINT FOR DAMAGES FOR:

1. BREACH OF CONTRACT;
2. FRAUD;
3. FALSE AND MISLEADING ADVERTISING.
4. BREACH OF FIDUCIARY DUTY;
5. FRAUDULENT LIEN/FRAUDULENT UCC FILING; AND,
6. DEFAMATION
///
ELECTRONIC SERVICE In electronically transmitting courtesy copies of the document(s) listed above to the email address(es) of the person(s) set forth on the attached service list. To my knowledge, the transmission was reported as complete and without error, as per the electronic service agreement between all parties and their attorneys of record, herein. [NOTICE OF C.C.P. SECTION 1010.6, AND ACQUIRED CONSENT OF ALL PARTIES;]
///
I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct. Executed on the 2nd day of October 2023.

*/s/ Reshma Kamath*
Reshma Kamath

**COMPLAINT**

SERVICE LIST

Harrison S. Smalbach

Senior Counsel

Itria Ventures LLC

E. harrison.smalbach@biz2credit.com

Address: unknown/not provided

(O) 212.644.4555 ext. 109

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT