**RESHMA KAMATH**

Mailing Address: 700 El Camino Real, Suite 120,

#1084, Menlo Park, California 94025, United States |

Phone: 650 257 0719 |

E-mail: reshmakamath2021@gmail.com |

Plaintiff, *In Propria-Persona*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESHMA KAMATH,<br><br>       Plaintiff,<br><br><br><br>    v.<br><br>ITRIA VENTURES LLC, a Delaware LLC; AMIT MISHRA, an individual; BIZ2CREDIT, INC., a New York Corporation; PATRICK COLE, an individual with the pseudonym, and DOES 1-10, inclusive,<br><br><br>       Defendants | **Case No.:** 5:23-cv-05153-SVK<br>*[Honorable District Judge Susan van Keulen]*<br><br>**OPPOSITION; REQUEST FOR *FED. RUL. CIV. PROC. RULE* 11 SANCTIONS IN THE AMOUNT OF $10,500 AGAINST DEFENDANTS' ATTORNEYS, JASON TAKENOUCHI AND HARRISON SMALLBACH**<br><br><br><br>Date: January 23, 2024<br>Time: 10:00 a.m. PT<br>Dep't: Courtroom 6, 4th Floor |

*TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD, HEREIN:*

# **<u>TABLE OF CONTENTS</u>**

**I. INTRODUCTION**……………………………………………**pg.5**

**II. LAW**………………………………………………..**pg.6**

**III. ARGUMENT**………………………………………**pg.8**

**IV. CONCLUSION**…………………….………………..**pg.23**

**TABLE OF AUTHORITIES**

*Cases*

*American Card Co. v. H.M.H. Co.* (1963) 97 R.I. 59 [ 196 A.2d 150]……….pg.18

*Borg-Warner Acceptance Corp. v. Bank of Marin* (1973) 36 Cal.App.3d 286, 288, 289…………………………………………………………………………….pg.13

*Buck v. Dahlgren* (1972) 23 Cal. App. 3d 779, 787 …………………………..pg.20

*Brack v. Omni Loan Co., Ltd.,* 164 CalApp.4th 1312, 1326 (2008)………….pg.20

*In re Washer* (1926) 78 Cal.App. 759, 771-772……………………………...pg.20

*LeFlore v. Grass Harp Productions, Inc.* (1997) 57 Cal.App.4th 824, 833…pg.9

*Louis & Diederich, Inc. v. Cambridge European Imports, Inc.,* 189 Cal.App.3d at p. 1586, 234 Cal.Rptr. 889…………………………………………………….pg.12

*Needle v. Lasco Industries, Inc.,* 10 Cal. App. 3d 1105, 1108 (Cal. Ct. App. 1970)………………………………………………………………………...*passim*

*New West Fruit Corp. v. Coastal Berry Corp.* (1991) 1 Cal.App.4th 92, 97, 1 Cal.Rptr.2d 664…………………………………………………………..pgs.12,13

*Oswald Mach. & Equip., Inc. v. Yip,* 10 Cal. App. 4th 1238, 1247 (Cal. Ct. App. 1992)……………………………………………………………………...pg.7

*Oxford Street Properties, LLC v. Rehabilitation Associates, LLC* (2012) 206 Cal.App.4th 296, 308…………………………………………………….pg.13

*Ron Miller Enters., Inc. v. Lobel Fin. Corp.* (2019) 33 Cal.App.5th 1, 11…..pg.9

*Scott v. Stocker* (10th Cir. 1967) 380 F.2d 123 and *DuBay v. Williams* (9th Cir. 1969) 417 F.2d 1277……………………………………………………….pg.18

*Turbinator, Inc. v. Superior Court* (1995) 33 Cal.App.4th 443, 451 [39 Cal.Rptr.2d 342]…………………………………………………………….pg.14

