Jason S. Takenouchi (SBN 234835)
KASOWITZ BENSON TORRES LLP
101 California Street, Suite 3950
San Francisco, California 94111
Telephone: (415) 421-6140
Facsimile: (415) 398-5030
*JTakenouchi@kasowitz.com*

Attorneys for Defendants ITRIA VENTURES LLC;
AMIT MISHRA; BIZ2CREDIT, INC.; and PATRICK
COLE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESHMA KAMATH, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ITRIA VENTURES LLC, a Delaware LLC; AMIT MISHRA, an individual; BIZ2CREDIT, INC., a New York Corporation; PATRICK COLE, an individual with the pseudonym, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 5:23-cv-05153<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND TO STRIKE PRAYER FOR PUNITIVE DAMAGES**<br><br>Date: January 23, 2023<br>Time: 10:00 a.m.<br>Dept: Courtroom 6, 4th Floor<br>Judge: Hon. Susan van Keulen |

# **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ........................................................................................................... 3
II. FACTUAL ALLEGATIONS IN THE COMPLAINT ................................................... 4
III. LEGAL STANDARD ...................................................................................................... 6
IV. ARGUMENT .................................................................................................................... 6
    A. The Complaint Fails To Allege Facts Supporting Its Outlandish Damages ........... 6
    B. The Complaint Fails To Allege Breach Of Contract ............................................... 6
    C. The Complaint Fails To Allege Fraud With Particularity....................................... 7
    D. The Complaint Fails To Allege False Advertising ................................................ 7
    E. The Complaint Fails To Allege Breach Of Fiduciary Duty ................................... 7
    F. The Complaint Fails To Allege A False Lien ........................................................ 8
    G. The Complaint Fails To Allege Defamation .......................................................... 8
    H. The Court Should Strike The Complaint's Claim For Punitive Damages ............. 8
    I. The Court Should Dismiss The Complaint With Prejudice ................................... 8
    J. Plaintiff's Assertion That The UCC-1 Financing Statement Was Premature Is Contradicted By The Text Of The RSA; Even If It Had Been Prematurely Filed, The Complaint Is Defective On Its Face ............................... 8
    K. Plaintiff's Request For Sanctions Is Baseless And Improper ............................... 10
V. CONCLUSION ............................................................................................................... 10

2      Case No. 5:23-cv-05143

DEFENDANTS' REPLY BRIEF ISO MOTION TO DISMISS

Kasowitz Benson
Torres LLP
Attorneys at Law
New York

## I. INTRODUCTION.

Plaintiff Reshma Kamath ("Kamath"), an attorney, filed this lawsuit as part of a shakedown effort against defendant Biz2Credit Inc. ("Biz2Credit"), an entity that Kamath approached for business funding in May 2023.

Kamath signed a contract with co-defendant Itria Ventures, LLC ("Itria")—an affiliate of Biz2Credit—for business funding in June 2023. Dkt. No. 1 ("Complaint" or "Compl.") ¶¶12, 48; Dkt. No. 9-2 (Request for Judicial Notice or "RJN") Ex. A at pp. 1, 15. Kamath signed the contract on behalf of her business, Reshma H. Kamath d/b/a/ Law Office of Reshma Kamath (the "Kamath Law Office"), and also in her individual capacity as a guarantor of the Kamath Law Office's obligations. *See id.*

In early August, after Itria conducted further due diligence, Itria offered Kamath $20,000 to $30,000 in funding—less than the $50,000 she originally sought. *Id.* ¶19. Kamath complained about the lesser amount, and communications then ceased for several weeks. *Id.* ¶20. On August 30, 2023, Kamath alerted Biz2Credit and Itria that a UCC-1 Financing Statement—a protective notice that was authorized by the parties' agreement—was on the California Secretary of State's website. *Id.* ¶24. Defendants removed the notice that same day, as shown by the Secretary of State's records. Dkt. No. 9-3, RJN Ex. B.

Kamath, a member of the California bar since 2021, then threatened to sue Biz2Credit, Itria, and two individual defendants, Amit Mishra and Patrick Cole (collectively "Defendants"), unless they either paid her $550,000 *or* gave her a "creative loan solution at zero percent interest for a five year term at $500,000." Defendants refused this extortion attempt, leading Kamath to file a disjointed and self-contradictory complaint on October 9.

