**RESHMA KAMATH,**
700 El Camino Real, Suite 120, #1084
Menlo Park, California 94025, United States
Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com
Plaintiff, *In Propria Persona*

# IN AND FOR THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT

| | |
|---|---|
| RESHMA KAMATH, an individual,<br><br>Plaintiff,<br><br>vs.<br><br><br>BIZ2CREDIT, INC., a New York corporation; SUMMIT ARORA, CEO of BIZ2CREDIT; PATRICK COLE, agent of BIZ2CREDIT with pseudonym; ITRIA VENTURES, LLC, a Delaware LLC; AMIT MISHRA, an individual; AND DOES 1-10, INCLUSIVE,<br><br><br>Defendants | Case No.: 5:23-cv-05153-SVK<br><br>**FIRST-AMENDED COMPLAINT FOR DAMAGES AND SPECIFIC PERFORMANCE:**<br><br>**1. BREACH OF CONTRACT.**<br>**2. FRAUD.**<br>**3. FALSE AND MISLEADING ADVERTISING.**<br>**4. BREACH OF FIDUCIARY DUTY.**<br>**5. FRAUDULENT LIEN/ FRAUDULENT UCC FILING.**<br>**6. DEFAMATION.**<br>**7. FALSE CLAIMS ACT.**<br><br>**DEMAND FOR JURY TRIAL** |

*TO THE HONORABLE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD, HEREIN:*

RESHMA KAMATH
www.myinitiallawyer.com

## AMENDED COMPLAINT

1.      Plaintiff/Consumer RESHMA KAMATH brings this lawsuit against the named Corporate Defendants MISHRA, COLE, ARORA, BIZ2CREDIT, INC., ITRIA VENTURES, LLC, and its agents for putting a fraudulent and defamatory UCC-1 lien on her law firm and business.

2.      No loan, no value, no lien. If there is no loan, no person/entity has a right to put a lien on anyone's business. In this case, there was no value exchanged.

3.      Liens follow loans/value.  Either when the contract becomes void and/or when the parties decide to walk away from the transaction/deal, such a fraudulent lien must be extinguished immediately. But Defendants BIZ2 CREDIT/AMIT MISHRA/ITRIA VENTURES LLC failed in this respect too.

4.      Merely conducting due diligence with no value/consideration exchanged and a voided contract does not justify perfecting a UCC-1 lien whatsoever.

5.      Defendants placed a fraudulent lien and kept it open in the hopes that Defendants BIZ2CREDIT/AMIT MISHRA/ITRIA VENTURES LLC could make a fast buck out of Plaintiff RESHMA KAMATH via her receivables after a few months or a year of Defendants keeping the UCC-1 lien active even without any loan.

6.      However, Plaintiff RESHMA KAMATH caught the Defendants on August 30, 2023 in their nefarious scheme.

RESHMA KAMATH

2

7.     A UCC-1 financing statement does not itself create a security interest. Needle v. Lasco Industries, Inc. (1970) 10 Cal.App.3d 1105, 1108 ["a financing statement filed with respect to a security agreement which **never comes into existence is a nullity**"]. § 9203, subd. (1). A security interest attaches when it becomes enforceable against the debtor with respect to the collateral, with attachment occurring as soon as **all three enumerated conditions exist**. § 9203, subd. (2). Emphasis Added.

8.     In this case, Defendants failed to meet the three codified prongs, because **no value was given.**

9.     Unlike the court's previous iteration, there was **no sale of account receivables, because no value was given**. Any and all such sale or contract was voided.

10.    Uniform Commercial Code (U.C.C.) Articles III and IX govern this case.

11.    Again, there was no debtor-creditor relationship, and there was no sale of account receivables with no loan exchange.

12.    In this, a UCC-1 lien is fraudulent and defamatory against Plaintiff. If this court alleges a sale of account receivables, that did not occur in a vacuum.

13.    The falsified UCC-1 lien occurred within the context of loan – which was **not exchanged** between the Plaintiff and Defendants. Thus, no value was given per UCC Articles 3 and 9.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.

## PARTIES AND JURISDICTION

14.    "Plaintiff RESHMA KAMATH" is an individual and natural person.

15.    Plaintiff RESHMA KAMATH is a lawyer licensed in the State of California. Plaintiff RESHMA KAMATH is a sole proprietor and operates under the doing business as [d/b/a] LAW OFFICE OF RESHMA KAMATH working only for clients in the State of California and any pro hac vice work.

