1    Jason S. Takenouchi (SBN 234835)
    KASOWITZ BENSON TORRES LLP
2    101 California Street, Suite 3950
    San Francisco, California 94111
3    Telephone: (415) 421-6140
    Facsimile: (415) 398-5030
4    *JTakenouchi@kasowitz.com*

5    Attorneys for Defendants

6    BIZ2CREDIT, INC.; SUMMIT ARORA; PATRICK
    COLE; ITRIA VENTURES; and AMIT MISHRA
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11   RESHMA KAMATH, an individual,        Case No. 5:23-cv-05153-SVK

12          Plaintiff,

13        v.                  **DEFENDANTS' NOTICE OF MOTION**
                           **AND MOTION TO DISMISS**
14   BIZ2CREDIT, INC., a New York corporation;   **PLAINTIFF'S FIRST AMENDED**
    SUMMIT ARORA, CEO of BIZ2CREDIT;     **COMPLAINT AND STRIKE PRAYER**
15   PATRICK COLE, agent of BIZ2CREDIT with   **FOR PUNITIVE DAMAGES**
    pseudonym; ITRIA VENTURES, LLC, a
16   Delaware LLC; AMIT MISHRA, an        Date:      May 28, 2024
    individual; AND DOES 1-10, INCLUSIVE,    Time:      10:00 a.m.
17                                Dept:      Courtroom 6, 4th Floor
           Defendants.            Judge:     Susan van Keulen
18

19

20

21

22

23

24

25

26

27

28

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 5:23-cv-05153-SVK

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1

**TABLE OF CONTENTS**

2
**Page**

3    I.      INTRODUCTION ............................................................................................ 7

4    II.     BACKGROUND ............................................................................................. 8

          A.      Allegations In Kamath's Original Complaint ......................................... 8

5         B.      Allegations In Kamath's First Amended Complaint................................. 9

6    III.   LEGAL STANDARD ................................................................................... 10

7    IV.    ARGUMENT ............................................................................................... 11

          A.      The FAC Fails To Allege Facts Supporting Its Outlandish Damages ................. 11

8         B.      The FAC Fails To Allege Breach Of Contract....................................... 12

9         C.      The FAC Fails To Allege Fraud............................................................ 14

10        D.      The FAC Fails To Allege False And Misleading Advertising.............................. 15

          E.      The FAC Fails To Allege Breach Of Fiduciary Duty ........................... 16

11        F.      The FAC Fails To Allege A False Lien ................................................. 18

12                1.      Kamath's False Lien Claims Fail Under California Law........................ 18

13                2.      Kamath's False Lien Claims Fail Under Delaware Law ........................ 19

          G.      The FAC Fails To Allege Defamation ................................................... 20

14        H.      Kamath's Cause Of Action Under The False Claims Act Is Frivolous ................ 21

15        I.      The Amended Complaint Fails To Allege Any Causes Of Action Against
                  New Defendant "Summit Arora." ........................................................... 22

16        J.      The FAC's Claim For Punitive Damages Is Unsupported................................... 23

17   V.     CONCLUSION ............................................................................................ 24

18

19

20

21

22

23

24

25

26

27

28

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 11, 12

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1990) ............................................................................................ 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... 12

*Cusano v. Klein*,
  280 F. Supp. 2d 1035 (C.D. Cal. 2003), *aff'd*, 153 F. App'x 998 (9th Cir. 2005)................. 18

*Dumas v. Kipp*,
  90 F.3d 386 (9th Cir. 1996) .............................................................................................. 11

*Empire Tech. Grp. Ltd. v. Light & Wonder, Inc.*,
  No. 22-cv-00923, 2023 WL 8529084 (D. Nev. Dec. 7, 2023) ................................................ 7

*Factory Direct Wholesale, LLC v. iTouchless Housewares & Prod., Inc.*,
  411 F. Supp. 3d 905 (N.D. Cal. 2019) .............................................................................. 16

*Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*
  599 F. 3d 1102 (9th Cir. 2015)......................................................................................... 12

*U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*,
  792 F.3d 1121 (9th Cir. 2015) .......................................................................................... 22

*Johnson v. Riverside Healthcare System, LP*,
  534 F.3d 1116 (9th Cir. 2008)........................................................................................... 10

*Kelly v. Corrections Corp. of America*,
  750 F. Supp. 2d 1132 (E.D. Cal. 2010) ............................................................................. 12

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009).............................................................................................. 11

*N.Y.C. Emps. Ret. Sys. v. Berry*,
  667 F. Supp. 2d 1121 (N.D. Cal. 2009) ............................................................................. 23

*United States ex rel. Osinek v. Kaiser Permanente*,
  No. 13-cv-03891, 2023 WL 4054279 (N.D. Cal. June 15, 2023) .......................................... 22

*Ramachandran v. City of Los Altos*,
  359 F. Supp. 3d 801 (N.D. Cal. 2019) ............................................................................... 23

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

*Renati v. Wal-Mart Stores, Inc.*,
   No. 19-cv-02525, 2019 WL 5536206 (N.D. Cal. Oct. 25, 2019) ........................................... 22

*Romero v. Securus Techs., Inc.*,
   216 F. Supp. 3d 1078 (S.D. Cal. 2016) ................................................................................. 23

*U.S. ex rel. Rosales v. San Francisco Hous. Auth.*,
   173 F. Supp. 2d 987 (N.D. Cal. 2001) ................................................................................. 22

*Sicor Ltd. v. Cetus Corp.*,
   51 F.3d 848 (9th Cir. 1995) ............................................................................................... 7

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ............................................................................................. 11

*United States v. Mariner Health Care, Inc.*,
   552 F. Supp. 3d 938 (N.D. Cal. 2021) ............................................................................... 21

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2002) ..................................................................................... 11, 15

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) ............................................................................................. 23

*Williams v. Facebook, Inc.*,
   384 F. Supp. 3d 1043 (N.D. Cal. 2018) ......................................................................... 18, 19

**Other State Cases**

*ADT Operations, Inc. v. Chase Manhattan Bank, N. A.*,
   173 Misc. 2d 959 (N.Y. Sup. Ct. 1997) ............................................................................. 17

