**RESHMA KAMATH,**
700 El Camino Real, Suite 120, #1084
Menlo Park, California 94025, United States
Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com
*IN PROPRIA PERSONA*

# IN AND FOR THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| | **Case No.: 5:23-cv-05153-SVK** |
| **RESHMA KAMATH,** | **TIMELY OPPOSITION FROM RE-APPOINTEE SUSAN VAN KALEN'S "PRO SE" PLAINTIFF** |
| **Plaintiff,** | |
| v. | **MAY 28, 2024** |
| **BIZ2CREDIT, INC., a New York corporation; PATRICK COLE, agent of BIZ2CREDIT with pseudonym; ITRIA VENTURES, LLC, a Delaware LLC; AMIT MISHRA, an individual; SUMMIT ARORA, CEO of BIZ2CREDIT; AND DOES 1-10, INCLUSIVE,** | |
| **Defendants** | |

  *TO THE HONORABLE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD, HEREIN:*

1

**INTRODUCTION**

PLAINTIFF RESHMA KAMATH OPPOSES:

PLAINTIFF RESHMA KAMATH reminds re-appointee SUSAN VAN KALEN:

A fundamental principle of equity jurisprudence is that "equity follows the law." *Hedges v. Dison County*, 150 U.S. 182, 192 (1893).

**ARGUMENT**

**I.    TAKENOUCHI'S RUBBISH AND NOTHINGNESS IN PAGES 1-7 OF THE MTD IS A WASTE OF THE COURT'S AND PLAINTIFF'S VALUABLE TIME. THUS, *QUID PRO QUO*.**

Defendants, their attorney(s) and the court have a White way of thinking. They each like to misread and misinterpret statements per their delusional ways of thinking.

A lot of racist statements from the Court and the racist attorney, TAKENOUCHI. Plaintiff knows well how ethno-racist Indian men, i.e. the natural person Defendants are. TAKENOUCHI's racist comments such as "Kamath threatened," (MTD, Line 7, page 7) (but there is **no proof** of such a "threat" and this is pure defamation against Plaintiff).

Plaintiff's settlement communications are **not threats and extortion** – they're the **regular course of litigation conduct** during and pre-litigation. Plaintiff contends that Congress sought to protect communications made during the course of mediation from unwarranted disclosure. Even if confidential, the privilege was not to disclose absent discovery or court order under FRE R. 408. Rule 408 provides that settlement communications are inadmissible to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement…."

But racist **TAKENOUCHI and equally and worse racist re-appointee, SUSAN VAN KALEN, FAIL** to show that show how Plaintiff's settlement communications made its



way to **TAKENOUCHI's** MTD # 1 and MTD #2 without any meeting of the exceptions, such as witness' bias or prejudice, negating a contention of undue delay, or providing an effort to obstruct a criminal investigation or prosecution. None of which apply in this case at the Complaint stage. This is not an evidentiary hearing for discoverable documents. TAKENOUCHI needs a 101 for his FRE application as does the re-appointee SUSAN VAN KALEN. How many more lives will be distraught in the next eight years under them Plaintiff worries.

(No need to teach Plaintiff about run-ons and grammar, Plaintiff very well knows and just doesn't care - when a racist judge doesn't know how to apply the law, code and rules, then grammar is not something that Plaintiff intends to please the racist judge with).

**II.   SETTLEMENT COMMUNICATIONS CANNOT BE USED IN COURT FILINGS BY DEFENDANTS MISHRA, ARRORA, COLE (PSEUDONYM FOR SOME INDIAN MALE) BIZ2CREDIT AND ITRIA VENTURES; AS WELL AS THEIR UNETHICAL AND IRRESPONSIBLE ATTORNEY, TAKENOUCHI.**

TAKENOUCHI's RACISM is becoming more and more obvious. Maybe TAKENOUCHI needs a **LAW-101 course in PROFESSIONAL RESPONSIBILITY AND LEGAL ETHICS in how to deal with plaintiff and opposing counsel during litigation.**

Then, TAKENOUCHI's racism and misogyny expands, using PLAINTIFF's litigation conduct of **settlement communications** as "EXTORTION." (MTD Line 10, page 7).

The Court SUSAN VAN KALEN MUST be waiting to sign a PROPOSAL from TAKENOUCHI.

While TAKENOUCHI's racism and misogyny are lauded in the racist and misogynistic California courts, adjectives such as "bizarre," "disjointed", and "farcical" in MTD # 2.



Using settlement communications under evidence code sections 1152, 1154 and Federal Code of Civil Procedure section 408 in OPEN COMMUNICATIONS, PLEADINGS AND EXHIBITS, are PRECLUDED.

