Jason S. Takenouchi (SBN 234835)
KASOWITZ BENSON TORRES LLP
101 California Street, Suite 3950
San Francisco, California 94111
Telephone: (415) 421-6140
Facsimile: (415) 398-5030
*JTakenouchi@kasowitz.com*

Attorneys for Defendants

BIZ2CREDIT, INC.; SUMMIT ARORA; PATRICK COLE; ITRIA VENTURES; and AMIT MISHRA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESHMA KAMATH, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BIZ2CREDIT, INC., a New York corporation; SUMMIT ARORA, CEO of BIZ2CREDIT; PATRICK COLE, agent of BIZ2CREDIT with pseudonym; ITRIA VENTURES, LLC, a Delaware LLC; AMIT MISHRA, an individual; AND DOES 1-10, INCLUSIVE,<br><br>Defendants. | Case No. 5:23-cv-05153-SVK<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND STRIKE PRAYER FOR PUNITIVE DAMAGES**<br><br>Date:   May 28, 2024<br>Time:   10:00 a.m.<br>Dept:   Courtroom 6, 4th Floor<br>Judge:  Hon. Susan van Keulen |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

Plaintiff Reshma Kamath ("Kamath") could have used her opposition brief to try to address the myriad deficiencies in her amended complaint that are the basis for this motion to dismiss. Instead she has filed yet another disjointed attack on the Court and counsel, this time claiming racism, sexism and corruption. These disgusting, meritless attacks have no place in any filing, much less a filing by an attorney.[1]

The merits of the motion before the Court are undisputable. Kamath admits she signed an agreement with defendant Itria Ventures, LLC ("Itria") for business financing. Under that agreement, known as a Receivables Sales Agreement ("RSA"), Itria was allowed to perform a "due diligence review" before deciding on the final funding amount "at [Itria]'s sole discretion." Dkt. 18-2, RSA ¶1(5), p. 2. The agreement also provided that Itria could file a UCC-1 financing statement, a public record meant to show a potential lien, "at any time." *Id.* ¶9, p. 9.

After Kamath and Itria executed the RSA, Itria filed the UCC-1 financing statement and offered financing to Kamath. Kamath rejected the financing because it was less than she believed she was entitled to. This course of events—which is fully supported by Kamath's own pleadings—was contemplated in and authorized by the parties' contract.

Defendants' opening brief described how the amended complaint is defective on its face. Kamath's opposition brief fails to address the merits of those defects, choosing instead to levy personal attacks on the integrity of the Court and counsel. The Court should dismiss the amended complaint with prejudice.

## II. FACTUAL BACKGROUND.

Defendants' opening brief described the allegations of Kamath's original complaint ("Compl.") and how they contradicted, in part, the allegations of Kamath's first amended

---

[1] This is not Kamath's first attack on the integrity of the judicial system. In fact, she has sued other judges and court clerks in her short legal career on allegations similar to the ones she is making against the Court and counsel here. *See, e.g.*, *Kamath v. Alsup, et. al.*, Case No. 3:23-cv-06494-GPC (N.D. Cal. Dec. 17, 2023).

complaint (the "FAC"). Dkt. No. 34 ("Mot.") at 8-10. Kamath does not address these contradictions in her opposition brief.

## III. LEGAL STANDARD.

Defendants' opening brief explained the legal standards under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Mot. at 10-11. Kamath's opposition brief does not address these standards.

## IV. ARGUMENT.

### A. Kamath Fails To Allege Facts Supporting Its Outlandish Damages.

Defendants' opening brief explained how the amended complaint fails to allege basic facts that could, if proven, support Kamath's alleged damages, and how this defect can support dismissal of a complaint. Mot. at 11-23. Defendants cited *Kelly v. Corrections Corp. of America*, 750 F. Supp. 2d 1132 (E.D. Cal. 2010) (Mot. at 12), which explained that "[w]hile a court considering a motion to dismiss must accept as true the allegations of the complaint in question…the allegations must be factual in nature." 750 F. Supp. 2d at 1137. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

As Defendants noted in their opening brief, Kamath asserts that "Defendants have actually and proximately caused other individuals not to lend" to her (FAC ¶¶57, 74), but the amended complaint fails to allege a single fact about a prospective lender that refused to lend to Kamath as a result of the UCC-1 financing statement. Mot. at 12. Defendants also noted the amended complaint's failure to describe the nature or amount of the lending or business transactions that were allegedly affected. *Id.*

Kamath does not, and cannot, point to a factual allegation in her amended complaint that supports her supposed damages. Instead she offers conclusions that she suffered harm, with no alleged facts about how that harm occurred. Nor does she address the principle enunciated in *Kelly*; instead she cites *Becker v. S.P.V. Construction Co.*, 27 Cal. 3d 489, 494 (1980), a state law case involving default judgment damages that is irrelevant on its face. Opp. at 6-7.