*White v. Seitzman* (1964) 230 Cal.App.2d 756, 761………………………...pg.21

3

*Wooton v. Coerber* (1963) 213 Cal.App.2d 142, 148………………pg.20

**Statutes**

Com. Code, § 1201, subd.(37)…………………………………....pgs.7,15

Com. Code, § 1102……………………………………….........pg.7

Com. Code, § 9100 *et seq.,*……………………………………*passim*

Com. Code, § 9203 *et seq.,* ……………………………………*passim*

Com. Code, § 9203, subd. (b)(1)…………………………………*passim*

Com. Code, § 9203, subd. (2) …………………………………*passim*

Com. Code, § 9203, subd. (3)(A) …………………………………..*passim*

Cal. Fin. Code, §§ 4970-4979.8…………………………………pgs.6, 20

Cal. Fin. Code, § 22001(a) …………..…………………………pgs.6, 20


**Rule**

Fed. *Rul. Civ. Proc. Rule* 11……………………………………*passim*


**Treatises**

3 Cal. Commercial Law (Cont. Ed. Bar 1966), p. 56……..…………pg.16

4 *Anderson, Uniform Commercial Code* (2d ed. 1971) § 9-204:4, p. 175………………………………………………………………..pg.7

4 Witkin, Summary of Cal. Law (10th ed.2005) Secured Transactions In Personal Property § 76, p. 634…………………………………pg.17

# **OPPOSITION**

## **INTRODUCTION**

PLAINTIFF RESHMA KAMATH (*hereinafter*, "Plaintiff,") files the OPPOSITION against DEFENDANTS ITRIA VENTURES, LLC, a Delaware LLC; AMIT MISHRA, an individual; BIZ2CREDIT, INC., a New York Corporation; PATRICK COLE, an individual with the pseudonym; and DOES 1-10, inclusive, (*hereinafter*, "Defendants,") (*hereinafter*, collectively, "Parties") based on the stated grounds such as:

A UCC-1 financing statement does not itself create a security interest. (*Needle v. Lasco Industries, Inc*. (1970) 10 Cal.App.3d 1105, 1108 ["a financing statement filed with respect to a security agreement which **never comes into existence** is a nullity"].) (§ 9203, subd. (1).) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral, with attachment occurring as soon as **all the three enumerated conditions exist**. (§ 9203, subd. (2).) (**Emphasis Added**.)

In this case, Defendants failed to meet the three codified prongs, because there was no binding, enforceable security interest agreement, and no value had been given. The UCC-1 statement dated July 5, 2023 (*See*, Defendants' MTD, pg. 7, ¶¶ 11-13) is a nullity, because the RSA contract dated June 21, 2023, was unenforceable and never came into existence – there was an alteration of its material terms, i.e., loan value – that was also not given. (*See*, Complaint ¶17; *See*, Defendants' MTD, pg. 8, ¶22, "Itria stated that it had not yet sent the funds.")

The punitive damages in the Complaint must not be stricken, because California policy under the UCC justifies penalizing unscrupulous credit companies and loan financiers, such as Defendants, from victimizing innocent loan seekers, such as Plaintiff Reshma Kamath. Cal. *Fin. Code*, §22001(a); §§ 4970-4979.8.

In the caption page, Defendants have also improperly noticed the Motion to Dismiss ("MTD") for "January 23, **2023**." This is not an *errata*, and Defendants had plenty of time to fix the notice of MTD.

Thus, Plaintiff Reshma Kamath states that the Defendants' motion to dismiss must be **DENIED** in its entirety for the motion lacking merit, and evidence of Defendants' falsified allegations.


## LAW

Division 9 of the California Uniform Commercial Code governs secured transactions. (Cal. U. Com. Code, § 9101 *et seq*.) These sections cover any transaction intended to create a security interest in personal property or fixtures, including goods. (§ 9102, subd. (1)(a).)

One of the purposes of the Commercial Code is to "simplify, clarify and modernize the law regarding commercial transactions." (Com. Code, § 1102.) One intended result was "a radical simplification in the formal requisites for creation of a security interest." (Uniform Com. Code Comment to § 9-101 which is § 9101 of the Cal. Com. Code.)