Defendants filed a motion to dismiss the complaint (the "Motion" or "Mot.") on December 11, 2023. Dkt. No. 9. The Motion explains how the allegations in Kamath's complaint fail to support any of her claims, and how the complaint fails to allege any cognizable damages. *Id.*

Kamath's opposition brief ignores these fatal defects in the Complaint. Instead, Kamath argues that because she never accepted the money offered by Itria, the UCC-1 Financing

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3     Case No. 5:23-cv-05143
DEFENDANTS' REPLY BRIEF ISO MOTION TO DISMISS

Statement was invalid when it was filed. Kamath is wrong on the facts and law: the parties' contract allowed Itria to file the UCC-1 Financing Statement "at any time," and the California Commercial Code specifically allows funding entities to file such statements after the execution of funding contracts but *before* money changes hands, as a protective measure. The fact that Kamath did not ultimately accept Itria's funding does not mean the UCC-1 Financing Statement was incorrect, much less fraudulent, when it was submitted to the Secretary of State.

But even if the UCC-1 Financing Statement had been prematurely filed (and it was not), that would not support any of Kamath's claims or damages. The contract specifically allowed Itria to file the statement (so it was not a breach of contract), there's no particularized factual allegation to support Kamath's contention that the filing was part of a fraud or done with fraudulent intent, and the Complaint is devoid of any basis for Kamath's supposed damages. The Court should dismiss Kamath's Complaint with prejudice. To the extent the Court does not dismiss the entirety of the Complaint, it should strike the punitive damages claim.

Kamath's opposition brief further compounds her legal jeopardy by seeking Rule 11 sanctions on top of her clearly frivolous Complaint. The sanctions request, which is based on defendants' *characterization* of Kamath's conduct before she filed suit, is defective on both procedure and substance, and should be rejected out of hand. But to the extent the Court entertains the sanctions demand, defendants have submitted evidence to support their characterization of Kamath's conduct.

## II. FACTUAL ALLEGATIONS IN THE COMPLAINT.

Defendants' opening brief walked through the relevant allegations of the Complaint and the parties' contract, including the terms of the Receivables Sales Agreement ("RSA") under which Itria said it could offer up to $50,000 in funding to Kamath, subject to further analysis (a "due diligence review") of Kamath's business. Compl. ¶12; RSA ¶1(5), p. 2.[1] As provided for in

---

[1] A true and correct copy of this Receivable Sales Agreement ("RSA"), dated June 21, 2023, is attached to Defendants' Request for Judicial Notice as Exhibit A. *See* Dkt. No. 9-2.

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the RSA (*see id.* ¶9), Itria filed a UCC-1 Financing Statement with the Secretary of State around July 5, 2023. Compl. ¶5.[2]

As alleged in the Complaint, Biz2Credit later told Kamath it could not fund her with $50,000, but it could provide $20,000 to $30,000. Compl. ¶19. Kamath did not accept this funding, but she did not expressly reject it, either—communications between the parties simply ceased for several weeks. *Id.* ¶22.

The Complaint alleges that for a few weeks before August 30, 2023, the UCC-1 Financing Statement was viewable on the Secretary of State's website and "was circulated and seen by several individuals and third parties." Comp. ¶¶35, 84. But the Complaint does not identify any of these "individuals and third parties," or explain what relationship (if any) they had to Kamath's business. *See id.* Kamath also alleges that she lost funding opportunities due to the presence of the document on the Secretary of State's website (*id.* ¶¶52, 145), but the Complaint fails to name any prospective funding that Kamath *sought* during that period, much less prospective funding that she *lost* due to the UCC-1 Financing Statement.

The Complaint alleges that Kamath discovered the UCC-1 Financing Statement on her own "while searching the CA Secretary of State Website" on August 30, 2023. This contradicts her assertion in an early email with defendants that she "found out from a third party about this UCC filing." Declaration of Jason Takenouchi ("Takenouchi Decl."), Ex. A at p. 11.

On August 30, 2023, Kamath informed defendants that the UCC-1 Financing Statement was on the California Secretary of State's website. *Id.* ¶35. Defendants immediately removed the statement.[3]

---

[2] Kamath mistakenly refers to this UCC-1 Financing Statement as a "lien." It is not a lien. *See* Dkt. No. 9-3 (describing the July 4, 2023, document as an "Initial Financing Statement").

[3] A true and correct copy of the Notice of Cancelation of the UCC-1 Financing Statement, filed by Itria with the California Secretary of State, dated August 30, 2023, is attached to Defendants' Request for Judicial Notice as Exhibit B. *See* Dkt. No. 9-3.

DEFENDANTS' REPLY BRIEF ISO MOTION TO DISMISS

That same day, Kamath threatened to sue defendants unless she received a $550,000 payment or a "creative loan solution at zero percent interest for a five year term at $500,000." Takenouchi Decl., Ex. A.

### III. LEGAL STANDARD.

Defendants' opening brief explained the legal standards under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Dkt. No. 9, Mot. at pp. 9-10. Plaintiff does not challenge defendants' description of those standards.