16.    The LAW OFFICE OF RESHMA KAMATH operates with lawyer Reshma Kamath, California Bar No. 333800; 700 El Camino Real, Suite 120, #1084, Menlo Park, California 94025, United States, Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com and has a business checking account affiliated to Plaintiff RESHMA KAMATH's licensure.

17.    Defendant BIZ2CREDIT, INC. ["BIZ2CREDIT"] is a New York corporation which, per information and belief, has conducted business within California and nationwide at all times relevant hereto. Defendant BIZ2CREDIT advertises on South Asian and Indian television channels in California and nationwide to offer business loans to individuals and organizations.



18.    Defendant ITRIA VENTURES, LLC ["ITRIA"] is a Delaware LLC, and trademark of BIZ2CREDIT. Unbeknownst to Plaintiff RESHMA KAMATH, on July 05, 2023, Defendant ITRIA filed a false UCC-lien against Plaintiff.

19.    Defendant PATRICK COLE ["COLE"] is an individual who, per information and belief, has resided and conducted business within the State of New York at all times relevant hereto. It is unclear whether COLE is a pseudonym.

20.    Defendant AMIT MISHRA ["MISHRA"] is an individual who, per information and belief, has resided and conducted business within the State of New York at all times relevant hereto. Unbeknownst to Plaintiff KAMATH, on July 5, 2023, Defendant MISHRA filed a false UCC-lien against RESHMA H. KAMATH, and LAW OFFICE OF RESHMA KAMATH.

21.    DEFENDANT SUMMIT ARORA is the CEO of BIZ2CREDIT that allegedly outsources its clients to ITRIA without properly notifying consumers.

22.    All individual Defendants are Indian and male who could care less about seeing an Indian woman succeed. And nefariously bring in deceptive financial schemes and tricks to the United States as a ploy to lure women and consumers.

23.    Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1-10, inclusive, and for that reason sues said Defendants by such fictitious names. Based on information and belief, each of the Defendants designated herein as a DOE is legally responsible in some manner for the events



and happenings herein referred to, and/or proximately and actually caused injuries and damages to the Plaintiff, as alleged herein. As necessary, and as discovery continues, Plaintiff will file and serve one and/or more amendments to this pleading upon learning the true names and identities of these DOE Defendants.

24.     Venue is proper in this Court, which has jurisdiction over all Defendants for the acts and omissions alleged herein, as the obligations or liabilities arose from within this County.

## II.

## FACTUAL ALLEGATIONS

25.     In May and June 2023, Plaintiff RESHMA KAMATH was seeking a business loan to expand her law firm and to hire staff due to the gaining traction of her law firm and increasing demands of clientele.

26.     In May 2023, Plaintiff RESHMA KAMATH had reached out to Defendant BIZ2CREDIT because the latter had advertised on local South Asian and Indian television channels. One would think Indian people would want Indian women to succeed.

27.     Defendant COLE, on behalf of Defendant BIZ2CREDIT, e-mailed and telephonically contacted Plaintiff RESHMA KAMATH. The due diligence and review period was in May and June 2023. Not in July and August 2023.



28.    In June 2023, Defendant BIZ2CREDIT had a funding call with Plaintiff RESHMA KAMATH.

29.    In June 2023, Defendants BIZ2CREDIT were finalizing the agreement of an amount that Defendant BIZ2CREDIT had offered Plaintiff RESHMA KAMATH. The amount was $50,000 with an origination fee to the Defendants.

30.    On June 22, 2023, Plaintiff RESHMA KAMATH had informed Defendant BIZ2CREDIT that Plaintiff RESHMA KAMATH did **not** need the funding.

31.    The purported account receivables agreement from June 21, 2023, became **unenforceable** and voidable.

32.    Defendants had altered a **material key term**, i.e., loan term.

33.    Defendants also had **not** provided consideration or **loan value** to Plaintiff.

34.    Defendants BIZ2CREDIT, INC. and its partner, Defendant ITRIA VENTURES, LLC had ulterior motives to nefariously get monies from Plaintiff RESHMA KAMATH.

35.    Defendants placed a UCC-1 lien with a voided agreement.

36.    Unbeknownst to Plaintiff RESHMA KAMATH until August 30, 2023, Defendants BIZ2CREDIT, INC. illegally and feloniously filed a UCC-1 lien via its venture partner ITRIA VENTURES LLC against Plaintiff on July 05, 2023.

RESHMA KAMATH
www.myinitiallawyer.com

37.     This became known to Plaintiff RESHMA KAMATH on August 30, 2023 from another capital funding source whose representative, Luis Hernandez told Plaintiff about a UCC lien filed.