*Beeck v. Costa*,
   39 Misc. 3d 347 (N.Y. Sup. Ct. 2013) ............................................................................... 16

*Clearmont Prop., LLC v. Eisner*,
   58 A.D.3d 1052 (3d Dept. 2009) ....................................................................................... 12

*Com. Motor Parts Ltd. v. Bank of Nova Scotia*,
   44 A.D. 2d 375 (1st Dept. 1974), *aff'd*, 37 N.Y.2d 824 (1975) ........................................... 20

*Escabi v. Twins Contracting, LLC*,
   75 Misc. 3d 1209(A) (N.Y. Sup. Ct. 2022) ....................................................................... 21

*Hoffman v. Nagler*,
   206 Misc. 623 (N.Y. Mun. Ct. 1954) ................................................................................. 17

*Hogan Willig, PLLC v. Kahn*,
   145 A.D.3d 1619 (4th Dept. 2016) ................................................................................... 14

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 5:23-cv-05153-SVK

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

*Oddo Asset Mgmt. v. Barclays Bank PLC,*
    19 N.Y.3d 584 (2012) .......................................................................................... 17

*Parlux Fragrances, LLC v. S. Carter Enterprises, LLC,*
    204 A.D.3d 72 (1st Dept. 2022) ......................................................................... 13

*Reads Co., LLC v. Katz,*
    72 A.D.3d 1054 (2d Dept. 2010) .................................................................. 23, 24

*River St. Realty Corp. v. N.R. Auto., Inc.,*
    94 A.D.3d 848 ( 2d Dept. 2012) ......................................................................... 13

*Salis v. City of New York,*
    81 Misc. 3d 1209(A) (N.Y. Sup. Ct. 2023) ........................................................ 20

*Whelan v. Cuomo,*
    220 A.D.3d 979 (2d Dept. 2023) ........................................................................ 20

**Federal Statutes**

15 U.S.C.
    §§ 1051 *et seq.* ................................................................................................... 16
    § 1693a(9) ........................................................................................................... 17

31 U.S.C.
    § 3729(a)(1)(A) ................................................................................................... 21
    § 3729(a)(1)(B) ................................................................................................... 21

**California Statutes**

CAL. BUS. & PROF. CODE
    § 17200.8 ............................................................................................................ 15

CAL. CODE CIV. PROC.
    § 1770 ................................................................................................................. 15

CAL. COM. CODE
    § 9518 ................................................................................................................. 19
    § 9625 ................................................................................................................. 18

**Other State Statutes**

Del. Code Ann. Title 6
    § 9-501 ................................................................................................................ 19
    §§ 9-518, 9-625 .................................................................................................. 19

Del. Code Ann. Title 11
    § 877 ................................................................................................................... 19

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 5 -    Case No. 5:23-cv-05153-SVK

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE ON May 28, 2024, at 10:00 a.m., before the Honorable Susan van Keulen in Courtroom 6 of the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, California 95113, defendants Itria Ventures LLC; Amit Mishra; Summit Arora; Biz2Credit, Inc.; and Patrick Cole (collectively "Defendants") will and hereby do move for an order to dismiss, with prejudice the first amended complaint filed on March 19, 2024 by plaintiff Reshma Kamath and for an order striking allegations of punitive damages from the complaint.  Defendants bring this motion pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and to strike pursuant to Rule 12(f) on the grounds the complaint fails to support the demand for punitive damages therein.

This motion is based on this notice of motion and motion, the following memorandum of points and authorities, defendants' request for judicial notice, the pleadings on file in this matter, and any further arguments of counsel as may be made at the hearing on defendants' motion.

Dated:  April 23, 2024                         KASOWITZ BENSON TORRES LLP


By:  */s/ Jason S. Takenouchi*
Jason S. Takenouchi

Attorneys for Defendants
BIZ2CREDIT, INC.; SUMMIT ARORA;
PATRICK COLE; ITRIA VENTURES; and
AMIT MISHRA

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.       INTRODUCTION**

3

This litigation arises from an attempt by plaintiff Reshma Kamath ("Kamath"), an

4

attorney, to secure business financing for her solo law firm from defendant Itria Ventures, LLC

5

("Itria").  Itria initially proposed up to $50,000 in financing, subject to further analysis of

6

Kamath's financial history, in a contract that Kamath signed with Itria.  But when Itria later

7

offered $20,000 to $30,000 based on its review of Kamath's finances, Kamath threatened to sue

8

unless Itria and the other defendants either paid her $550,000 or gave her a "creative loan solution

9

at zero percent interest for a five year term at $500,000."

10

Defendants refused this extortion attempt, leading Kamath to file a disjointed and self-

11

contradictory complaint on October 9, 2023.  The Court dismissed that complaint.  Kamath has

12

responded by filing a new complaint that contradicts her original complaint in several key areas,

13

and that elides key factual points that she stated in the original complaint.  Those prior allegations

14

are binding on Kamath[1] and undermine her new allegations.

15

But even standing alone the amended complaint is, like the original, legally defective.  It

16

fails to plead the alleged fraud with particularity, it ignores that Kamath specifically agreed that

17

Itria could file the UCC-1 financing statement that is the source of her supposed injury, and it

18

is devoid of any specific facts to support any of Kamath's farcical theories of damages, including

19

punitive damages.  Kamath's other miscellaneous claims are likewise inadequately pleaded,

20

including her bizarre new claim that defendants violated the federal False Claims Act.

21

The Court should dismiss Kamath's amended complaint with prejudice.  To the extent the

22

Court does not dismiss the entirety of the amended complaint, it should strike the punitive

23

damages claim.

24

25

26

---

27

[1] *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1995) ("The district court is correct that a statement in a complaint may serve as a judicial admission."); *Empire Tech. Grp. Ltd. v. Light & Wonder, Inc.*, No. 22-cv-00923, 2023 WL 8529084, at *3 (D. Nev. Dec. 7, 2023) (quoting *Am.*

28

*Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)).(The Ninth Circuit holds the "general principle that, '[a] statement in a complaint ... is a judicial admission[.]'").