RE-APPOINTEE SUSAN VAN KALEN's TRASHY RACISM is even more obvious, because she has allowed usage of such settlement communications from TAKENOUCHI in a prior EXHIBIT, as well as in this present MTD.

After the first seven pages of MTD's **nothingness in terms of substance**, TAKENOUCHI and DEFENDANTS MISHRA, ARRORA, COLE (PSEUDONYM FOR SOME INDIAN MALE) BIZ2CREDIT AND ITRIA VENTURES in MTD page eight make some wishy-washy arguments with nothing to buttress each of the DEFENDANTS' MTD claims.

**III.    PLAINTIFF NEVER ALLEGED ANY REQUIREMENT TO PAY FROM DEFENDANTS MISHRA, ARRORA, COLE (PSEUDONYM FOR SOME INDIAN MALE) BIZ2CREDIT AND ITRIA VENTURES – BOTH DEFENSE AND DEFENDANTS HAVE NOT ONLY MISREAD THE AMENDED COMPLAINT, BUT THE COURT IS MISGUIDED AS USUAL**

Defendants' MTD **erroneously** states that there is some requirement to pay that Plaintiff alleged in the amended complaint. But Plaintiff never alleged any such requirement to pay in the amended complaint.

But without payment or loan, there can be no UCC-1 lien. The court needs to wake from its deep slumber of illegality in misapplication of the UNIFORM COMMERCIAL CODE. This is why RE-APPOINTEE SUSAN VAN KALEN should NOT do one more eight-year term and return to private practice.

RE-APPOINTEE SUSAN VAN KALEN does NOT know how the UNIFORM COMMERCIAL CODE works.


RE-APPOINTEE SUSAN VAN KALEN does NOT know how the FEDERAL RULES OF EVIDENCE and LOCAL CAND RULES work in TAKENOUCHI's **failing to meet-and-confer prior to the MTDS # 1 AND # 2**.

"Meet and confer" or "confer" means to communicate directly and to discuss in good faith the issue(s) required under the particular FRCP Rule 26(F). Per CAND CIVIL LOCAL RULES, "(n) Meet and confer. "Meet and confer" or "confer" means to communicate directly and to discuss in good faith the issue(s) required under the particular Rule or order. Unless these Local Rules otherwise provide or a Judge otherwise orders, such communication may take place by telephone." Rule 26(f) REQUIRES the moving party must meet and confer with the opposing party at least 7 days before filing the motion. The purpose of this rule is to encourage parties to resolve problems without having to resort to a formal motion. **RACIST TAKENOUCHI failed to follow the basic 7-day meet-and-confer** rule in any format pursuant to FRCP 26(f) and RE-APPOINTEE SUSAN VAN KALEN turned a blind eye to this.

Even when PLAINTIFF reminded RE-APPOINTEE SUSAN VAN KALEN, re-appointee was mum – radio silence from RE-APPOINTEE SUSAN VAN KALEN and her racist staff.

RE-APPOINTEE SUSAN VAN KALEN does NOT even know how the SETTLEMENT COMMUNICATIONS UNDER EVID. CODE SECTIONS 1152, 1154, and FEDERAL CODE 408 from PLAINTIFF, that TAKENOUCHI INTRODUCED in DEFENDANTS' MTD # 1 EXHIBIT and MTD # 2 BODY work.

RE-APPOINTEE SUSAN VAN KALEN[i] is an **abomination** to the legal profession and to the CAND Courts.



**IV. CALIFORNIA STATE LAW GOVERNS BREACH OF CONTRACT AND FEDERAL LAW DISCUSSES CONTRACTS UNDER SECTION 1331**

**A. DEFENDANTS MISHRA, ARRORA, COLE (PSEUDONYM FOR SOME INDIAN MALE) BIZ2CREDIT AND ITRIA VENTURES, FAIL TO STATE THE PROPER LAW GOVERNING THE ALLEGED CONTRACT**

Defendants MISHRA, ARRORA, COLE (PSEUDONYM FOR SOME INDIAN MALE) BIZ2CREDIT AND ITRIA VENTURES, as usual, erroneously cite the wrong law.

In its absolutely frivolous motion to dismiss, defendants MISHRA, ARRORA, COLE (PSEUDONYM FOR SOME INDIAN MALE) BIZ2CREDIT AND ITRIA VENTURES fail in stating that the governing law is NEW YORK LAW.

However, the proper law is CALIFORNIA STATE LAW. Even if the contract trumped any California law, then Delaware law still does not apply.

TAKENOUCHI and the DEFENDANTS continue to weave their convoluted lack of contract law understanding.