KASOWITZ BENSON TORRES LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' REPLY ISO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**B.     Kamath Fails To Allege Breach Of Contract.**

The opening brief explained how the two actions underpinning Kamath's breach of contract claim—Defendants' purported failure to provide $50,000 in funding, and Defendants' alleged filing of the UCC-1 financing statement—were both authorized under the RSA.  Mot. at 11-13.  Kamath's opposition brief does not address this point.

Defendants' opening brief also explained how Itria's prefiling of its security interest in collateral is permitted by the New York Commercial Code.  *See* N.Y. U.C.C. LAW § 9-509(a)(1) ("A person may file an initial financing statement, amendment that adds collateral covered by a financing statement, or amendment that adds a debtor to a financing statement only if … the debtor authorizes the filing in an authenticated record…").  Kamath's opposition brief does not address this point.

It is axiomatic that actions that are expressly authorized by a contract cannot, at the same time, constitute a breach of that contract.

**C.     Kamath Fails To Allege Fraud.**

The opening brief explained how Rule 9 of the Federal Rules of Civil Procedure requires that fraud be pleaded with particularity, including the "who, what, when, where, and how" of the misconduct charged.  Mot. at 14-15 (citing FED. R. CIV. P. 9(b)).  Defendants then demonstrated that the amended complaint lacks such factual allegations.  *Id.*

Kamath's opposition brief fails to point to any language in her amended complaint that alleges fraud with the required particularity.  *See* Opp. at 8-9.  Instead she leaves the Court with her conclusory assertion that "Plaintiff has pled averments of fraud with particularity and specificity in the AMENDED COMPLAINT."  Opp. at 8-9.  This is insufficient on its face.

**D.     Kamath Fails To Allege False And Misleading Advertising.**

The opening brief noted the amended complaint's failure to allege anything in the Biz2Credit advertisements that were untrue, or to specify the false or misleading representations made to Kamath.  Mot. at 15-16. Defendants explained that these defects were fatal to Kamath's claims for false advertising and for violation of the Lanham Act.  *Id.*

Kamath's opposition brief does not address these defects. Instead she asserts, without citation to the operative complaint, that she adequately pleaded false and misleading advertising. Opp. at 7-8. This is insufficient on its face.

### E. Kamath Fails To Allege Breach Of Fiduciary Duty.

The opening brief explained how Kamath's amended complaint fails to plead a fiduciary relationship because Defendants are not "financial institution[s] [sic]" that owe Kamath a fiduciary duty. Mot. at 16-17 (citing FAC ¶102; *Beeck v. Costa*, 39 Misc. 3d 347, 360 (N.Y. Sup. Ct. 2013) ("To establish a fiduciary relationship, plaintiff must show that the defendant was 'under a duty to act for or to give advice for the benefit' of the plaintiff 'upon matters within the scope of the relation.'") (citations omitted); 15 U.S.C. § 1693a(9) (The Consumer Credit Protection Act defines a "financial institution" as "State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer.")).

Defendants also explained that even if they had a fiduciary duty to Kamath (which they did not), the FAC failed to allege a breach of that duty because the RSA and New York state law permitted Defendants to (1) offer funding of less than $50,000, and (2) file the UCC-1 financing statement. Mot. at 17-18 (citing *ADT Operations, Inc. v. Chase Manhattan Bank, N. A.*, 173 Misc. 2d 959, 963 (N.Y. Sup. Ct. 1997) and *Cusano v. Klein*, 280 F. Supp. 2d 1035, 1041 (C.D. Cal. 2003), *aff'd*, 153 F. App'x 998 (9th Cir. 2005)).

Kamath's opposition brief does not address either argument, or the supporting case law.

### F. Kamath Fails To Allege A False Lien.

Defendants' opening brief explained that New York law applies to any state law claims due to the RSA's choice of law clause, and that New York law permitted the UCC-1 financing statement at issue. Mot. at 18 (citing RSA ¶15, p. 11; *Williams v. Facebook, Inc*., 384 F. Supp. 3d 1043, 1056 (N.D. Cal. 2018); N.Y. U.C.C. LAW § 9-509). Defendants also explained that even if California of Delaware law were to apply, Kamath's false lien claim would fail. Mot. at 18-19.

Kamath's opposition brief asserts that "California federal law" applies, and ignores the authorities cited by Defendants. Opp. at 9-10. And Kamath again ignores the language in the RSA that specifically authorized the filing of the UCC-1 financing statement "at any time." RSA ¶9, p. 9; *see also* Opp. at 9-10.

### G.     **Kamath Fails To Allege Defamation.**

The opening brief explained how Kamath's defamation claim suffered from multiple defects, including the RSA's express approval of the filing of a UCC-1 statement at any time, and the FAC's failure to allege any basis for defamation damages. Mot. at 20-21. Kamath's opposition fails to address these defects. *See* Opp. at 9-10.