California courts "generally afford great deference to the decisions of [their] sister jurisdictions interpreting [the Uniform Commercial Code's] provisions. *Oswald Mach. & Equip., Inc. v. Yip,* 10 Cal. App. 4th 1238, 1247 (Cal. Ct. App. 1992), reh'g denied and opinion modified (Dec. 4, 1992); *Needle v. Lasco Industries, Inc.,* 10 Cal. App. 3d 1105, 1108 (Cal. Ct. App. 1970) ("Since one of the purposes of the Commercial Code is to 'make uniform the law among the various jurisdictions' . . . the cited cases are compelling authority which we accept.").

" 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation." (Com. Code, § 1201, subd. (37).) " 'Security agreement' means an agreement which creates or provides for a security interest." (Com. Code, § 9105, subd. (1)(h).) A security interest is not enforceable unless the "debtor" has signed a security agreement." (Com. Code, § 9203; 4 *Anderson, Uniform Commercial Code* (2d ed. 1971) § 9-204:4, p. 175.)

Under Cal. U. Com. Code § 9102,

> (28) "Debtor" means any of the following:
> (A) A person having an interest, other than a security interest or other lien, in the collateral, whether or not the person is an obligor.
> (B) A seller of accounts, chattel paper, payment intangibles, or promissory notes.
> (C) A consignee."

A security interest attaches when it becomes enforceable against the debtor with respect to the collateral, with attachment occurring as soon as all three prongs exist. Id. Cal. U. Com. Code § 9203, in pertinent part, provides:

"(a) A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment.

(b) Except as otherwise provided in subdivisions (c) to (i), inclusive, a security interest is enforceable against the debtor and third parties with respect to the collateral only if each of the following conditions is satisfied:

(1) Value has been given.
(2) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party.
(3) One of the following conditions is met:
(A) The debtor has authenticated a security agreement that provides a description of the collateral...."

## ARGUMENT

Plaintiff Reshma Kamath validly argues and analyzes the factual allegations in the Complaint based on the grounds as stated in the below sections:

## I. DEFENDANTS BIZ2CREDIT ET AL LACKED AN ENFORCEABLE BINDING AGREEMENT BECAUSE PRIOR TO, ON JULY 5, 2023, AND THEREAFTER, NO "VALUE HAD BEEN GIVEN" UNDER U. COMM. CODE. SECTION 9203.

A strict requirement of the Uniform Commercial Code is "value has been given." However, no value was given. Defendants failed to give value. (*See*, contradictory statements in the MTD, Defendants' MTD, pg. 9, ¶1: "Following this due diligence, Biz2Credit told Kamath it could not fund her with $50,000"; *See also*, Defendants' MTD, pg. 10, ¶22, "Under the RSA, Kamath could have received up to $50,460.4 RSA

at 1;" *See further,* Defendants' MTD, pg. 11, ¶¶23, 24, "In other words, the RSA did not require Itria to provide any particular amount of funding to Kamath—".) However, nowhere does Defendants MTD state that it had actually given such a value to Plaintiff, because no value had been given from Defendants to Plaintiff.

Thus, the RSA ceases to exist, and the subsequent UCC-1 statement becomes a nullity.

Defendants seek to mislead the Court in stating that there was some loan transfer that had occurred between parties or was to occur. No such loan transfer had occurred or was to occur. There was no value and no consideration. "A security interest only becomes enforceable against a debtor or third parties once three conditions exist: (1) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral, (2) value has been given, and (3) the debtor has rights in the collateral. ([Cal. U. Com. Code,] § 9203, subd. (1).)" (*LeFlore v. Grass Harp Productions, Inc.* (1997) 57 Cal.App.4th 824, 833.)

Incorporated via reference, herein, is attached a true and correct e-mail correspondence, in **Plaintiff-Exhibit A,** between Plaintiff Reshma Kamath, and Defendant Patrick Cole, representative of Defendant Itria Ventures, Defendant Biz2Credit, Inc., and Defendant Amit Mishra.