### IV. ARGUMENT.

#### A. The Complaint Fails To Allege Facts Supporting Its Outlandish Damages.

Defendants' opening brief explained how the Complaint fails to contain the necessary allegations to support Kamath's demand for $2.9 million for lost personal and professional income and revenue, $2.3 million for expectancy and consequential damages, $250,000 for "emotional distress" and an unspecified amount of treble and punitive damages. Mot. at pp. 10-11. Defendants explained how this failure to allege factual support for damages is fatal to the Complaint. *See id.*

Kamath's opposition brief does not address this argument, much less the supporting case law. The Court should dismiss the Complaint with prejudice on this ground alone.

#### B. The Complaint Fails To Allege Breach Of Contract.

The opening brief explained how the two actions underpinning Kamath's breach of contract claim—defendants' purported failure to provide $50,000 in funding, and defendants' filing of the UCC-1 Financing Statement—were both authorized under the RSA. Mot. at pp. 11-13. Kamath's opposition brief does not address this language in the RSA.

Defendants' opening brief also explained how Itria's prefiling of its security interest in collateral is expressly permitted by Article 9 of the Uniform Commercial Code, which allows such a filing after a funding agreement has been executed. *See* Cal. Com. Code § 9509(b) ("By signing or becoming bound as debtor by a security agreement, a debtor or new debtor authorizes the filing of an initial financing statement, and an amendment, covering…. The collateral described in the security agreement.").

Kamath's opposition brief does not address this argument.

### C. **The Complaint Fails To Allege Fraud With Particularity.**

The opening brief explained how Rule 9 requires that fraud be pleaded with particularity, including the "who, what, when, where, and how" of the misconduct charged. Mot. at p. 13 (citing FED. R. CIV. PROC. 9(b) & *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126-1127 (9th Cir. 2009)). The brief demonstrated that the Complaint fails to allege any facts constituting fraud, much less particularized facts. Mot. at p. 13. Kamath does not address this fatal defect in her opposition brief.

### D. **The Complaint Fails To Allege False Advertising.**

The opening brief explained how the Complaint fails to allege anything in the Biz2Credit advertisements that were untrue, which is fatal to Kamath's claim under the Lanham Act. Mot. at p. 14. Kamath fails to address this defect in her opposition brief.

### E. **The Complaint Fails To Allege Breach Of Fiduciary Duty.**

The opening brief explained how Kamath's Complaint fails to plead a fiduciary relationship, which is a necessary element of Kamath's claim for breach of fiduciary duty. Mot. at p. 15 (citing, e.g., *Downey v. Humphreys* 102 Cal.App.2d 323, 332 (1951) ("[a] debt is not a trust and there is not a fiduciary relation between debtor and creditor as such."). Defendants also explained how the Complaint failed to plead a breach of any supposed fiduciary relationship. Mot at p. 16 (citing *Jhaveri v. ADT Sec. Servs., Inc.*, 2012 WL 843315 at *4 (C.D. Cal. Mar. 6, 2012) (finding that California law rejects the idea that a contractual relationship gives rise to a fiduciary relationship absent conduct or circumstances that could reasonably elevate the parties' conduct above those present by virtue of the contractual relationship); *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal.3d 197, 221 (1983) (finding no fiduciary relationship existed between seller and buyer based on sellers' routine representations about their product claimed expert knowledge about its utility and value) (superseded by statute on other grounds).

Kamath does not address this argument, or the supporting case law, in her opposition.

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7 Case No. 5:23-cv-05143
DEFENDANTS' REPLY BRIEF ISO MOTION TO DISMISS

### F. The Complaint Fails To Allege A False Lien.

Defendants' opening brief explained that the California Uniform Commercial Code does not create a private right of action for allegedly false liens, which is fatal to Kamath's false lien claim. Mot. at pp. 16-17. Kamath's opposition brief fails to address this defect.

Kamath also admits that the purported "lien" document was not actually a lien, but was instead a UCC-1 Financing Statement. *See* Opp. at p. 1 (describing a "UCC-1 Financing Statement"). Without a lien, there can be no "false lien."

### G. The Complaint Fails To Allege Defamation.

The opening brief explained how Kamath's defamation claim suffered from multiple defects, including the RSA's express approval of the filing of a UCC-1 Financing Statement at any time, and the Complaint's failure to allege any basis for defamation damages. Mot. at p. 17. Kamath fails to address these defects in her opposition brief.