38.     From July 12 to 17, 2023, Plaintiff RESHMA KAMATH continued to inform Defendants that Plaintiff did not want any loan from them. Even then Defendants did not expunge the nefariously-filed UCC-1 lien.

39.     On July 24, 2023, Plaintiff RESHMA KAMATH again informed Defendant BIZ2CREDIT and Defendant COLE that Plaintiff RESHMA KAMATH did **not** want any funding from Defendant BIZ2CREDIT. Even then Defendants did not expunge the nefariously-filed UCC-1 lien.

40.     Thus, Plaintiff RESHMA KAMATH **declined** any monetary offer. There was **no exchange of monetary sum** between parties thereafter.

41.     On August 02, 2023 (almost a month after the UCC-1 lien of July 05, 2023, and Plaintiff RESHMA KAMATH's declination of the loan from June 2023), Defendant BIZ2CREDIT again materially altered a key loan term in the voidable contract.

42.     Now, there was a renewed counter-offer of an alleged loan amount of $20,000-$30,000 from Defendant BIZ2CREDIT.

43.     From July 05, 2023 and on-going, Defendants did **not** actually, and/or constructively notify Plaintiff RESHMA KAMATH, and her business, LAW



8

OFFICE OF RESHMA KAMATH that the Defendants had filed a UCC-lien on July 05, 2023.

44. Plaintiff did not have any and all actual, and/or constructive knowledge of such a lien filing during that time-period – until a third-party had informed her

45. From May 2023 and on-going, Plaintiff KAMATH and Defendants had did not exchange any kind of monetary sum in cash, and/or in kind. There was no need to file a lien, because money was never exchanged, and there was never a debt owed from plaintiff to defendants.

46. Defendants were making a fraudulent attempt to collect Plaintiff RESHMA KAMATH's accounts receivables even when there was no value exchanged between them.

47. From June 2023 to July 05, 2023, there was no negotiation and due diligence period - unlike what Defendants and the court are making it to be in a racially misogynistic fashion.

48. From July 05, 2023 to August 30, 2023, there was no negotiation and no due diligence period - unlike what Defendants and the court are making it to be in a racially misogynistic fashion.

49. On August 30, 2023, Plaintiff RESHMA KAMATH had informed defendant PATRICK COLE that the defamatory false lien that was fraudulently and maliciously filed against her must be terminated immediately.



9

50.     Defendant COLE stated he would terminate the lien. It was terminated after some time. However, it was not expunged. It will be visible for at least five years on the UCC-1 lien even when there was no loan and a voided agreement.

51.     As a direct and proximate result of the actions and omissions of Defendants, Plaintiff has suffered damages in an amount to be proven at trial.

52.     Filing a false lien can result in a misdemeanor and/or even a felony charge.

53.     For Defendants, the California Penal Code § 115 PC makes it a criminal offense in California knowingly to file, register, or record a false or forged document in any public office within the state. Doing so is a felony offense that is punishable by up to three years in jail or prison.

54.     For Defendants ITRIA, Delaware enacted the uniform information statement remedy in Del. Code Ann. tit. 6 § 9-518. Delaware enacted the uniform Article 9 remedies for non-compliance in Del. Code Ann. tit. 6 § 9-625. Del. Code Ann. tit. 11 § 877.

55.     A person is guilty of offering a false instrument for filing when, knowing that a written instrument contains a false statement or false information, and intending to defraud the State, a political subdivision thereof or another person, the person offers or presents it to a public office or a public servant with the knowledge or belief that it will e-filed with, registered or recorded in or otherwise become a part of the records of the public office or public servant.



56.     Since August 30, 2023, Plaintiff RESHMA KAMATH then reached out to the defendants' attorney,

57.     Plaintiff RESHMA KAMATH further provided Defendants, as well as their attorney, HARRISON over a month to resolve this, but to no avail. The attorney was very uncivil, unprofessional, and retaliatory.

58.     The defendants' attorneys did not investigate the facts, and was not at all amicable in resolving the false UCC lien that his clients had defamatorily and maliciously filed against Plaintiff KAMATH and her law firm.

59.     Thus, Plaintiff RESHMA KAMATH now seeks legal recourse against the defendants after trying for over a month – even in October 02, 2023, to resolve this out-of-court.

60.     After this Complaint was filed, Mr. Peter Mantell, CEO of Ampersand Accounting, contacted Plaintiff RESHMA KAMATH about Defendant ITRIA VENTURES, LLC's fraudulent conveyance under New York's False Claims Act.