1

## II.   BACKGROUND.

2

### A.   Allegations In Kamath's Original Complaint.

3

In early 2023 Kamath asked defendant Biz2Credit, Inc. ("Biz2Credit") for financing for

4

her law firm.  Original Complaint ("Compl.") (Dkt. No. 1) ¶11.  Biz2Credit requested that

5

Kamath supply bank statements to confirm her revenue, which Kamath later provided.  *Id.*

6

Kamath later signed a financing agreement, called a Receivables Sales Agreement ("RSA"),[2] with

7

Itria, which is an affiliate of Biz2Credit.  (The Court has already taken judicial notice of the RSA.

8

Order Granting Motion to Dismiss.  Dkt. No. 22.)

9

The RSA proposed up to $50,000 in financing, but reserved Itria's right to conduct a

10

further "due diligence review" before deciding on the final funding amount "at [Itria]'s sole

11

discretion."  RSA ¶1(5), p. 2.  The agreement also provided that Itria could file a UCC-1

12

financing statement, a public record meant to show a potential lien, "at any time."  *Id.* ¶9, p. 9.[3]

13

The RSA contains a choice of New York state law.  *Id.* ¶15, p. 11.

14

Kamath signed the RSA on June 21, 2023.  *See id.* at ¶15, p. 1.  On July 5, 2023, Itria's

15

agent, CSC Corporation, filed a UCC-1 Statement pursuant to the RSA, and as permitted by the

16

New York Commercial Code.  *See* N.Y. U.C.C. LAW § 9-509.

17

On July 12, 2023, Kamath asked "whether the funding can be extended."  Compl. ¶16.  A

18

few days later, she asked if the funds had been wired yet.  *Id.* ¶17.  Itria stated that it had not yet

19

sent the funds.  *Id.*

20

Between July 12 and August 1, Kamath was told that Itria needed to verify her bank

21

accounts before providing any funding.  *Id.* ¶¶21, 70.  Following this due diligence, Kamath was

22

told that she would be offered $20,000 to $30,000 in financing, not $50,000.  *Id.* ¶¶19, 21.

23

24

25

26

[2] The RSA signed by Kamath and Itria, dated June 21, 2023, was submitted to the Court in Defendants' Request for Judicial Notice as Exhibit A (Dkt. 9-2).  The Court took judicial notice of the document on February 13, 2024.  Order Granting Motion to Dismiss (Dkt. 22).

27

28

[3] The RSA provides that "Merchant hereby authorizes Purchaser to make any UCC filing and/or recording relating to this Agreement (including a UCC-1 financing statement) at any time with any governmental agency and or office (including the office of the Secretary of State)… ."  RSA ¶9, p. 9.

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 8 -

Case No. 5:23-cv-05153-SVK

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Kamath did not accept this funding, but she did not expressly reject it either—communications between the parties simply ceased for several weeks. *Id.* ¶22.

In her original complaint, Kamath alleged that on August 30, 2023, while reviewing the California Secretary of State's website for an unspecified reason, she discovered the UCC-1 financing statement. *Id.* ¶¶24-25. Kamath contacted Itria to complain about the statement, and Itria responded that it would terminate the lien, which it did on August 30, 2023—the same day as Kamath's call. *Id.* ¶35.[4]

**B.     Allegations In Kamath's First Amended Complaint.**

In her new complaint, Kamath asserts that she told defendants on June 22—the day after she signed the RSA—that she "did **not** need the funding." First Amended Complaint ("FAC") ¶30 (emphasis in original). This allegation contradicts the original complaint, where Kamath asserted she told Itria on June 22 that she still wanted the funding but "did **not** need the funding until July 12." *See* Compl. ¶15 (emphasis in original).

In the amended complaint, as in the original, Kamath asserts that the UCC-1 financing statement was filed on July 5, 2023. FAC ¶18; Compl. ¶36.

Kamath now asserts that "[f]rom July 12 to 17" she "continued to inform Defendants that Plaintiff did not want" any financing. FAC ¶38. This again contradicts her original complaint, in which she alleged that on July 12 she asked "whether the funding can be extended," followed by an email on July 17 in which she asked "whether the wire transfer was sent." Compl. ¶¶16-17.

Kamath alleges, as she did in the original complaint, that on July 24, 2023, she told defendants that she "did **not** want any funding." FAC ¶39 (emphasis original). She now alleges that a few days later, on August 2, 2023, defendants made a "counter-offer" of $20,000 to $30,000 in financing. *Id.* ¶¶41-42.

Kamath now alleges that, on August 30, 2023, she became aware of a UCC-1 financing statement Defendants filed with the California Secretary of State concerning the original $50,000

---

[4] The Notice of Cancelation of the Lien filed by Itria with the California Secretary of State, dated August 30, 2023, was submitted to the Court in Defendants' Request for Judicial Notice as Exhibit B (Dkt. 9-3). The Court took judicial notice of the document on February 13, 2024. Order Granting Motion to Dismiss (Dkt. 22).

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  amount offered to Kamath (*id.* ¶36), but "did not have any and all actual, and/or constructive

2  knowledge [or notice]" of it "until a third-party [Luis Hernandez] had informed her." *Id.* ¶¶44,

3  84.  In contrast, Kamath's earlier complaint stated that she herself discovered the UCC-1

4  financing statement while reviewing the California Secretary of State's website for an unspecified

5  reason.  Compl. ¶¶24-25.

6      Kamath later contacted Itria to complain about the statement, and Itria responded that it

7  would terminate the lien, which it did on August 30, 2023—the same day as Kamath's call.  *Id.*

8  ¶50.  *See* RJN, Ex. B.

9      The amended complaint alleges that the financing statement caused "other individuals to

10  not lend to [Kamath], and/or to engage in business transactions with [Kamath]."  Compl. ¶153.

11  The amended complaint does not identify any potential lenders who decided not to lend to

12  Kamath because of the UCC-1 statement, or the nature of the lending or business transactions that

13  were allegedly affected.

14      In the amended complaint, as with the original, Kamath alleges a cause of action for

15  breach of contract, along with causes of action for fraud, false advertising, breach of fiduciary

16  duty, filing a fraudulent lien and defamation.  She has added a claim for violation of the federal

17  False Claims Act, 31 U.S.C. § 3729 *et seq.*  Kamath has also added a new individual defendant,

18  "Summit Arora," whom she describes as the CEO of Biz2Credit, but she does not make any

19  specific factual allegations about Arora's alleged misconduct—her only allegation against him is

20  in Paragraph 21, in which she names Arora as a defendant.