**V. TAKENOUCHI AS A BAD LAWYER DOESN'T REALIZE THAT DAMAGES ARE PROVEN AT TRIAL – NO AMENDED COMPLAINT NEEDS TO PROVE "OUTLANDISH DAMAGES." (MTD, P. 11).**

Plaintiff contends that not only are **damages proven at trial** according to proof not in an amended complaint, **but** that TAKENOUCHI representing Defendants MISHRA, ARRORA, COLE (PSEUDONYM FOR SOME INDIAN MALE) BIZ2CREDIT AND ITRIA VENTURES **fails** to realize that $3.9M for Plaintiff's professional income are **not** "outlandish". (MTD P.11).

Similarly, the total damage figure of $325,650 is supported by the allegations of the complaint. Plaintiff did not specify a total or exact figure in his prayer for damages, but instead simply that damages would "be proven at [the] time of trial or judgment." Nevertheless, a prayer for "damages according to proof" is sufficient to support a default


6

judgment award if specific damage amounts are alleged in the body of the complaint. *Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 494.

Plaintiff contends there is no speculation as to the damages and DEFENDANTS are not kept guessing as to the amount. Plaintiff has put DEFENDANTS on sufficient notice of damages of over $75,000, i.e. atleast $3.9M.

**VI.   PLAINTIFF HAS MORE THAN ADEQUATELY PLED DEFENDANTS' FALSE AND MISLEADING ADVERTISING**

While applying Rule 9(b)'s particularity requirements to UCL claims based on allegations of false and misleading advertising, Plaintiff has more than sufficiently met the factual allegation particularity and the injury-in-fact requirements.

In *Secard Pools, Inc. v. Kinsale Ins. Co.* (C.D. Cal. 2017) 318 F. Supp. 3d 1147, the Court found that the IP Exclusion's broad reference to "false advertising" unambiguously refers to both "false" and "misleading" advertising as those terms are used under Federal and California statutory and common law.

There the Court found that "misleading" advertising is at least a subset of "false" advertising, is broad enough to encompass "misleading" advertising as well. Secard, supra, 1153. Under both California state and Federal law, use of the words "arising out of" in an exclusion are meant to broaden it. *Davis v. Farmers Ins. Group,* 134 Cal.App.4th 100, 107, 35 Cal.Rptr.3d 738 (2005) (as used in exclusion, " '[a]rising out of' are words of much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from[,]' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to,' or having connection with"); *Smith Kandal Real Estate v. Continental Cas. Co.,* 67 Cal.App.4th 406, 419, 79 Cal.Rptr.2d 52 (1998) ("arising out of" clause in policy exclusion has "broader significance and connot[es] more than causation"); *Acceptance Ins. Co. v. Syufy Enters.* , 69



Cal.App.4th 321, 328, 81 Cal.Rptr.2d 557 (1999) (use of the words "arising out of" broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship); *Infinity Micro Computer, Inc. v. Continental Cas. Co.*, 2016 WL 5661755, 2016 U.S. Dist. LEXIS 134957 (C.D. Cal. Sept. 29, 2016) (Pregerson, J.).

In the amended complaint, PLAINTIFF has adequately pled the federal false and misleading advertising under 15 U.S.C. § 1125(a), and unfair competition under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200 et seq., and California common law.

In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).

Plaintiff has sufficiently pled that Defendants engaged in false and misleading advertising arising out of averments of fraud from Defendants.

## V.    PLAINTIFF HAS MORE THAN ADEQUATELY PLED DEFENDANTS' FRAUD VIA AVERMENTS

In *Ves*s, the Ninth Circuit held that "Rule 9(b)'s heightened pleading requirements [apply] only to '**averments' of fraud** supporting a claim rather than to the claim as a whole," and clarified that "[f]raud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." 317 F.3d at 1104-05. *Vess v. Ciba-Geigy Corp. USA* (9th Cir. 2003) 317 F.3d 1097



Plaintiff has pled averments of fraud with particularity and specificity in the AMENDED COMPLAINT. See *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal.3d 197, 197 Cal.Rptr. 783, 673 P.2d 660 (1983).

**VI. PLAINTIFF HAS MORE THAN ADEQUATELY PLED DEFENDANTS' FALSIFIED UCC-LIEN AND DEFAMATION THEREFROM.**

Again, in these sections, TAKENOUCHI and Defendants have no idea what they're blabbering about in the MTD. If the re-appointee SUSAN VAN VALEN finds such chatter as worth-while, she needs to re-look at her position as magistrate judge and decide what an utter failure she is.

As falsely alleged by TAKENOUCHI and Defendants, nowhere does Plaintiff contend in the amended complaint that only Delaware law applies. Plaintiff, obviously, filed this COMPLAINT in federal court – thus California federal law applies per UCC-1.

(To help the re-appointee SUSAN VAN VALEN REFRESH HER FORGETFUL MEMORY OF A JUDGE) To file a UCC-1 Statement, **a debt must be owed to the filer** and the **debtor must authorize the filing** of the UCC-1 Statement. United States v. Halajian (E.D. Cal., Sep. 29, 2014, No. 1:14-cv-00225-AWI-SKO).