### H.     **Kamath Fails To Allege A Violation OF The False Claims Act.**

The opening brief explained how the amended complaint fails to alleged that any of the Defendants submitted a false statement to the government, or any such false statement or fraudulent course of conduct that caused the government to pay out money or forfeit moneys due as required under the False Claims Act. Mot. at 21-22 (citing *United States v. Mariner Health Care, Inc*., 552 F. Supp. 3d 938, 946 (N.D. Cal. 2021)). Kamath's opposition brief does not address this defect.

### I.     **Kamath Fails To Allege Any Causes Of Action Against New Defendant "Summit Arora."**

The opening brief explained how Kamath fails to allege any misconduct by newly added defendant Summit Arora, whom Kamath mistakenly describes as the "CEO of Biz2Credit." Mot. at 22-23 (citing FAC ¶21 and *Renati v. Wal-Mart Stores, Inc*., No. 19-cv-02525, 2019 WL 5536206, at *6 (N.D. Cal. Oct. 25 2019). Kamath's opposition brief does not address this point.

### J.     **Kamath's Miscellaneous Arguments Are Frivolous.**

1.     New York Law, Not California Law, Governs This Matter.

There is no merit to Kamath's assertion that California law applies to claims arising out of the RSA.

In signing the RSA, Kamath expressly agreed to New York choice of law, and agreed there were at least four reasons for that choice:

> [Kamath] expressly acknowledges that: (i) Purchaser maintains its principal office in the State of New York; (ii) the Funding Call and customer service will take place with Purchaser's representatives in the State of New York; (iii) all funding to and payments from Merchant under this Agreement will be processed through Purchaser's bank branches in New York; and (iv) the purchase and sale of Receivables pursuant to this Agreement shall take place in New York. Accordingly, the parties agree that this Agreement and its subject matter bears a significant, material and reasonable relationship with the State of New York.

RSA ¶15; *see also Williams*, 384 F. Supp. 3d at 1056.

"Courts apply a two-pronged choice of law test: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Williams*., 384 F. Supp. 3d at 1056 (citation and punctuation omitted). "If either prong is met the choice of law will be enforced unless 'contrary to a fundamental policy' of the alternative state … and if the state 'has a materially greater interest in the determination of the particular issue.'" *Id.* Both prongs are met here, as Kamath herself has already admitted.

### 2. Kamath's Email Demand To Defendants—Which She Admits To Sending—Is Not A Basis For Defendants' Motion.

Defendants' opening brief noted that when Itria offered $20,000 to $30,000 based on its review of Kamath's finances, Kamath threatened to sue unless Itria and the other defendants either paid her $550,000 or gave her a "creative loan solution at zero percent interest for a five year term at $500,000." Mot. at 7.

Kamath does not deny sending the email. In any event, Defendants did not cite this email as a basis for dismissal, but rather highlighted it in their introduction as an indication of Kamath's lack of good faith.

3. Defendants Were Not Required To Meet And Confer Kamath Before Moving To Dismiss Under Rule 12.

There is no basis for Kamath's assertion that Defendants were required to meet and confer before filing their motion. Opp. at 5. Rule 26(f)—the rule cited by Kamath—does not apply to a motion to dismiss.

**K.     The Court Should Dismiss The FAC With Prejudice.**

The Court need not grant leave to amend when it is clear that pleading deficiencies cannot be cured by amendment, which Kamath has demonstrated here. *Dumas v. Kipp*, 90 F.d 386, 393 (9th Cir. 1996). When amendment would be futile, as it would be here, the Court may dismiss with prejudice. *Id.*

**L.     The Court Has Inherent Power To Impose Sanctions For Kamath's Bad Faith Accusations Of Racism, Sexism And Corruption.**

Kamath's opposition brief is replete with accusations that the Court and defense counsel engaged in corrupt dealings that were allegedly motivated by racism and sexism. *See, e.g.,* Opp. at 2 ("A lot of racist statements from the Court and the racist attorney, TAKENOUCHI"), *id.* at 3 ("TAKENOUCHI's racism and misogyny are lauded in the racist and misogynistic California courts"), and *id.* at 3 ("The Court SUSAN VAN KALEN [sic] MUST be waiting to sign a PROPOSAL from TAKENOUCHI"). These allegations would constitute bad faith by any party, but when made by a licensed attorney (as Kamath is) they are beyond the pale.

The Court has inherent power to sanction such conduct. *See In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 924-25 (N.D. Cal. 2023) ("A court may impose sanctions under its inherent powers 'when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'") (internal citations and punctuation omitted).

**V.     CONCLUSION.**

For the reasons stated above, the Court should dismiss Kamath's First Amended Complaint with prejudice.

| | |
|---|---|
| Dated: May 14, 2024 | KASOWITZ BENSON TORRES LLP |
| | By: */s/ Jason S. Takenouchi* |
| | Jason S. Takenouchi |
| | Attorneys for Defendants<br>BIZ2CREDIT, INC.; SUMMIT ARORA; PATRICK COLE; ITRIA VENTURES; and AMIT MISHRA |