Incorporated via reference, herein, is attached a true and correct correspondence in **Plaintiff-Exhibit B**, regarding the Defendants' filing of the UCC-1 financing

statement where Defendants Itria Ventures and Defendant Amit Mishra had falsely attempted to create a security interest in Plaintiff's present and future proceeds without the exchange of a loan.

UCC-1 financing statements are filed when a loan (or value) had been given or was to. *In this case*, the parties had *not* exchanged any loan or value. The parties had stated that they would not work with each other. Defendants have failed to provide any kind of evidence of a wire transfer. This was not an open line of credit, and/or promissory note situation. This was a business merchant cash advance that Plaintiff stated there was not any need of. Defendants also stated in writing they would disable all the accounts. In turn, Defendants had to void and nullify the RSA contract based on the change of key material terms. However, Defendants failed to undertake any such action. Instead, Defendants filed a UCC-1 financing statement fraudulently on July 5, 2023. This filing of the UCC-1 financing statement was unbeknownst to Plaintiff until August 30, 2023. Only when Plaintiff then e-mailed Defendant Cole did he agree that were was no such loan and terminate the UCC-1. (**Plaintiff-Exhibit B**.)

Compare that to *Ron Miller Enters., Inc. v. Lobel Fin. Corp.* (2019) 33 Cal.App.5th 1, 11, where value had been given in the form of the loan advances and the loans were apparently for 80 percent of value. *Here*, Defendants Biz2Credit, Inc. failed to provide any value to Plaintiff Reshma Kamath. There were no loan advances of any sort from Defendants to Plaintiff Reshma Kamath. There would be no loan advances to Plaintiff Reshma Kamath in the future. Defendants even failed to meet the criteria set

forth in the codified commercial code. Plaintiff is not a statutory debtor, and Defendants are not statutory creditors. Plaintiff does not owe anything to Defendants, because Defendants did not loan anything to Plaintiff. Thus, not only did the value prong of the code remain unsatisfied, but there was no enforceable security agreement.

## II. DEFENDANTS BIZ2CREDIT ET AL PUBLICLY FALSIFIED THE EXISTENCE OF A SECURITY INTEREST; HOWEVER, NO LOAN SUM (NO VALUE) HAS BEEN GIVEN.

*In the instant matter*, the RSA contract dated June 21, 2023 that the Defendants allege in their opposition is **not** the same as a security interest collateral agreement. interest. Section 9203, subdivision (1)(a)-(c), provides in relevant part: ". . . a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless (a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral . . . and (b) Value has been given; and (c) The debtor has rights in the collateral."

*Here*, Defendants failed to meet the codified prongs, thus, there was no binding security agreement. "In other words, there must be a binding security agreement in order to make the security interest enforceable. Where there is no security agreement, the filing of a financing statement is a nullity." (*Needle v. Lasco Industries, Inc.* (1970) 10 Cal.App.3d 1105, 1108 [89 Cal.Rptr. 593]; 4, *Uniform Commercial Code* (2d ed. 1971)

§ 9-204:4, p. 175.) Neither is the Defendants' alleged security agreement enforceable, nor the purported security interest.

Further, none of the three codified requirements were met. *First*, the RSA dated June 21, 2023 is not an enforceable security interest agreement. *Second*, the terms of the RSA dated June 21, 2023 had changed materially. *Third*, no value had been given, i.e., no loan exchange took place. (*New West Fruit Corp. v. Coastal Berry Corp.* (1991) 1 Cal.App.4th 92, 97, 1 Cal.Rptr.2d 664; *Louis & Diederich, Inc. v. Cambridge European Imports, Inc.,* 189 Cal.App.3d at p. 1586, 234 Cal.Rptr. 889; § 9203, subd. (b)(1), (2), (3)(A).)

In general, and in the matter before us, a security agreement between two parties is effective to create a security interest in specified collateral as against purchasers of the collateral and creditors. (§ 9201.) Defendants, however, created the appearance of a default when no such situation existed with Plaintiff. The RSA dated June 21, 2023 is a nullity, because as Defendants concede in their opposition, they had reneged from $50,000 to only offering $20,000-$30,000. (*See*, Complaint, ¶19; Defendants' MTD, pg. 9, ¶1-2, "Biz2Credit told Kamath it could not fund her with $50,000, but it could provide $20,000 to $30,000.") The initial agreement was thus void. No new security interest agreement was signed reflecting such a material change in the identified description of the value, and/or collateral.