### H. The Court Should Strike The Complaint's Claim For Punitive Damages.

The opening brief explained the basis for striking Kamath's demand for punitive damages under Rule 12(f). Mot. at pp. 18-19. Defendants noted that plaintiff must allege specific facts to support a request for punitive damages. *Id.* (citing *Smith v. Superior Court*, 10 Cal.App.4th 1033, 1042 (1992)). Kamath's opposition does not address the substance of this defect. Instead, Kamath asserts that defendants are "predatory lenders," based on nothing but her assertion that this is the case.

### I. The Court Should Dismiss The Complaint With Prejudice.

The Court need not grant leave to amend when it is clear that pleading deficiencies cannot be cured by amendment. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996). When amendment would be futile, as is the care here, dismissal may be ordered with prejudice. *Id*.

### J. Plaintiff's Assertion That The UCC-1 Financing Statement Was Premature Is Contradicted By The Text Of The RSA; Even If It Had Been Prematurely Filed, The Complaint Is Defective On Its Face.

Plaintiff admits that she signed the RSA, which detailed a transaction under which her business would receive funding in exchange for, *inter alia*, regular payments and the filing of a UCC-1 Financing Statement. The California Commercial Code allows the filing of an initial

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8     Case No. 5:23-cv-05143

DEFENDANTS' REPLY BRIEF ISO MOTION TO DISMISS

financing statement in such circumstances. *See* Cal. Com. Code § 9509(b) ("By signing or becoming bound as debtor by a security agreement, a debtor or new debtor authorizes the filing of an initial financing statement, and an amendment, covering…. The collateral described in the security agreement."). The fact that Kamath later rejected the funding offer does not mean that the UCC-1 Financing Statement was false or improper when it was filed.

In attempting to show that the UCC-1 Financing Statement was improper when filed, plaintiff's opposition brief attempts to rewrite the allegations of the Complaint. For example, Kamath now asserts that on July 5, 2023, when the UCC-1 Financing Statement was allegedly filed, defendants had "actual knowledge" that Kamath did not want a loan. Opp. at 19. But the Complaint contradicts this—according to the Complaint, Kamath asked about the timing of Itria's payment to her *after* that date, on July 12 and July 17. Compl. ¶¶16-1). By the Complaint's own terms, Biz2Credit and Itria had ample reason after July 5 to believe that Kamath still wanted to execute the transaction provided for in the RSA.

Kamath also asserts in the opposition brief that by July 24, 2023, defendants knew that Kamath did not want a loan. Opp. at 19. Again, the Complaint contradicts this assertion. According to the Complaint, Kamath continued to correspond with defendants about the funding after July 24. *See* Compl. ¶19. During this correspondence, Kamath learned, *on August 2,* that Itria's final offer was less than $50,000, to which she responded on August 3 by accusing defendants of "reneging on the contract." *Id.* ¶20. If, as Kamath now asserts, defendants knew by July 24 that she no longer wanted funding, there would have been no reason for Kamath to accuse defendants of "reneging on the contract" on August 3.

Defendants never tried to enforce any security interest on Kamath's business. To the contrary, they terminated the UCC-1 Financing Statement as soon as Kamath demanded it, when it became clear that Kamath was rejecting the reduced funding offer from Itria.

The bulk of Kamath's opposition brief is immaterial to the analysis of whether Kamath has adequately pleaded her claims. As explained in defendants' opening brief, her Complaint is defective.

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9     Case No. 5:23-cv-05143
DEFENDANTS' REPLY BRIEF ISO MOTION TO DISMISS

### K. Plaintiff's Request For Sanctions Is Baseless And Improper.

At the end of her opposition brief, Kamath presents a casual demand for Rule 11 sanctions, asserting that defendants' motion to dismiss was defamatory because it described her as "angry" and "indignant," and because there was a typo in the hearing date. Opp. at 22. These descriptions of Kamath, which are solidly within the protection of the California litigation privilege, are based on Kamath's correspondence with defendants. *See* Takenouchi Decl., Ex. A. They are not defamatory, and they provide no basis for Rule 11 sanctions.

## V. CONCLUSION.

Defendants' opening brief described the myriad pleading defects that support dismissal, with prejudice, of plaintiff's Complaint. Rather than address these defects head-on, plaintiff's opposition brief focuses on immaterial points that are undermined by the parties' contract and the California Commercial Code, to which she then adds a spurious Rule 11 sanctions demand.

For the reasons stated above and in defendants' opening brief, the Court should dismiss the Complaint with prejudice. To the extent the Court does not dismiss the entirety of the Complaint, it should strike the punitive damages claim. The Court should also deny plaintiff's request for sanctions.

Dated: January 2, 2024

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By: */s/ Jason S. Takenouchi*
Jason S. Takenouchi

Attorneys for Defendants ITRIA VENTURES LLC; AMIT MISHRA; BIZ2CREDIT, INC.; and PATRICK COLE