61.     Allegedly, Defendant ITRIA VENTURES, LLC is masking account receivables as loans, and doing do so to intentionally to evade taxes or other debts.

62.     Plaintiff works with many loan providers and has amicable healthy working relationship with them. They're all transparent and work in the best interest of Plaintiff rather than Defendants – who filed the UCC-1 lien only to collect on Plaintiff someday had Plaintiff not found this out from a different source.



## II.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

### [Against All Defendants]

63.     Plaintiff re-alleges and incorporates via reference each of the preceding paragraphs as though set forth fully herein.

64.     Parties entered into a voidable account receivables contract for a business loan in the amount of over $50,000 with an origination fee and interest to Defendants.

65.     The due diligence and review period was in May and June 2023. Not in July and August 2023.

66.     Defendants breached the contract, because Defendants **altered a material key term of the contract**, i.e., the loan term, $50,000 to $20,000-30,000.

67.     The contract became unenforceable, void and voidable.

68.     Parties also decided to walk away from the contract essentially nullifying the contract.

69.     Defendants also did **not provide any loan consideration** or value to Plaintiff.



12

70.     Yet, on July 05, 2023, the Defendants filed a UCC-1 lien for the sum of $50,000 on the California Secretary of State website - unbeknownst to Plaintiff until August 30, 2023 when a third-party informed her.

71.     Defendants filed a false UCC-lien on July 05, 2023 even after the parties had decided to void the contract. Defendants did so without notifying and informing Plaintiff; and, without any monetary exchange, i.e., no loan from Defendants to Plaintiff.

72.     Defendants' conduct and omission caused harm and damages to Plaintiff KAMATH, including but not limited to clientele, defamation, professional reputational damages, and other third- parties not engaging in transactions with Plaintiff KAMATH based on the false lien maliciously filed by Defendants.

73.     The harm is not only to Plaintiff KAMATH's business as in clients who may do a public search and find this false lien, but also an impediment to Plaintiff KAMATH's future ability to acquire loans. Thus, the harm because of Defendants' conduct and lack thereof is trifold, i.e., monetary, non- monetary, and punitive.

74.     Accordingly, Plaintiff KAMATH was and is actually and proximately harmed in an amount of damages to be determined at trial according to proof at trial, plus interest, fees, and costs.

///

///



## SECOND CAUSE OF ACTION

## FRAUD

### [Against All Defendants]

75.    Plaintiff re-alleges, and incorporates via reference each of the preceding paragraphs as if set forth fully herein.

76.    Defendants fraudulently induced Plaintiff because Defendants never intended to provide a loan to Plaintiff in the amount of $50,000 or in the alternate sums of $20,000-30,000.

77.    Defendants fraudulently induced Plaintiff, because Defendants only wanted to file a UCC-1 lien without any loan exchange.

78.    Defendants, particularly Defendant Amit Mishra, had the *scienter* because they intended to collect account receivables from Plaintiff months later even when Defendants had not provided a loan.

79.    This is crucial for scienter because Defendants had to have provided a loan value for them to claim any security interest in Plaintiff's receivables. This is not discretionary – this is a must under the UCC Articles for security interest perfection.

80.    Defendants did not file the fraudulent UCC-1 lien during the due diligence period in May or June 2023. The due diligence period of May and June 2023 existed prior to the contract signing.



81.     Thus, any fraudulent UCC-1 lien Defendants filed after the parties had walked away from the contract, was intentionally filed to fraudulently collect receivables from Plaintiff.

82.     Defendants had filed the fraudulent UCC-1 lien on July 05, 2023 - after the parties had decided to walk away from the contract in June 2023 and the contract had become void in June 2023.

83.     Defendants did not terminate or extinguish this lien until August 30, 2023.

84.     Only when Plaintiff RESHMA KAMATH informed the Defendants who they were and why they filed such a lien did Defendant PATRICK COLE pretend to be apologetic. Plaintiff finally caused Defendants to terminate the lien – if a third party source, Luis Hernandez, had not informed Plaintiff on August 30, 2023, then Plaintiff would not have known Defendants' ploy to trick, deceive and dupe her into Defendants collecting her receivables.

85.     Further, Defendants were masking account receivables as loans to deceive Plaintiff and for Defendants to evade taxes.

86.     This was unbeknownst to Plaintiff until other alleged loan recipients such as Peter Mantell, CEO of Ampersand Accounting, contacted Plaintiff during the pendency of this case.