21  **III.   LEGAL STANDARD**

22      Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move to dismiss a

23  complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss a

24  complaint under Rule 12(b)(6) "based on the lack of cognizable legal theory or the absence of

25  sufficient facts under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d

26  696, 699 (9th Cir. 1990); *see also Johnson v. Riverside Healthcare System, LP,* 534 F.3d 1116,

27  1121–22 (9th Cir. 2008).

28

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 10 -        Case No. 5:23-cv-05153-SVK

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

While allegations of material fact are assumed to be true when determining a motion to dismiss, unreasonable inferences, unwarranted deductions of fact, or legal conclusions should not be accepted as true merely because they are cast as factual allegations. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); *see also Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also id.* (noting that on a motion to dismiss the court is "not bound to accept as true a legal conclusion couched as a factual allegation").

"[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2002) (quoting *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir. 1985) (emphasis omitted)).

The court need not grant leave to amend when it is clear that pleading deficiencies cannot be cured by amendment. *Dumas v. Kipp,* 90 F.3d 386, 393 (9th Cir. 1996). When amendment would be futile, dismissal may be ordered with prejudice. *Id.*

## IV.    ARGUMENT

### A.    The FAC Fails To Allege Facts Supporting Its Outlandish Damages.

Kamath's amended complaint seeks $3.9 million for lost personal and professional income and revenue, in contrast to the original complaint's demand for $2.9 million. Her newly alleged damages include $2.3 million for expectancy and consequential damages, $250,000 for "emotional distress," and an unspecified amount of treble and punitive damages. FAC, Prayer For Relief, at pp. 28-29. But the amended complaint, like the original, is devoid of a single specific allegation of fact to support these ridiculous amounts.

Kasowitz Benson
Torres LLP
Attorneys at Law
San Francisco

- 11 -                    Case No. 5:23-cv-05153-SVK

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Under the RSA, Kamath could have received up to $50,460.[5]  RSA, p. 16.  The FAC asserts that "Defendants have actually and proximately caused other individuals not to lend" her, but it fails to provide a single specific instance, or even provide a single name of a prospective lenders or individual who refused to do business with Kamath as a result of the UCC-1 financing statement.  Nor does the amended complaint describe the nature or amount of the lending or business transactions that were allegedly affected.

This failure to allege factual support for damages is fatal to the amended complaint.  *See Kelly v. Corrections Corp. of America,* 750 F. Supp. 2d 1132, 1137 (E.D. Cal. 2010) (failure to allege sufficient facts under a cognizable legal theory grounds for dismissal under Rule 12(b)(6)); *see also Twombly,* 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  The Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal,* 556 U.S. at 678; *see also Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka* 599 F. 3d 1102, 1006 (9th Cir. 2015).

## B.     The FAC Fails To Allege Breach Of Contract.

Under New York law, which governs the substantive law in this matter (RSA ¶15, p. 11), a plaintiff must establish the following for a breach of contract claim:  (1) formation of a contract between plaintiff and defendant; (2) performance by plaintiff; (3) defendant's failure to perform; and (4) resulting damage."  *Clearmont Prop., LLC v. Eisner*, 58 A.D.3d 1052, 1055 (3d Dept. 2009).

Kamath's cause of action for breach of contract is premised on two actions:

(1) Defendants' purported failure to provide funding in the amount of $50,000; and

(2) Defendants' filing of the UCC-1 financing statement.  *See* FAC ¶¶64, 71.  But the RSA *authorized both of these actions*.

---

[5] Kamath admits that the financing carried a "high-interest rate."  FAC at ¶101.  Any prospective damages she suffered would necessarily be above and beyond repayment of the financing with interest.

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

The RSA, which Kamath admits she signed, provides that "Purchaser's [*i.e.,* Itria's] obligation to fund this Agreement *is subject to due diligence review* of Merchant or its business, *at Purchaser's sole discretion.*" RSA ¶1(5), p. 2 (emphasis added). In other words, the RSA did not require Itria to provide Kamath with a certain amount of funding because it was subject to further due diligence. *Id.*; *see also Parlux Fragrances, LLC v. S. Carter Enterprises, LLC,* 204 A.D.3d 72, 85 (1st Dept. 2022) ("A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises."); *River St. Realty Corp. v. N.R. Auto., Inc.,* 94 A.D.3d 848, 850 ( 2d Dept. 2012) ("'Express conditions are those agreed to and imposed by the parties themselves,' and they 'must be literally performed.'"). Since the RSA specifically provided that Defendants might reduce the amount of funding offered, the fact that Kamath was later offered less than the original $50,000 was not a breach of the RSA.

The RSA also authorized the prefiling of the UCC-1 financing statement. As provided in the contract, "Merchant [*i.e.,* Kamath] hereby authorizes Purchaser [*i.e.,* Itria] to make any UCC filing and/or recording relating to this Agreement (including a UCC-1 financing statement) at any time with any governmental agency and or office (including the office of the Secretary of State)… ." RSA ¶9, p. 9

In addition, Itria's filing of its security interest before sending its financing to Kamath is expressly permitted by Article 9 of the UCC, which permits a secured party to prefile a financing statement—*i.e.,* to file before a security agreement has been entered into or a security interest has attached.[6] U.C.C. § 9-509(b) ("A person may file an initial financing statement, … if:  (1) the debtor authorizes the filing in an authenticated record") *accord* N.Y. U.C.C. LAW § 9-509 ("A person may file an initial financing statement … that adds a debtor to a financing statement only

---

[6] Prefiling allows a secured party to lock in its priority *before* the transaction that would give the party priority. If priority could not be fixed by prefiling, a potential secured party who was negotiating for the grant of a security interest would risk the possibility that, during the negotiations, the debtor might encumber the collateral with a senior, competing security interest. *See* Steven L. Harris and Charles W. Mooney, Jr., *Using First Principles of UCC Article 9 to Solve Statutory Puzzles in Receivables Financing,* 46 GONZAGA L. REV. 297, 300 (2011).