Neither of the condition precedents were met. **Neither** is a debt owed to defendants, **nor** did Plaintiff authorize such a UCC-1 lien be made when **no debt** was owed.

In *Halajian*, *supra*, the court agreed when:

"Plaintiff …[sought] a declaration that the UCC-1 Financing Statement filed by Defendants is false, has no legal effect, and should be expunged. This request is within the scope of the demand in the complaint, and it is reasonable in light of the circumstances of this case. Accordingly, the Court recommends that Plaintiff's request for declaratory relief be granted. See United States v. Uptergrove, No. 1:10-cv-01598-RMW, 2012 WL 639482, at * 6 (E.D. Cal. Feb. 24, 2012)."

///



Then, the *Halajian* court decided,

"The following UCC-1 Financing Statement be declared null, void, and of no legal effect, and that the Secretary of the State of California be directed to expunge it from her records: UCC-1 Financing Statement, Document Number 33861440002, Filing Number 12-7320748397."

CAND must learn from its sister court, CAED.

The allegations for false UCC-1 lien and resulting defamation for false publication of a non-existent loan are sufficiently and adequately pled under FRCP 8(a), 9(b) and 10(a) in the amended complaint. Punitive damages are for retribution so Defendants do not repeat the same mistakes again with other innocent borrowers. – they're pursuant to California policy of penalizing and thus, cannot be stricken.

## **CONCLUSION**

PLAINTIFF RESHMA KAMATH filed this lawsuit to check how the third-rate Americans help Indian women when we have problems in America – knowing fully well White women absolutely self-centered, and other Americans won't help Indian women whatsoever. This was a test to check when Indian men harass Indian women in America who will be there to help – pretty much no one as Plaintiff knew for decades. As the courts and America fail to listen to Indian women and women in general, more Dali fiascos one will see from Indian men. There was yet another reason in Plaintiff's filing of this lawsuit- i.e., Plaintiff was checking to see whether she should move back to her birth country based on the shit-show in the U.S. Courts and generally, and trashy men such as Defendants while women there need help.

**DATED: MAY 07, 2024**                                **RESHMA KAMATH**

*/S/ Reshma Kamath*

Reshma Kamath,
*In Propria Persona*



**PROOF OF SERVICE**
**F.R.C.P. 5 / C.C.P. § 1013(a)(3), C.C.P. § 1010.6(a)(6) / Cal. R. Ct. R. 2.260**

I am employed in the County of San Mateo, California. I am over the age of 18, and not a party to this action. My business address is: 700 El Camino Real Suite 120, #1084, Menlo Park, California 94025, and electronic-mail address is reshmakamath2021@gmail.com for electronic service. On May 07, 2024, I served the following document(s), by method(s) indicated below, on the parties in this action: **SEE ATTACHED SERVICE LIST.**

**TIMELY OPPOSITION FROM RE-APPOINTEE SUSAN VAN KALEN'S[ii] [iiii]"PRO SE" PLAINTIFF**

**ELECTRONIC SERVICE**
In electronically transmitting courtesy copies of the document (s) listed above to the email-address(es) of the person(s) set forth on the attached service list. To my knowledge, the transmission was reported as complete and without error, as per the electronic service agreement between all parties and their attorneys of record, herein. [NOTICE OF C.C.P. SECTION 1010.6.]
///
I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct. Executed on the 07th day of May 2024.

*/s/ Reshma Kamath*
Reshma Kamath



**SERVICE LIST**

Harrison S. Smalbach Senior Counsel
E.: harrison.smalbach@biz2credit.com
Address: unknown/not provided (O) 212.644.4555 ext. 109

Jason S. Takenouchi
E.: JTakenouchi@kasowitz.com
Address: Kasowitz Benson Torres LLP
101 California Street Suite 3950, San Francisco, CA 94111
Tel. (415) 655-4356 Fax. (415) 520-9237
Attorneys for Defendants ITRIA VENTURES, LLC, a Delaware LLC; AMIT MISHRA, an individual; BIZ2CREDIT, INC., a New York Corporation; PATRICK COLE, an individual with the pseudonym,

Defendant SUMMIT ARORA (**TAKENOUCHI failed to sign a waiver**)

i  HIGHLY RECOMMEND  RE-APPOINTEE  SUSAN VAN KALEN GET AN IME (AN INDEPENDENT MENTAL-HEALTH EXAMINATION)

ii  SVK is also a privileged fondly of her dad, and one can see why she favors men more over women.

iii  That is why SVK got appointed as magistrate because a guy appointed her. Men like women that other men like –  not the ones  that other women like.