Additionally, a financing statement which complies with these requirements, but is signed only by the secured party is sufficient to perfect a security interest in proceeds

received from the sale or other disposition of collateral "if the security interest in the original collateral was perfected." (§ 9402, subd. (2)(b).)

"[T]he purpose of filing a financing statement . . . is to give an existing or prospective creditor the opportunity to inform himself of whether, and of the extent to which, an existing or prospective debtor has encumbered his assets and to govern himself accordingly in dealing with the debtor." (*Borg-Warner Acceptance Corp. v. Bank of Marin* (1973) 36 Cal.App.3d 286, 288-289; see *Oxford Street Properties, LLC v. Rehabilitation Associates, LLC* (2012) 206 Cal.App.4th 296, 308.)

In this case, there was no such existing or prospective debtor because the parties had agreed not to exchange a loan. No $50,000, and no $20,000-$30,000 was to be exchanged between parties. Thus, Defendants had no enforceable security interest, perfected or unperfected, in Plaintiff's proceeds, present, and future.

## III. DEFENDANTS BIZ2CREDIT *ET AL* WERE FRAUDULENTLY SEEKING TO CREATE A SECURITY INTEREST IN PRESENT AND FUTURE PROCEEDS OF PLAINTIFF; HOWEVER, NO FINANCING, LOAN SUM, AND/OR VALUE HAD BEEN GIVEN, OR WAS TO BE.

Defendants were creating a falsified lien against Plaintiff's proceeds. Defendants were creating a public notice with no basis in fact. However, on August 30, 2023, Plaintiff was told that such a (falsified) lien existed in a UCC search.

The filing of a financing statement gives notice to and assures priority over other creditors and interested third parties with respect to goods described in the security agreement. (Cal. U. Com. Code, § 9302; *New West Fruit Corp. v. Coastal Berry Corp.* (1991) 1 Cal.App.4th 92, 97 [ 1 Cal.Rptr.2d 664].) "The purpose of perfection is simply 'to make [the security interest] safe against creditors and transferees of the debtor.'" (*Turbinator, Inc. v. Superior Court* (1995) 33 Cal.App.4th 443, 451 [ 39 Cal.Rptr.2d 342].)

In effect, Defendants were seeking to create a (falsified) lien against Plaintiff's proceeds. If Defendants had provided a loan whether $50,000, $30,000, and/or $20,000, then Defendants could have argued that value had been given. But Defendants provided no such loan to Plaintiff. There was mutual acquiescence between parties that Plaintiff did not require any loan, will not take any loan, and the entire transaction was voided and nullified.

No lien should exist, because no loan sum (no value) had been given. Defendants have falsely created the appearance of a perfected lien in the filing of a UCC-1 financing statement even when no loan was exchanged between parties, and with an unenforceable security interest. No loan means no debt. This was not a line of credit, revolving credit type of situation, and this was not a promissory note situation. This was a pure loan application. Not only was there no loan financing/value initiated, but also no binding enforceable security agreement existed.

## IV. DEFENDANTS BIZ2CREDIT *ET AL* HAVE FAILED TO VOID THE RSA CONTRACT WHEN PARTIES DECIDED NOT TO WORK TOGETHER; INSTEAD, DEFENDANTS BIZ2CREDIT ET AL FILED A DEROGATORY NULLIFIED PUBLIC UCC FILING.

Defendants' unenforceable RSA contract is not the same as a security interest collateral agreement. Defendants further seek to mislead the court in conflating the agreements. Defendants are creating a falsified sense that there was a security interest agreement that the parties had signed. However, the RSA contract was immediately voided and nullified, when Plaintiff had informed Defendant Patrick Cole that Plaintiff will not take any loan from Defendants. Defendant Patrick Cole, on behalf of Defendant Biz2Credit, Inc. and Itria Ventures, LLC had agreed. (*Needle v. Lasco Industries, Inc.* (1970) 10 Cal.App.3d 1105, 1108, ["a financing statement filed with respect to a security agreement which **never comes into existence** is a nullity"].)