87.     Defendants knew or should have known, the (mis-)representations they made were false at the time they were made.



88.     Defendants intended for Plaintiffs to rely thereon to induce them to provide a sum of over $50,000.

89.     In May and June 2023, Plaintiff KAMATH was seeking a business loan to expand her law firm and to hire staff due to the gaining traction of her law firm and increasing demands of clientele.

90.     In May and June 2023, Plaintiff KAMATH had reached out to Defendant BIZ2CREDIT because the latter had advertised on local South Asian and Indian television channels.

### THIRD CAUSE OF ACTION

### FALSE AND MISLEADING ADVERTISING

**Lanham Act 15 U.S.C. §§ 1051 et seq.,; California Business and Professions Code § 17500; Bus. Prof. Code, § 17536; Consumer Legal Remedies Act / Civil Code § 1750 et seq.;**

**[Against All Defendants]**

91.     Plaintiff re-pleads, re-alleges, and incorporates via reference each of the preceding paragraphs as though set forth fully herein.

92.     In violation of the aforementioned Acts and statutes, Defendants made several false and misleading statements on the television channels such as lending to South Asian/Indian women. Defendants had no intention of lending to Plaintiff RESHMA KAMATH.



93.     In violation of the aforementioned Acts and statutes, Defendants did not ever intend to provide a business loan to a law firm such as that of Plaintiff RESHMA KAMATH. However, Defendants made a farce to gather bank account information and personal data from Plaintiff RESHMA KAMATH.

94.     In violation of the aforementioned Acts and statutes, Defendants only intended to file a false and fraudulent UCC filing against Plaintiff RESHMA KAMATH to collect against Plaintiff's receivables even when no value was provided or exchanged.

95.     Pursuant to the Lanham Act 15 U.S.C. §§ 1051 et seq., Plaintiff RESHMA KAMATH can recover because Defendant BIZ2CREDIT's trademarked entity, Defendant ITRIA had filed a false lien against Plaintiff RESHMA KAMATH.

96.     Plaintiff RESHMA KAMATH has standing, because Defendants misled that they would lend to law firms based on their false and misleading advertising. Pursuant to this Act, Plaintiff RESHMA KAMATH can recover reasonable attorneys' fees.

97.     The injury-in-fact and harm is not only to Plaintiff RESHMA KAMATH's business as in clients who may do a public search and find this false lien, but also an impediment to Plaintiff's future ability to acquire loans. Thus, the harm because of Defendants' conduct and lack thereof is trifold, i.e., monetary, non-monetary,



and punitive. Plaintiff KAMATH has lost compensation and monies because of Defendants' conduct and lack thereof.

98.     As a result of Defendants' acts and omissions, Plaintiff KAMATH was actually and proximately harmed in an amount to be determined at trial according to proof, plus interest, fees and costs.

99.     Defendants' conduct was oppressive, fraudulent, and malicious so as to justify an award of punitive damages.

## FOURTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

### [Against All Defendants]

100.   Plaintiff re-alleges and incorporates via reference each of the preceding paragraphs as if set forth fully herein.

101.   Defendants agreed to lend a sum of over $50,000 business loan for working capital at a high-interest rate to Plaintiff.

102.   As a financial credit institution, Defendants owed Plaintiffs a fiduciary duty of the highest good faith.

103.   Not only did defendants renege but they also filed a falsified and fraudulent lien on Plaintiff's persona name and professional law office.

104.   Defendants' acts and lack thereof constitute a breach of their fiduciary duty to Plaintiff.



105.   Plaintiff has suffered damages actually and proximately caused as a result of Defendants' breach of each of their fiduciary duties.

106.   The harm is not only to Plaintiff's business as in clients who may do a public search and find this false lien, but also an impediment to Plaintiff's future ability to acquire loans. Thus, the harm because of Defendants' conduct and lack thereof is trifold, i.e., monetary, non-monetary, and punitive.

107.   As a result of Defendants' acts and omissions, Plaintiff was/is actually and proximately harmed in an amount to be determined at trial according to proof, plus interest, fees and costs.

108.   Defendants' conduct was oppressive, fraudulent, and malicious so as to justify an award of punitive damages.

**FIFTH CAUSE OF ACTION**

**FRAUDULENT LIEN/FRAUDULENT UCC FILING**

**UCC § 9518(c); Cal U Com Code § 9518; and, Cal U Com Code § 9625; Del. Code Ann. tit. 6 § 9-518; Del. Code Ann. tit. 6 § 9-625;**

**[Against All Defendants]**

109.   Plaintiff re-alleges and incorporates via reference each of the preceding paragraphs as if set forth fully herein.