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 13 -                    Case No. 5:23-cv-05153-SVK

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

if … the debtor authorizes the filing in an authenticated record or … by authenticating or becoming bound as debtor by a security agreement, a debtor or new debtor authorizes the filing of an initial financing statement.").

### C.        The FAC Fails To Allege Fraud.

In New York "[t]he elements of a fraud cause of action consist of a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Hogan Willig, PLLC v. Kahn*, 145 A.D.3d 1619, 1620-21 (4th Dept. 2016).  Fraud claims must be pleaded with "particularity," including the "who, what, when, where, and how" of the misconduct charged. FED. R. CIV. P. 9(b).[7]

The FAC fails to allege any facts constituting fraud, much less particularized facts.  For example, Kamath alleges that Defendants fraudulently induced her to enter into the RSA because "Defendants only wanted to file a UCC-1 lien without any loan exchange" (FAC ¶77), but she does not allege any particularized facts to support this naked assertion.  Indeed, the RSA informed Kamath that funding was contingent on further financial review of her accounts, and that Itria was not obligated to provide her with any financing until and unless it performed that analysis.  RSA ¶1(5), p. 2.

Kamath also asserts that defendant Mishra acted with scienter because he "intended to collect account receivables from Plaintiff months later even when Defendants had not provided a loan." *Id.* ¶78.  But she does not allege any factual basis for this assertion.  She does not allege what role, if any, Mishra would have played "to collect account receivables from [Kamath] months later."  Indeed, she does not even allege that Mishra is an employee of Itria or Biz2Credit. *See* FAC ¶¶20, 122.  Further, Defendants immediately terminated the UCC-1 financing statement upon Kamath's termination request.  The RSA did not mandate, nor did Kamath request, that

---

[7] *See also* N.Y. C.P.L.R. 3016 ("Where a cause of action or defense is based upon misrepresentation, fraud, mistake, wilful [sic] default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail.").

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Defendants also expunge the statement.[8]  Indeed, the FAC provides no facts, explanation, or

2    reasoning as to how and who of the Defendants acted with such fraudulent intent.

3         Like the original complaint, the FAC also fails to allege that the filing of the lien was

4    fraudulent.  Contrary to her allegations (FAC ¶¶43-44), the RSA notified Kamath that Itria could

5    file a UCC financing statement "at any time," possibly even before it provided her with financing.

6    RSA ¶9(a), p. 9.[9]  Kamath's contention that "[f]iling a false lien can result in a misdemeanor

7    and/or even a felony charge" (FAC ¶¶52-55) is a *non sequitur.*  There was nothing false or

8    fraudulent about the UCC-1 statement filing here.

9         Kamath's FAC also fails to state what exactly was misrepresented with respect to

10   Defendants' funding of her business.  In light of the terms of the RSA, none of the supposed

11   representations about financing to Kamath were false.

12        **D.    The FAC Fails To Allege False And Misleading Advertising.**

13        Kamath bases her advertising claim on the fact that Biz2Credit used advertisements that

14   were "false and misleading."  FAC ¶92.  The Consumer Legal Remedies Act ("CLRA") prohibits

15   "unfair methods of competition and unfair or deceptive acts or practices undertaken by any

16   person in a transaction intended to result or which results in the sale ... of goods or services to any

17   consumer."  CAL. CODE CIV. PROC. § 1770.  The Unfair Competition Law, ("UCL") prohibits

18   "unlawful, unfair or fraudulent business act[s] or practice[s]" and "unfair, deceptive, untrue or

19   misleading advertising."  CAL. BUS. & PROF. CODE §17200.8.  Rule 9(b)'s particularity

20   requirement applies to these state-law causes of action.  *Vess*, 317 F.3d at 1102-05.  Rule 9(b)'s

21   heightened pleading standard may apply to claims for violations of both the CLRA and UCL.  *Id.*

22

23   [8] Kamath also alleges that she learned of Defendants' business loans through certain advertising,
     does not allege that Defendants targeted her with advertising, or the specific falsehoods in the
24   advertising.  FAC ¶¶26, 90.  The Court should also dismiss any common law fraud claim based
     on a false advertising theory.

25   [9] While Kamath now asserts that the parties "decided to walk away from the contract in June
26   2023" (FAC ¶82), the original complaint made clear that Kamath demanded financing under the
     RSA well into July 2023 (*see* Compl. ¶¶16-17), and even now Kamath admits that defendants
27   were conducting due diligence, including bank verifications, until August 2023.  Compl. ¶¶21,
     70.  Kamath's allegations that Defendants filed the UCC-1 financial statement after the due
28   diligence period are irrelevant, as this conduct was contractually permitted at Defendants' "sole
     discretion." RSA ¶1, p. 2.

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 15 -                                          Case No. 5:23-cv-05153-SVK

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Kamath's cause of action for false and misleading advertising fails because the FAC fails to allege anything in the advertisements that were untrue—instead, it merely repleads Kamath's baseless fraud allegations of Defendants' intent to provide the actual loan.  FAC ¶¶93-99.

Kamath's claim for violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.,* suffers the same fatal flaw:  the FAC fails to specify the false or misleading representations allegedly made to Kamath.[10]  The RSA disclosed to Kamath that Itria could prefile the UCC-1 financing statement in connection with her financing application.  RSA ¶9(a), p. 9.  The RSA also informed Kamath that the funding was contingent on further analysis of her finances, and that Itria was not obligated to provide her with any financing until and unless it performed that analysis.  RSA ¶1(5), p. 2.

**E.      The FAC Fails To Allege Breach Of Fiduciary Duty.**

"Under New York law, the elements of breach of fiduciary duty are: 'the existence of a fiduciary relationship [between plaintiff and defendant], misconduct by the defendant, and damages that were directly caused by the defendant's misconduct.'"  *Beeck v. Costa*, 39 Misc. 3d 347, 360 (N.Y. Sup. Ct. 2013) (citations omitted).  "To establish a fiduciary relationship, plaintiff must show that the defendant was 'under a duty to act for or to give advice for the benefit' of the plaintiff 'upon matters within the scope of the relation.'"  *Id.* (citations omitted).  "This relationship is "necessarily fact-specific, [and] is grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions."  *Id.* (citations omitted).