Unlike what the opposition states, Plaintiff did not withhold the RSA contract from the court. The RSA contract was void and a nullity, because Defendants had altered a valid, material term of such contract. Thereby, creating an unenforceable contract. Even under the broad construction of "security agreement," a nullified RSA where Defendants concede they were not provide value – fails to meet the definition of "security agreement" under the Uniform Commercial Code.

Further, Defendants concede in their opposition that instead of $50,000, Defendants sought to change the terms of the loan to $20,000-$30,0000. (Defendants'

Opposition, pg. 7, ¶¶ 15-17.) When the terms of an agreement change with a counter-offer and when the material terms have changed, the original agreement is voided. Plaintiff declined to accept any loan from Defendants, and Defendants accepted that there was no loan exchange between parties. A security interest is collateral "which secures payment or performance of an obligation" (Com. Code, § 1201, subd. (37)) and the security agreement is effective only "according to its terms between the parties . . . against creditors." (Com. Code, § 9201.) At a minimum the "terms" **must recite** the obligation secured. Professor William D. Warren suggests that appropriate language is a grant of a security interest "to secure the performance of the obligations set out in paragraph one," i.e., a paragraph in the agreement which fully sets out the obligation. (3 Cal. Commercial Law (Cont. Ed. Bar 1966), p. 56; *Needle v. Lasco Industries, Inc.* (1970) 10 Cal.App.3d 1105, 1108-09.)

The terms of the RSA contract, both non-binding, and unenforceable, do not recite the obligation secured.

After this non-exchange of any and all loan, and written acquiescence as displayed in **Plaintiff-Exhibit A**, Defendants then filed a UCC-1 financing statement on July 5, 2023. This indicates that Defendants were trying to create a falsified sense of a "security interest" in proceeds from Plaintiff. If Plaintiff had not obstructed this, then it is foreseeable that months and years later, Defendants Itria would have confiscated proceeds of Plaintiff.

///

## V. DEFENDANTS BIZ2CREDIT *ET AL* FALSELY CREATED A DEBTOR-CREDITOR RELATIONSHIP BETWEEN PARTIES – WHEN NO VALUE HAS BEEN GIVEN

Defendants were aware with actual knowledge that on July 5, 2023, there was no debtor-creditor relationship between parties. Defendants had actual knowledge that they were not creditors because they did not send and transfer a loan to Plaintiff. Defendants had actual knowledge that Plaintiff was not their debtor because Plaintiff had not received any value/consideration from Defendants. Thus, Defendants were falsely creating the public appearance of a creditor-debtor relationship when no such UCC-1 security interest existed between parties. Had Plaintiff not intervened in causing defendants to terminate the UCC-1 financing statement on August 30, 2023, Defendants would have and may have even sought to impose the non-existent lien.

In Defendants creating such a falsified UCC-1 financing statement with Plaintiff's name as an alleged debtor, Defendants have publicly falsified a statutory debtor-creditor relationship. The debtor search generates Plaintiff's name, and that of Plaintiff's business – neither of which are statutory debtors of Defendants named herein.

Plaintiff is not a statutory debtor, because no loan sum was ever exchanged (i.e., no value had been given) between Plaintiff and Defendants. (§ 9310, subd. (a); 4 Witkin, Summary of Cal. Law (10th ed.2005) Secured Transactions In Personal Property § 76, p. 634.) Such financing statements are indexed under the name of the debtor, and those who wish to find finance statements search for them under the debtor's name (*Witkin*,

*supra*, pp. 639-640, § 80). Defendants created the falsified public impression that Plaintiff was a debtor to them of some kind of value given – when not. This could not be Defendants' clerical error, because Defendants had actual, written knowledge from Plaintiff to Defendant Patrick Cole (via Plaintiff's written correspondence and Defendant Cole's acknowledgment) that the RSA agreement was to be voided and no loan would be exchanged between parties. Based on the foregoing, when the security agreement never comes into existence, the UCC-1 financing statement is a nullity. Defendants should not have filed it on July 5, 2023, and/or when it was clear no value would be given, terminated it immediately thereafter (not after Plaintiff's e-mail to California Secretary of State finding out that the lien filer were Defendants.)