110.   Under Article 9, specifically UCC § 9518(c), a bogus lien can be terminated but not expunged and remains publicly filed for its lifetime of at least five years.



111.   Defendants have filed such a bogus false lien against Plaintiff KAMATH.

112.   Accordingly, Defendants' false lien is a publicly filed document, such as UCC-1 and UCC-3 that purports to describe a lien, but which has **no legal basis**, and/or which is based upon **false, fictitious, or fraudulent statements and/or representations.**

113.   **Defendants did not have a security interest to perfect.**

114.   **Defendants did not provide a loan, i.e., there was no value.**

115.   **Therefore, there is <u>no security interest</u> in Plaintiff's account receivables, because there was no loan exchanged between parties.**

116.   **If there is no loan exchanged as well as the voided contract, then there is no security interest.**

117.   <u>**Security interests do not linger for weeks and months after parties decided not to transact**</u> **with each other – in this case, Plaintiff and Defendants did not exchange any loan, i.e., per the Uniform Commercial Code statute NO "VALUE" between parties.**

118.   **Thus, WHEN NO VALUE between parties, there was no need for Defendants to file a UCC-1 lien to perfect a security interest against Plaintiff's receivables.**

119.   In the United States, Defendants' **filing of false liens has been used as a tool of harassment and revenge**.



20

120.   Defendants put a false lien to eventually collect against Plaintiff RESHMA KAMATH, because Plaintiff RESHMA KAMATH as an Indian woman and lawyer is doing well in her work.

121.   Men, mainly Indian men, cannot stand success-driven Indian women.

122.   Defendants BIZ2CREDIT particularly AMIT MISHRA's only intent was to place a fraudulent lien on July 05, 2023 and then months later pretend there was a loan and perfected security interest between parties to harass and threaten Plaintiff to collect on her account receivables.

123.   There was no monetary exchange and no loan value between parties at any time. Thus, UCC-1 lien becomes fraudulent.

124.   There was no intent to renew the voided contract. Thus, any UCC-1 lien filed thereafter becomes fraudulent.

125.   The UCC-1 lien was not filed during the due diligence period when the Defendants were considering providing the loan in May and June 2023.

126.   The Defendants' UCC-1 lien was filed after the due diligence period that ended around June 22, 2023, i.e., the Defendants' UCC-1 lien was filed on July 05, 2023 – without notifying Plaintiff – after the parties had walked away from the contract making it voidable and unenforceable.



127.   The Defendants' UCC-1 lien was filed after the due diligence period that ended around June 22, 2023, the Defendants' UCC-1 lien was filed on July 05, 2023 after Defendants had altered a key material term.

128.   The fraudulent UCC-1 filing was maliciously filed, i.e., the Defendants-filer falsely submitted a lien against their target, i.e., Plaintiff KAMATH, alleging that the target, Plaintiff KAMATH, owes the filer, Defendants, some sum of money.

129.   Defendants' lien is inexpensive and relatively easy to file for Defendants but, for the target, requires significant time and attorneys' fees to be dissolved by a court.

130.   Even if a termination was filed *only after* Plaintiff RESHMA KAMATH had notified Defendants of finding the false lien against her name on August 30, 2023; and, even if an informational statement was filed, Plaintiff RESHMA KAMATH can recover against Defendants for the mere filing of a false lien **under UCC Article 9.**

131.   Prior to filing the false lien, California enacted a pre-filing remedy where the Cal. Gov't. Code § 12181, which states in relevant part that the Secretary of State's office may refuse to perform a service and/or refuse a filing based on a reasonable belief that the service or filing is being requested for an unlawful, false, or fraudulent purpose, to promote or conduct an illegitimate object or purpose, and/or



22

is being requested or submitted in bad faith or for the purpose of harassing or defrauding a person or entity.

132.   Upon the filing of a false lien, to protect consumers, California enacted the uniform information statement remedy in the UCC and the state equivalent, Cal U Com Code § 9518.

133.   Upon the filing of a false lien, to protect consumers, California enacted the uniform Article 9 remedies for noncompliance in the UCC and the state equivalent, Cal U Com Code § 9625.

134.   Defendants BIZ2CREDIT et al violated UCC § 9518; Cal U Com Code § 9518; and, Cal U Com Code § 9625.

135.   Defendants BIZ2CREDIT et al filed a fraudulent lien against Plaintiff RESHMA KAMATH for an unlawful, false, or fraudulent purpose, to promote and/or conduct an illegitimate object and/or purpose, and/or is being requested and/or submitted in bad faith and/or for the purpose of harassing and/or defrauding RESHMA H. KAMATH, and the LAW OFFICE OF RESHMA KAMATH pursuant to Cal. Gov't. Code § 12181.