The FAC fails to allege a fiduciary relationship between Kamath and any of the

---

[10] A false advertising claim under the Lanham Act requires:  "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products."  *Factory Direct Wholesale, LLC v. iTouchless Housewares & Prod., Inc*., 411 F. Supp. 3d 905, 923 (N.D. Cal. 2019).

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 16 -                    Case No. 5:23-cv-05153-SVK

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants.  The RSA, which calls for Itria to provide funding in exchange for regular payments of accounts receivable from Kamath's law firm, contemplates an obligation to pay money that is antithetical to a fiduciary relationship.  *See Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 593 (2012) ("A debtor and creditor have no special relationship of confidence and trust…, and the relationship is generally controlled by contract.") (internal citations omitted); *Hoffman v. Nagler*, 206 Misc. 623, 627 (N.Y. Mun. Ct. 1954) ("There is an obvious distinction between a trust and a debt.  A fiduciary relation exists between a trustee and a beneficiary, while no fiduciary relation exists between a debtor and creditor as such.") (citation omitted).

Kamath incorrectly claims Defendants owe her a fiduciary duty because they are "financial credit institution[s] [sic]."  FAC ¶102.  The Consumer Credit Protection Act, however, defines a "financial institution" as "State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer."  15 U.S.C. § 1693a(9).  Defendants are private, small-business loan lenders, who enter into private funding contracts with private consumers.  Defendants do not offer credit, provide savings accounts, nor "hold" any bank accounts belonging to consumers.

Even if the FAC had adequately pleaded a fiduciary relationship (which it does not), the pleading would fail to allege a breach.  Defendants' decision to offer funding less than $50,000 did not breach the RSA or any other duty.  Similarly, the UCC-1 financing statement filing was authorized by the RSA and, even if it had not been (which it was), the filing would not have constituted a fiduciary duty breach.  *See, e.g.*, *ADT Operations, Inc. v. Chase Manhattan Bank, N. A.*, 173 Misc. 2d 959, 963 (N.Y. Sup. Ct. 1997) ("[N]ot every commercial contract or relationship creates a fiduciary duty … If the parties find themselves or place themselves in the milieu of the 'workaday' mundane marketplace, and if they do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them. …  In this spirit, the New York courts have generally held that the legal relationship between a customer and a bank is an arm's-length, debtor-creditor relationship which does not, without more, create a fiduciary relationship.) (citations and punctuation omitted);

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 17 -                                        Case No. 5:23-cv-05153-SVK

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1   *Cusano v. Klein*, 280 F. Supp. 2d 1035, 1041 (C.D. Cal. 2003), *aff'd*, 153 F. App'x 998 (9th Cir.

2   2005) (finding defendant's "contractual duty to collect royalties, account for them and pass them

3   on to [plaintiff] did not create a fiduciary relationship.").

4       As such, Defendants do not owe Kamath a fiduciary duty in the first place.  And even if

5   they did (which they did not), Defendants did not commit any breach of that duty.

6                   **F.      The FAC Fails To Allege A False Lien.**

7                           1.      Kamath's False Lien Claims Fail Under California Law.

8       Section 9625 of the California Uniform Commercial Code provides a consumer remedy

9   for filing of a false lien in which "[l]oss caused by a failure to comply may include loss resulting

10  from the debtor's inability to obtain, or increased costs of, alternative financing" and established a

11  $500 civil penalty.  Cal. Com. Code §9625(b)(f).

12      First, as explained *supra* at p. 8 , New York law applies to any state law claims per the

13  RSA's choice of law clause and permits Defendants' filing.  RSA ¶15, p. 11; *Williams v.*

14  *Facebook, Inc.*, 384 F. Supp. 3d 1043, 1056 (N.D. Cal. 2018); *see* N.Y. U.C.C. Law § 9-509.

15  Second, even in California law applied (which it does not), the FAC fails to allege any specific

16  instance where a prospective lender had seen the lien during the time it was active on the public

17  record.  Nor does the FAC allege a single specific instance where Kamath applied for, and was

18  denied, alternative financing.  Indeed, Kamath only vaguely mentions "another capital funding

19  source" and its representative informing Kamath of the UCC-1 filing (FAC ¶¶37, 84), which

20  contradicts her initial complaint's allegation that Kamath personally discovered the filing "while

21  searching the CA Secretary of State website[,]"  (Compl. ¶24).

22      Kamath's inflammatory allegations that Defendants "used" the UCC-1 filing as a "tool of

23  harassment and revenge" to "eventually collect against" Kamath are conclusions only, without

24  any factual allegations in support.  FAC ¶¶113-120.  Kamath allegations that Mishra's "only

25  intent was to place a fraudulent lien … to collect on her account receivables" are equally without

26  support.  *Id.* ¶¶121-22.  And Kamath's claim that because no value was exchanged between

27  parties the UCC-1 financing statement was "fraudulent," is undermined by the RSA, which

28  specifically allowed the filing of that document *before* any financing was exchanged.  *Id.* ¶123.

Kasowitz Benson
Torres LLP
Attorneys at Law
San Francisco

- 18 -                              Case No. 5:23-cv-05153-SVK

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

The RSA authorized Defendants to adjust the offered amount after conducting due diligence, including analysis of Kamath's bank accounts, and to prefile a UCC-1 financing statement with the Secretary of State.  Kamath's assertion that the statement is fraudulent because it was filed after the "due diligence period" (an allegation which is undermined by the text of the RSA) is baseless.  *Id.* ¶¶125-27.

Additionally, the California Commercial Code provision relied on by Kamath creates no statutory claim for treble or punitive damages.  Section 9518 of the California Commercial Code allows the person against whom an inaccurate UCC financing statement has been filed to file an information statement correcting that information with the Secretary of State.  Nothing in that provision creates a private right of action for damages.  Kamath has not alleged that she has filed a request with the Secretary of State to correct or expunge any information.  And even if she had, these statutory sections would not entitle her to damages.

Kamath's inflammatory allegation that Defendants targeted her with an improper filing of a UCC financing statement because she is "an Indian woman and a lawyer … doing well in her work" (FAC. ¶120) is a *non-sequitur*.  There's no factual allegation supporting this spurious claim of racism and sexism—it is just another conclusion among a sea of baseless conclusions in the First Amended Complaint.