## VI. DEFENDANTS BIZ2CREDIT *ET AL*, ON JULY 5, 2023, I.E., DATE OF UCC-1 FILING, HAD ACTUAL KNOWLEDGE AND NOTICE IN WRITING THAT NEITHER PARTIES WERE INTERESTED IN LOAN VALUE EXCHANGE

Defendant Patrick Cole, that the Opposition concedes, is a representative of Defendant Itria Ventures and Defendant Biz2Credit, Inc., notified in writing that there will be no loan between parties. *American Card Co. v. H.M.H. Co*. (1963) 97 R.I. 59 [ 196 A.2d 150] held that a financing statement failed "to qualify also as a security agreement because nowhere in the form is there any evidence of an agreement by the debtor to grant claimants a security interest." (Italics added.) To the same effect are *Scott*

*v. Stocker* (10th Cir. 1967) 380 F.2d 123 and *DuBay v. Williams* (9th Cir. 1969) 417 F.2d 1277. Whether on July 5, 2023, and/or later July 24, 2023, Defendants had actual knowledge that not only did Plaintiff not want a loan from them, but that Defendants also did not want to provide a loan in stated amount of approximately $50,000. Even then, Defendants filed a UCC-1 financing statement on July 5, 2023 and had it publicly appear until August 30, 2023 – only terminating it when Plaintiff found this fact and notified Defendants Patrick Cole.

## VII. ONLY AFTER PLAINTIFF HAD REQUESTED, DID DEFENDANTS BIZ2CREDIT *ET AL* "TERMINATE" THE UCC-1 FINANCING STATEMENT FROM THE PUBLIC UCC WEBSITE.

Plaintiff Reshma Kamath had to notify Defendants, via Defendant Patrick Cole, that Plaintiff found the UCC-1 financing statement on the California Secretary of State website against her on August 30, 2023. **Plaintiff-Exhibit C**.

Only after and until Plaintiff Reshma Kamath notified Defendant Patrick Cole and informed him that Plaintiff would file a federal lawsuit did Defendants finally "terminate" the five-year UCC-1 financing statement. Even to this day, the UCC-1 shows a July 5, 2023 UCC-1 finally terminated on August 30, 2023. Had Plaintiff not found this UCC-1 lien and demanded Defendants terminate this within five years, Defendants would have started imposing a lien on Plaintiff's proceeds.

From July 5, 2023 to August 30, 2023, Plaintiff not only individually suffered losses, but also to her business. The Defendants Biz2Credit's defamatory, nullified, and falsified UCC-lien caused several other loan providers not to provide a business and personal loans to Plaintiff Reshma Kamath. Thus, Plaintiff Reshma Kamath has suffered damages as stated in the Complaint.

## VIII. FROM JULY 5, 2023 TO AUGUST 30, 2023, DEFENDANTS BIZ2CREDIT ET AL INITIATED A DEFAMATORY PUBLIC UCC 1 FINANCING STATEMENT THAT THERE WAS SOME KIND OF LOAN DRAWN, OVERDUE AND IN DEFAULT – NONE OF WHICH WERE TRUE.

Defendants are notorious for financial fraud in other jurisdictions, such as in New Jersey. Even in the year 2019, Defendant Itria Ventures had been barred by the Department of Business Oversight from practicing in the State of California. A true and correct copy of the consent order and application in **Exhibit C** is attached hereto and incorporated via reference, herein. Whether that condition of Defendant Itria not practicing in California exists today is a matter for further review and investigation.