136.   An injury claim form for the government code is not required, because Plaintiff KAMATH is suing under the California Commercial Code, and the Uniform Commercial Code.



137.   Defendants BIZ2CREDIT et al could have criminal penalties instituted against them under Cal. Pen Code § 115.

138.   Similarly, because Defendant ITRIA is allegedly incorporated in Delaware, the state of Delaware enacted the uniform information statement remedy in Del. Code Ann. tit. 6 § 9-518. Delaware enacted the uniform Article 9 remedies for non-compliance in Del. Code Ann. tit. 6 § 9-625.

139.   Defendants BIZ2CREDIT et al violated Section 9–518 of Delaware's UCC, which authorizes a person to file an "information statement" (or a "correction statement" under the UCC) if the person believes that the existing record is inaccurate or a statement has been wrongly filed. 6 Del. C. § 9–518. Defendants BIZ2CREDIT et al did not file any information statement, and/or any statement correcting any wrongly-filed statement against Plaintiff KAMATH.

140.   Pursuant to Del. Code Ann. tit. 11 § 877, Defendants BIZ2CREDIT et al can have criminal penalties levied against them.

141.   Defendants BIZ2CREDIT et al violated the Delaware uniform information statement remedy in Del. Code Ann. tit. 6 § 9-518; and, the uniform Article 9 remedies for non-compliance in Del. Code Ann. tit. 6 § 9-625.

142.   The injury-in-fact, and harm is not only to Plaintiff's business as in clients who may do a public search and find this false lien, but also an impediment to Plaintiff's future ability to acquire loans. Thus, the injury-in-fact, and harm to



24

Plaintiff is also because Defendants' conduct and lack thereof caused defamation and tarnished professional reputation as a lawyer and business person causing monetary harm and loss.

143. The harm to Plaintiff is trifold, i.e., monetary, non-monetary, and punitive.

144. Defendants should be penalized under the remedies provided for a malicious and fraudulent UCC-1 lien filing.

145. Plaintiff demands damages, relief and remedies pursuant to proof at trial with interest, fees and costs.

**SIXTH CAUSE OF ACTION**

**DEFAMATION**

**[Against All Defendants]**

146. Plaintiff re-alleges and incorporates via reference each of the preceding paragraphs as though set forth fully herein.

147. Defendants have defamed - in libel and slander - Plaintiff RESHMA KAMATH personally and professionally in that Defendants publicly filed a **false, fraudulent and malicious UCC-lien** filing on July 05, 2023 and circulated thereafter.

148. Defendants have made a **false statement** on the CA Secretary of State website, for which each publication is a single act of defamation – for libel and slander - on July 05, 2023, and circulated thereafter.



149.   Defendants' UCC filing is false, i.e., it is not true. It is bogus.

150.   Defendant filed the UCC-1 false lien with reckless disregard, or after knowing the truth of the matter, i.e., there was no loan exchange, no perfected security interest, and no security agreement between parties. The contract was voided because parties decided to walk away from the transaction.

151.   Defendants did not offer a loan – and that is why there is no perfected security interest in Plaintiff's receivables. Nothing gets simpler than this for the court.

152.   Defendants have tarnished reputation of Plaintiff RESHMA KAMATH.

153.   Because of Defendants' conduct and lack thereof, i.e., slander and libel, Defendants have actually and proximately caused other individuals to not lend to Plaintiff RESHMA KAMATH, and/or to engage in business transactions with Plaintiff RESHMA KAMATH.

154.   Because of Defendants' conduct and lack thereof, i.e., slander and libel, Defendants have actually and proximately caused harm and injury in fact to Plaintiff RESHMA KAMATH.

155.   Plaintiff demands monetary, non-monetary and punitive damages, relief and remedies pursuant to the statutory code, and attorneys' fees and costs, according to proof at trial.

///



## SEVENTH CAUSE OF ACTION

## FALSE CLAIMS ACT

### Against Defendants

156.  Plaintiff re-alleges and incorporates via reference each of the preceding paragraphs as though set forth fully herein.

157.  The False Claims Act, 31 U.S.C. § 3729 et seq., imposes significant penalties on those who defraud the Government.

158.  Defendants are masking account receivables as loans, perfecting security interests in account receivables, and then filing UCC-1 liens against such account receivables.