2.      Kamath's False Lien Claims Fail Under Delaware Law.

The FAC asserts that Delaware law applies because Itria is incorporated in Delaware, thus supporting a false lien cause of action again Biz2Credit pursuant to Del. Code Ann. tit. 6 §§ 9-518, 9-625 for civil remedies and Del. Code Ann. tit. 11 § 877 for criminal penalties.  These claims fail for multiple reasons.

First, New York substantive law governs Kamath's state claims.  RSA ¶ 15, p. 11; *Williams*, 384 F. Supp. 3d at 1056.  Second, the sections of Delaware law that Kamath brings this cause of action under do not apply to financial statements filed with the *California* Secretary of State.  Del. Code Ann. tit. 6 § 9-501 ("if the local law of this State [of Delaware] governs perfection of a security interest…, the office in which to file a financing statement to perfect the security interest is … the office of the [Delaware] Secretary of State, in all other cases…").

1  Third, even if Delaware law applied (which it does not), Kamath's claims still fail.  The RSA

2  authorized Defendants to prefile the UCC-1 financing statement—nothing about the filing or

3  Defendants' conduct was fraudulent or malicious.

4        **G.        The FAC Fails To Allege Defamation.**

5        Kamath asserts a cause of action for defamation, both libel and slander, based on the

6  *written* filing of the UCC-1 financing statement.  Under New York law, the elements of

7  defamation are: "(a) a false statement that tends to expose a person to public contempt, hatred,

8  ridicule, aversion, or disgrace, (b) published without privilege or authorization to a third party, (c)

9  amounting to fault as judged by, at a minimum, a negligence standard, and (d) either causing

10  special harm or constituting defamation per se[.]"  *Whelan v. Cuomo*, 220 A.D.3d 979, 980-81

11  (2d  Dept. 2023) (citing *Bowen v. Van Bramer*, 205 A.D.3d 674, 674-75 (2d Dept. 2022) (internal

12  quotation marks omitted)).  "Since falsity is a necessary element of a defamation cause of action

13  and only facts are capable of being proven false, it follows that *only statements alleging facts* can

14  properly be the subject of a defamation action."  *Whelan*, 220 A.D.3d at 981 (emphasis added).

15        Kamath's allegations are deficient for at least two reasons.

16        First, under New York law the truth of the statement at issue constitutes an absolute

17  defense for both personal and professional defamation.  *Com. Motor Parts Ltd. v. Bank of Nova*

18  *Scotia*, 44 A.D. 2d 375, 378 (1st Dept. 1974), *aff'd*, 37 N.Y.2d 824 (1975) (citing *Shenkman v.*

19  *O'Malley*, 2 A.D.2d 567, 572 (1st Dept. 1996) and Seelman, The Law of Libel and Slander in the

20  State of New York, 170) ("It is, of course, fundamental that truth is an absolute, unqualified

21  defense to a civil defamation action."); *Salis v. City of New York*, 81 Misc. 3d 1209(A) (N.Y. Sup.

22  Ct. 2023) ("Because the falsity of the complained-of statement is an element of the defamation

23  claim, its truth is an absolute defense.").  There was nothing fraudulent or improper about the

24  UCC-1 financing statement, which was authorized "at any time" by the RSA and allowed under

25  the applicable law.

26        Second, the FAC fails to allege any basis for damages for defamation.  It does not allege

27  *facts* concerning the people Kamath claims saw the financing filing, or how that supposed

28  viewing of the financing statement changed their personal or professional opinion of her.

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 20 -                        Case No. 5:23-cv-05153-SVK

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Kamath's slander claim is a fatally flawed.  Slander is actionable when the alleged false statement was orally communicated or published.  *Escabi v. Twins Contracting, LLC*, 75 Misc. 3d 1209(A) (N.Y. Sup. Ct. 2022) ("Slander per se is any *oral statement* which relate to … statements charging plaintiff with a serious crime, statements that tend to injure another in his trade, business or profession, statements that accuse plaintiff of having a loathsome disease, or statements that impute that a woman is unchaste.") (emphasis added).  But Kamath does not allege any oral misstatement.

### H.     Kamath's Cause Of Action Under The False Claims Act Is Frivolous.

Kamath's new cause of action for violation of the federal False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), is frivolous.

The FCA creates liability for any person who knowingly submits a false claim to the government or knowingly causes another to submit a false claim to the government.  *United States v. Mariner Health Care, Inc.*, 552 F. Supp. 3d 938, 945 (N.D. Cal. 2021); *see also* 31 U.S.C. § 3729(a)(1)(A) (imposing liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval").  "It also imposes liability on those who knowingly make a false record or statement that is material to a false claim." *Mariner Health Care, Inc.*, 552 F. Supp. 3d at 945; *see also* 31 U.S.C. § 3729(a)(1)(B) (imposing liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim").

"To establish a cause of action under the FCA, a plaintiff must show the following elements:  '(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) *the government* to pay out money or forfeit moneys due." *Mariner Health Care, Inc.*, 552 F. Supp. 3d at 946 (quoting *U.S. ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902 (9th Cir. 2017)) (emphasis added).

The FAC fails to allege that any of the defendants submitted a false statement to the government, or that any such false statement or fraudulent course of conduct caused "the government to pay out money or forfeit moneys due." *See id.*  Kamath's assertions that "Defendants are masking account receivables as loans … as a ploy to evade taxes inter alia" does

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 21 -                                          Case No. 5:23-cv-05153-SVK

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1    not even attempt to identify a "false statement or fraudulent course of conduct," or explain how

2    taxes are allegedly "evade[d]." *See* FAC ¶158.  This is inadequate as a matter of law.  *See United*

3    *States ex rel. Osinek v. Kaiser Permanente*, No. 13-cv-03891, 2023 WL 4054279, at *3 (N.D.

4    Cal. June 15, 2023) (quoting *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998-99 (9th Cir.

5    2010)) (finding that, under Rule 9(b), "it is sufficient to allege '*particular details of a scheme* to

6    submit false claims paired with reliable indicia that lead to a *strong inference* that claims were

7    actually submitted.'") (emphasis added).