Defendant Itria has defrauded several individual investors, loan borrowers, and corporate investors. It has negative filings in California, and sister-states alike. Such Complaint will be a penalty to such unscrupulous borrowers who falsely advertise and lure innocent business owners into their predatory loan traps.

## IX. PUNITIVE DAMAGES MUST NOT BE STRICKEN TO PENALIZE PREDATORY LENDERS AND UNSCRUPULOUS FINANCING COMPANIES

The Complaint properly pleads punitive damages in an effort for retributive damages. California's policy is to penalize predatory lenders from sister-states, such as Delaware/New Jersey; and, to avoid unscrupulous financiers from filing falsified UCC-1 financing statements in California's jurisdiction. California usury laws were designed to penalize lenders taking advantage of unwary and necessitous borrowers. *Buck v. Dahlgren* (1972) 23 Cal. App. 3d 779, 787, citing *White v. Seitzman* (1964) 230 Cal.App.2d 756, 761; *Wooton v. Coerber* (1963) 213 Cal.App.2d 142, 148; *In re Washer* (1926) 78 Cal.App. 759, 771-772. California has enacted anti-predatory lending statutes. *See* Cal. Fin. Code, §§ 4970-4979.8. (1933) Cal. 262, 266-267. The provisions of the California Finance Lenders Law are fundamental and unwaivable, as a matter of public policy. *Brack v. Omni Loan Co., Ltd.,* 164 CalApp.4th 1312, 1326 (2008). under California law, California Financial Code § 22001(a) provides the California Financing Law "shall be liberally construed and applied" to "protect borrowers against unfair practices by some lenders."

Punitive damages are properly demanded in the prayer for relief against Defendants – each of whom is involved in the predatory financing business. There is no MOTION TO STRIKE that Defendants have brought as a responsive pleading.

Thus, the Complaint's punitive damages are justifiable under the Ninth Circuit laws.

## X. FRCP RULE 11 SANCTIONS ARE WARRANTED AGAINST DEFENDANTS' ATTORNEYS JASON TAKENOUCHI AND HARRISON SMALLBACH FOR FAILING TO INVESTIGATE THE BASIC FACT, I.E., "NO VALUE HAD BEEN GIVEN"

Because the attorneys, Jason Takenouchi and Harrison Smallbach, both failed to properly investigate and review the Defendants' documents that **no value had been** given from Defendants to Plaintiff, FRCP 11 mandates sanctions against him. Mr. Takenouchi made further defamatory *ad hominem* statements in his Opposition against Plaintiff that Kamath was "angry" and "indignant" (*See*, Defendants' MTD, p.7), but there is **no evidence** to such statements. Particularly, how did Attorneys think there was anger when majority of the conversations from Plaintiff were in electronic written format. Failure of Attorneys Jason Takenouchi and Harrison Smallbach to investigate the facts before encapsulating them in a motion is sanctionable actions and omissions under Fed. *Rul. Civ. Proc. Rule* 11.

Defendants have also improperly noticed the Motion to Dismiss ("MTD") for "January 23, **2023**." This is not an errata, and Defendants had plenty of time to fix this.

Attorneys – when they sign a document – must ensure that the facts they allege are grounded in reality and are not made purely to malign the other litigants. Such

defamation – **without any factual and/or legal basis** – are sanctionable conduct pursuant to Fed. *Rul. Civ. Proc. Rule* 11. Thus, Plaintiff requests the amount of $10,500 in drafting the Opposition against four defendants, two natural persons, and two corporate persons, as well as for attorneys Attorneys Jason Takenouchi and Harrison Smallbach who failed to meet-and-confer whatsoever before filing their Defendants' MTD.

**CONCLUSION**

Plaintiff RESHMA KAMATH requests that the court overrule the Defendants' motion to dismiss, and should the court be inclined to sustain the motion to dismiss be granted, then leave to amend the Complaint be liberally allowed.

**DATED: December 26, 2023**          **RESHMA KAMATH**

*/S/ Reshma Kamath*

Reshma Kamath, Plaintiff,
*In Propria Persona*