159.  This is Defendants' ploy to evade taxes inter alia.

160.  Intent of Defendants maybe averred generally pursuant to this statute.

161.  Sections 3729(a)(1) and (a)(2) of the False Claims Act subject to civil liability entities that knowingly submit false or fraudulent claims to the government for payment or approval. Clausen, 290 F.3d at 1309. Defendants were attempting to classify account receivables as loans, perfecting falsified security interests, and placing UCC-1 liens on such fraud.

162.  Liability under the False Claims Act arises from the submission of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal policies. Id. at 1311.



27

163.   This Court has held that complaints alleging violations of the False

Claims Act are governed under Rule 9(b). Id. at 1308-09. The act of

submitting a fraudulent claim to the government is the *sine qua non* of a False

Claims Act violation. Plaintiff demands monetary, non-monetary and punitive

damages, relief and remedies pursuant to the statutory code, and attorneys' fees

and costs, according to proof at trial.

## IV.

## **PRAYER FOR RELIEF**

   WHEREFORE, Plaintiff respectfully requests the following relief:

On Each Cause of Action:

1.   For an award of $3.90 million in damages based on Plaintiff's

personal and professional income and revenue according to proof at

trial;

2.    For an award of general damages according to proof at trial;

3.     For an award of actual, and special, damages according to proof

at trial;

4.     For an award of expectancy and consequential damages in the

amount of $2.30 million according to proof at trial;

5.     For present and future loss of income;

6.     For an award of treble and punitive damages according to proof at



trial.

7.   For an award of restitution, and all other appropriate legal and equitable relief;

8.   For specific performance or injunctive relief in permanently extinguishing, expunging or removing the false UCC-1 lien against Plaintiff;

9.   For an award of emotional distress damages in the amount over $250,000 according to proof at trial;

10.  For costs of suit herein;

11. For reasonable attorneys' fees as authorized under statute such as the Lanham Act, voided contract, and other statutes per proof at trial;

12.  For pre-judgment and post-judgment interest;

13.  For declaratory relief of rights and remedies of all parties and properties;

14.  For such further relief as the Court may deem proper in the interest of justice.

**DATED: March 19, 2024**          **RESHMA KAMATH**

*/S/ Reshma Kamath*

Reshma Kamath
Plaintiff

RESHMA KAMATH

1

2

**PROOF OF SERVICE**
**F.R.C.P. 5 / C.C.P. § 1013(a)(3), C.C.P. § 1010.6(a)(6) /Cal. R. Ct. R. 2.260**

3

4

5

6

I am employed in the County of San Mateo, California. I am over the age of 18, and not a party to this action. My business address is: 700 El Camino Real Suite 120, #1084, Menlo Park, California 94025, and my electronic mailing address is reshmakamath2021@gmail.com for electronic service. On March 19, 2024, I served the following document(s), by method(s) indicated below, on the parties in this action: SEE ATTACHED SERVICE LIST.

7

8

9

10

11

**FIRST-AMENDED COMPLAINT FOR DAMAGES AND SPECIFIC PERFORMANCE:**
**1. BREACH OF CONTRACT.**
**2. FRAUD.**
**3. FALSE AND MISLEADING ADVERTISING.**
**4. BREACH OF FIDUCIARY DUTY.**
**5. FRAUDULENT LIEN/FRAUDULENT UCC FILING.**
**6. DEFAMATION.**
**7. FALSE CLAIMS ACT.**

12

13

14

15

**ELECTRONIC SERVICE**
In electronically transmitting courtesy copies of the document(s) listed above to the email address(es) of the person(s) set forth on the attached service list. To my knowledge, the transmission was reported as complete and without error, as per the electronic service agreement between all parties and their attorneys of record, herein.

16

17

18

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct. Executed on the 19th day of March 2024.

19

20

*/s/ Reshma Kamath*
Reshma Kamath

21

**SERVICE LIST**
Harrison S. Smalbach
Senior Counsel Itria Ventures LLC
E. harrison.smalbach@biz2credit.com Address: unknown/not provided (O) 212.644.4555 ext. 109

22

23

24

25

26

27

28

Jason S. Takenouchi
E.: JTakenouchi@kasowitz.com Address: Kasowitz Benson Torres LLP
101 California Street Suite 3950, San Francisco, CA 94111
Tel. (415) 655-4356 Fax. (415) 520-9237
Attorneys for Defendants BIZ2CREDIT, INC., a New York corporation; SUMMIT ARORA, CEO of BIZ2CREDIT; PATRICK COLE, agent of BIZ2CREDIT; ITRIA VENTURES, LLC, a Delaware LLC; AMIT MISHRA, an individual