8         Nor does Kamath even attempt to allege her standing as a *qui tam* plaintiff under the FCA,

9    which is necessary for her to prosecute such a claim.  *U.S. ex rel. Rosales v. San Francisco Hous.*

10   *Auth.*, 173 F. Supp. 2d 987, 1005 (N.D. Cal. 2001) (citing *Vermont Agency of Natural Resources*

11   *v. United States ex rel. Stevens*, 529 U.S. 765, 771-72 (2000)) ("The three requirements for a [*qui*

12   *tam*] plaintiff to establish Article III standing are: (1) injury in fact; (2) causation; and (3)

13   redressability.").  Far from being an original source of supposed information, Kamath admits that

14   what little alleged information she has was from another individual, not from any unique

15   knowledge or investigation of her own.  FAC ¶60; *see U.S. ex rel. Hartpence v. Kinetic Concepts,*

16   *Inc.*, 792 F.3d 1121, 1124 (9th Cir. 2015) (quoting 31 U.S.C. § 3730(e)(4)(A)) ("The public

17   disclosure bar deprives district courts of jurisdiction over any action 'based upon the public

18   disclosure of allegations or transactions' concerning the alleged fraud, 'unless ... the person

19   bringing the action is an original source of the information.'").

20   **I.     The Amended Complaint Fails To Allege Any Causes Of Action Against New**
         **Defendant "Summit Arora."**
21

22        The amended complaint describes newly added defendant Summit Arora as the "CEO of

23   Biz2Credit."  FAC ¶21.  In fact, Biz2Credit's CEO is Rohit Arora, not Summit Arora.

24        Notwithstanding this foundational error, the amended complaint fails to allege that

25   Summit Arora did anything.  All that Kamath alleges is that he is the CEO of Biz2Credit, which

26   he is not.  *Id.*  A complaint devoid of allegations of wrongdoing is, by definition, insufficient.

27   *Renati v. Wal-Mart Stores, Inc.*, No. 19-cv-02525, 2019 WL 5536206, at *6 (N.D. Cal. Oct. 25,

28

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 22 -                                    Case No. 5:23-cv-05153-SVK

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1   2019) (quoting *Iqbal*, 556 U.S. at 677-78) ("conclusory allegations, 'devoid of further factual

2   enhancement,' are insufficient to state a claim for relief plausible on its face").

3   ### J.        The FAC's Claim For Punitive Damages Is Unsupported.

4    Under Rule 12(f), the court may strike from a pleading an insufficient defense or

5   redundant, impertinent, or scandalous matter.  FED. R. CIV. P. 12(f).  'The function of a 12(f)

6   motion to strike is to avoid the expenditure of time and money that must arise from litigating

7   spurious issues by dispensing with those issues prior to trial.'"  *Whittlestone, Inc. v. Handi-Craft*

8   *Co.,* 618 F.3d 970, 973 (9th Cir. 2010) (citing *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th

9   Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.,* 510 U.S. 517 (1994)).  In

10  evaluating a motion to strike, the court accepts the nonmoving party's allegations as true and

11  liberally construes the pleadings in the nonmoving party's favor.  *Ramachandran v. City of Los*

12  *Altos,* 359 F. Supp. 3d 801, 809 (N.D. Cal. 2019); *Romero v. Securus Techs., Inc.,* 216 F. Supp.

13  3d 1078, 1095 (S.D. Cal. 2016).

14   While the text of Rule 12(f) does not explicitly require a showing of prejudice (*see* FED.

15  R. CIV. P. 12(f)), many courts require a moving party to demonstrate adequate prejudice before

16  granting a motion to strike, even if the "offending matter literally was within one or more of the

17  categories set forth in Rule 12(f)."  *N.Y.C. Emps. Ret. Sys. v. Berry,* 667 F. Supp. 2d 1121, 1128

18  (N.D. Cal. 2009).

19   In New York, "punitive damages are not recoverable in an ordinary breach of contract

20  case, as their purpose is not to remedy private wrongs but to vindicate public rights."  *Reads Co.,*

21  *LLC v. Katz,* 72 A.D.3d 1054, 1056-57 (2d Dept. 2010) (citation omitted).  "Punitive damages are

22  only recoverable where the breach of contract also involves a fraud evincing a high degree of

23  moral turpitude, and demonstrating such wanton dishonesty as to imply a criminal indifference to

24  civil obligations, and where the conduct was aimed at the public generally."  *Id.* (citations and

25  punctuation omitted).  "Moreover, punitive damages are available where the conduct associated

26  with the breach of contract is first actionable as an independent tort for which compensatory

27  damages are ordinarily available, and is sufficiently egregious to warrant the additional

28  imposition of exemplary damages.  *Id.* (citations and punctuation omitted).

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 23 -                    Case No. 5:23-cv-05153-SVK

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9

Again, Kamath offers no factual allegations demonstrating that Defendants acted with moral turpitude—let alone "evincing a high degree." *Id.*; *see generally* FAC.  To the contrary, the RSA provided notice that Itria could file a UCC-1 financing statement, and could perform additional due diligence before deciding how much funding to provide, if any.  RSA, ¶9, p. 9. Kamath's unsupported assertions that Defendants filed the statement "to intentionally evade taxes and debts" and "only to collect on [Kamath] someday" are disturbing and also without merit. FAC ¶¶61-62.  Finally, Kamath's other blanketed references to Defendants' supposedly malicious behavior toward her, in which her gender identity, race, cultural ethnicity, and profession having an influence on Defendants' conduct, are also baseless.

10

## V.    **CONCLUSION**

11
12
13

For the reasons stated above, the Court should dismiss Kamath's First Amended Complaint with prejudice. To the extent the Court does not dismiss the entirety of the First Amended Complaint, it should strike the punitive damages claim.

14

15    Dated: April 23, 2024                                   KASOWITZ BENSON TORRES LLP

16
17                                                                     By:  */s/ Jason S. Takenouchi*
18                                                                            Jason S. Takenouchi

19                                                                     Attorneys for Defendants
                                                                        BIZ2CREDIT, INC.; SUMMIT ARORA;
20                                                                     PATRICK COLE; ITRIA VENTURES; and
                                                                        AMIT MISHRA

21
22
23
24
25
26
27
28

KASOWITZ BENSON
TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 24 -                              Case No. 5:23-cv-05153-SVK
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT