UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESHMA KAMATH,<br><br>        Plaintiff,<br><br>    v.<br><br>ITRIA VENTURES, LLC, et al.,<br><br>        Defendants. | Case No. 23-cv-05153-SVK<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND**<br><br>Re: Dkt. No. 34 |

The Court previously dismissed self-represented Plaintiff Reshma Kamath's complaint and provided instructions on how she could cure the deficiencies identified in an amended pleading. *See* Dkt. 22 (the "Prior Order"). Plaintiff evidently did not heed the Court's instruction—her first amended complaint (the "FAC" at Dkt. 27) suffers from many of the same issues that compelled dismissal the first time around. She also added one new claim in the FAC, but that claim suffers from pleading defects as well (and, in any event, Plaintiff has abandoned it). Defendants now move to dismiss. *See* Dkt. 34 (the "Motion"). Plaintiff opposes the Motion. *See* Dkt. 39 (the "Opposition"). Defendants filed a reply. *See* Dkt. 40. All necessary Parties—Plaintiff and named Defendants—have consented to the jurisdiction of a magistrate judge.[1] The Court has determined that the Motion is suitable for resolution without oral argument. *See* Civil Local Rule 7-1(b). After considering the Parties' briefing, relevant law and the record in this action, and for the reasons that follow, the Court **GRANTS** the Motion and **DISMISSES** the FAC **WITHOUT**

---

[1] In addition to named Defendants, Plaintiff also sued 10 Doe defendants. *See* FAC ¶ 23. These Doe defendants are not "parties" for purposes of assessing whether there is complete consent to magistrate-judge jurisdiction. *See Williams v. King*, 875 F.3d 500, 502-505 (9th Cir. 2017) (magistrate-judge jurisdiction vests only after all named parties, whether served or unserved, consent); *RingCentral, Inc. v. Nextiva, Inc.*, No. 19-cv-02626-NC, 2020 WL 978667, at *1 n.1 (N.D. Cal. Feb. 28, 2020) (*Williams* does not require consent of unnamed Doe defendants).

**LEAVE TO AMEND**.

**I.     BACKGROUND**

The following discussion of background facts is based on the allegations contained in the FAC, which remain substantially similar to those contained in the original complaint, and the truth of which the Court accepts for purposes of resolving the Motion. *See Boquist v. Courtney*, 32 F.4th 764, 772 (9th Cir. 2022). Plaintiff practices law in California through the Law Office of Reshma Kamath, a sole proprietorship. *See* FAC ¶ 15. In May 2023, she reached out to Defendant Biz2Credit, Inc. ("Biz2Credit") about obtaining funding for her business after viewing Biz2Credit's advertisements on television. *See id*. ¶¶ 25-26. She subsequently entered into a Receivables Sale Agreement with Defendant Itria Ventures, LLC ("Itria"), an affiliate of Biz2Credit. *See id*. ¶¶ 18, 29; Dkt. 9-2 (the "RSA").[2]

Under the RSA, Plaintiff agreed to sell her business's receivables to Itria in exchange for about $50,000 in funding for her business. *See* RSA at 1; *id*. § 1. Plaintiff also agreed that Itria's "obligation to fund [her business wa]s subject to due diligence review of [Plaintiff] or [her] business, at [Itria's] sole discretion." *See id*. § 1. Lastly, Plaintiff "authorize[d Itria] to make any UCC filing and/or recording relating to th[e RSA] (including filing a UCC-1 financing statement) at any time with any governmental agency and/or office (including the office of the Secretary of State), including without limitation to perfect [Itria's] rights and interests in the" receivables. *See id*. § 9(a).

A couple of weeks after the Parties executed the RSA, Defendants filed a UCC-1 statement with the California Secretary of State. *See* FAC ¶ 70. A few weeks after that, Biz2Credit informed Plaintiff that it could offer her only $20,000 or $30,000 in funding and not the $50,000

---

[2] Plaintiff does not append the RSA to the FAC, and Defendants do not request that the Court judicially notice that agreement in connection with the Motion. However, as Defendants note, the Court did hold in the Prior Order that Plaintiff had incorporated by reference the RSA into her original complaint, because she had expressly referred to that agreement in her pleading and had brought a claim for breach of that agreement. *See* Prior Order at 5-6; Motion at 8 n.2. For the same reasons, the Court holds that Plaintiff incorporated by reference the RSA into the FAC, and the Court will accordingly consider that document *sua sponte* in evaluating the Motion. *See, e.g.*, *In re Tesla, Inc. Sec. Litig.*, 477 F. Supp. 3d 903, 934 n.12 (N.D. Cal. 2020) (*sua sponte* considering document as incorporated by reference).

1  referenced in the RSA.  *See id*. ¶¶ 41-42.  It does not appear that Plaintiff accepted this smaller

2  amount of funding.  *See id*. ¶ 39.  Then, on August 30, 2023, Plaintiff learned of the filed UCC-1

3  statement (which she terms a "UCC lien").  *See id*. ¶¶ 36-37.  Plaintiff immediately contacted

4  Defendants, informed them that the "defamatory false lien was fraudulently and maliciously filed

5  against her and must be terminated immediately." *See id*. ¶ 49.  Defendants complied. *See id*. ¶

6  50.

7      A little over a month later, Plaintiff commenced this action to recover for Defendants'

8  failure to provide her with $50,000 in funding and Defendants' filing of the UCC lien as well as

9  Defendants' alleged fraud and false advertising that led her to enter into the RSA.  *See* Dkt. 1.

10  After the Court dismissed the original complaint with leave to amend, Plaintiff filed the FAC.

11  **II.   LEGAL STANDARD**

12      Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it

13  "fail[s] to state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion, a

14  plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *See Bell*

15  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This facial-plausibility standard requires a

16  plaintiff to allege facts resulting in "more than a sheer possibility that a defendant has acted

17  unlawfully."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

18      Where a plaintiff alleges that a defendant engaged in fraudulent conduct, Rule 9(b)

19  imposes a greater burden than does Rule 12(b)(6) and requires that the plaintiff "state with

20  particularity the circumstances constituting fraud."  To satisfy this heightened pleading standard, a

21  plaintiff must allege facts "specific enough to [notify the defendants] of the particular misconduct

22  [constituting fraud] so that they can defend against the charge and not just deny that they have

23  done anything wrong."  *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009) (citation

24  omitted).  Thus, claims sounding in fraud must allege "an account of the 'time, place, and specific

25  content of the false representations as well as the identities of the parties to the

26  misrepresentations.'"  *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation

27  omitted).  In other words, "[a]verments of fraud must be accompanied by 'the who, what, when,

28  where, and how' of the misconduct charged."  *Kearns*, 567 F.3d at 1124 (citation omitted).  A

plaintiff "must [also] set forth what is false or misleading about a statement, and why it is false." *See Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (citation omitted).

In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice." *See UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted). A court must also presume the truth of a plaintiff's allegations and draw all reasonable inferences in their favor. *See Boquist*, 32 F.4th at 773. However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).

If a court grants a motion to dismiss, it may exercise discretion to grant or deny leave to amend the complaint, and it "acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith." *Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc*., 817 F. App'x 380, 383 (9th Cir. 2020) (citation omitted).

## III. DISCUSSION

Plaintiff asserts seven causes of action in the FAC:

- Breach of the RSA.
- Fraud.
- False and misleading advertising.
- Breach of fiduciary duty.
- Filing a fraudulent lien and UCC filing.
- Defamation.
- Violation of the False Claims Act (the "FCA").

None of these claims survives scrutiny under Rules 12(b)(6) or 9(b).

///

///

///

///

4

### A. Plaintiff Does Not Sufficiently Allege That Defendants Breached The RSA

In the Prior Order, the Court explained that Plaintiff could not state a claim for breach of the RSA based on Defendants' (1) failure to loan her $50,000 or (2) filing of the UCC lien. *See* Prior Order at 6-7. The Court accordingly instructed Plaintiff to identify in an amended pleading "an obligation imposed on Defendants in the RSA with which Defendants failed to comply." *See id.* at 7. Plaintiff now alleges that Defendants breached the RSA when they "altered a material key term of the contract" by reducing the "loan term" from "$50,000 to $20,000-30,000." *See* FAC ¶ 66 (emphasis omitted).

However, as explained in the Prior Order, and as discussed above, the RSA did not require Defendants to provide $50,000 in funding to Plaintiff, as it expressly conditioned Defendants' obligation to pay on a due-diligence review at Itria's "sole discretion." *See* Prior Order at 7. Plaintiff appears to attempt to counter this contractual provision by alleging that "the due diligence and review period was in May and June 2023 [*i.e.*, before the Parties executed the RSA], not in July and August 2023," and so no further due diligence following the execution of the RSA could alter Defendants' obligation to pay Plaintiff $50,000. *See* FAC ¶ 65. But the RSA contradicts this conclusory allegation; that agreement bears a "Contract Date" of June 21, 2023 (*see* RSA at 1), and so the due-diligence period expressly contemplated therein necessarily could not begin prior to that date. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." (citation omitted)). The RSA also contains no reference to any temporal limits purportedly imposed on the due-diligence period, which refutes any conclusory assertion that the due-diligence period could not extend past June 2023.

Thus, as before, Plaintiff has failed to identify any provision of the RSA with which Defendants allegedly failed to comply. The Court will therefore dismiss the breach-of-contract claim.

///

///

///

### B. Plaintiff Does Not Sufficiently Allege That Defendants Engaged In Fraud

The Court previously dismissed Plaintiff's fraud claim for failure to satisfy Rule 9(b)'s heightened pleading standard. *See* Prior Order at 7. It then instructed Plaintiff to allege "specific facts supporting her claim of fraud" in an amended pleading. *See id.* Plaintiff again fails to do so.

As a preliminary matter, Defendants argue that New York law governs because of the RSA's choice-of-law clause. *See* Motion at 12, 14; RSA § 15(a). Plaintiff does not expressly dispute that New York law applies to her fraud claim, but in opposing dismissal of her fraud claim, she cites to a decision of the California Supreme Court. *See* Opposition at 8-9. Because "[t]he elements of fraud in New York and California are materially identical," the Court will evaluate Plaintiff's fraud claim under California law. *See Woodard v. Labrada*, No. 16-cv-00189-JGB, 2021 WL 4499184, at *16 (C.D. Cal. Aug. 31, 2021).

"The elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or *nondisclosure*); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Kearns*, 567 F.3d at 1126 (citation omitted). The Court evaluates each element as follows:

**Misrepresentation.** Plaintiff does not describe what, if anything, Defendants misrepresented to her. To the extent that Plaintiff's charging allegations imply that Defendants misrepresented their intention to pay Plaintiff $50,000 (*see* FAC ¶¶ 75-90), Plaintiff herself refutes that suggestion; in her Opposition, she expressly states that she "never alleged any such requirement to pay in the amended complaint." *See* Opposition at 4. She otherwise refers only to unspecified "(mis-)representations." *See* FAC ¶ 87.

**Knowledge Of Falsity.** Plaintiff conclusorily alleges that "Defendants, particularly Defendant Mishra, had the *scienter* because they intended to collect accounts receivables from Plaintiff months later even when Defendants had not provided a loan." *See id.* ¶ 78. Conclusory allegations of knowledge do not satisfy the requirements of Rules 12(b)(6) and 9(b), and Plaintiff does not explain how any other Defendant satisfied the knowledge requirement.

**Intent To Defraud.** Plaintiff conclusorily alleges that "Defendants intended for Plaintiffs to rely thereon [*i.e.*, on Defendants' unspecified '(mis-)representations'] to induce them to provide

a sum of over $50,000." *See id.* ¶ 88. Again, however, conclusory allegations do not satisfy the requirements of Rules 12(b)(6) and 9(b).

**Justifiable Reliance.** Plaintiff does not allege that she justifiably relied on Defendants' misrepresentations.

**Resulting Damage.** Plaintiff does not offer any non-conclusory explanation of how Defendants' alleged fraud damaged her.

Thus, Plaintiff fails to sufficiently allege that Defendants defrauded her, and the Court will dismiss her fraud claim.

### C. Plaintiff Does Not Sufficiently Allege That Defendants Engaged In False And Misleading Advertising

As the Court explained in the Prior Order, for Plaintiff to state a claim for false and misleading advertising under the statutes in question, she must describe the advertisements that she viewed and explain why those advertisements were false or misleading. *See* Prior Order at 8-9. Plaintiff does not do so in the FAC. She alleges that Defendants "advertised on local South Asian and Indian television channels," "made several false and misleading advertising statements" on television and "misled that they would lend to law firms." *See* FAC ¶¶ 90, 92. Thus, as before, she has failed to describe any advertisements that she viewed or explain with specificity why those advertisements were false or misleading. The Court will therefore dismiss her claim for false and misleading advertising.

### D. Plaintiff Does Not Sufficiently Allege That Defendants Breached A Fiduciary Duty

As the Court explained in the Prior Order, Plaintiff cannot base her breach-of-fiduciary-duty claim on either (1) her contractual, buyer-seller relationship with Defendants or (2) acts of Defendants that do not constitute breaches of the RSA (*e.g.*, failure to pay Plaintiff $50,000, filing of a UCC-1 statement). *See* Prior Order at 9-10. Yet Plaintiff again attempts to do so in the FAC. *See* FAC ¶¶ 100-08. Accordingly, the Court will dismiss this claim.[3]

---

[3] Defendants argue that New York law governs the breach-of-fiduciary-duty claim (*see* Motion at 16-18), and Plaintiff does not expressly address her breach-of-fiduciary-duty claim in her Opposition. "Nevertheless, given the absence of any conflict of law between New York and California on the elements for breach of fiduciary duty, the Court assumes for purposes here that

7

### E. Plaintiff Does Not Sufficiently Allege That Defendants Filed A Fraudulent Lien Or UCC Filing

Plaintiff alleges that Defendants violated California Commercial Code Sections 9518 and 9625 by filing "a bogus false lien against" her.[4] *See id.* ¶ 111. But, as explained in the Prior Order, Section 9518 "does not create a cause of action and does not prohibit fraudulent filings." *See* Prior Order at 10. As for Section 9625, the Court explained that that Section "does create a cause of action for failing to comply with the filing requirements of the Commercial Code." *See id.* Plaintiff, however, does not sufficiently allege that Defendants violated any provisions of the California Commercial Code. She does claim that Defendants filed their UCC lien without satisfying the requirements for creating a security interest. *See* FAC ¶¶ 112-18. But, as explained above, the RSA authorized Defendants to file that UCC lien, and the California Commercial Code permits filing a UCC lien even "before a security agreement is made or a security interest otherwise attaches." *See* Cal. Com. Code § 9502(d). Her claims under the California Commercial Code therefore fail.

Plaintiff counters that she told Biz2Credit on June 22, 2023, that she no longer needed the requested funding, rendering the RSA (and its authorization to file the UCC-1 statement) void before Defendants filed the UCC-1 statement on July 5, 2023. *See* FAC ¶¶ 20, 30-31. That allegation contradicts her original complaint, in which she alleged that she told Biz2Credit on June 22 that she did not require funding <u>until July 12</u> (as opposed to not at all). *See* Dkt. 1 ¶ 15. The Court need not accept allegations in an amended complaint that contradict allegations in a prior complaint. *See Kennedy Funding, Inc. v. Chapman*, No. 09-cv-01957-RS, 2010 WL 2528729, at *4 (N.D. Cal. June 18, 2010). Accordingly, the Court rejects Plaintiff's assertion that she repudiated the RSA on June 22, thereby rendering it void. Thus, the RSA remained in effect on

---

California law applies." *Callan v. Merrill Lynch & Co., Inc.*, No. 09-cv-00566-BEN, 2010 WL 11508843, at *4 n.1. (S.D. Cal. Jan. 22, 2010).

[4] Plaintiff also alleges violations of parallel provisions of the Delaware Commercial Code, while Defendants argue that the New York Commercial Code applies. *See* FAC at 19; Motion at 18-20. Because the relevant provisions of the three state's commercial codes do not differ in any respect material here, the Court will analyze Plaintiff's claim under California law. *See* Cal. Com. Code §§ 9518, 9625; Del. Code tit. 6, §§ 9-518, 9-625; N.Y. U.C.C. Law §§ 9-518, 9-625.

July 5 at the time Defendants filed the UCC-1 statement.

### F. Plaintiff Does Not Sufficiently Allege That Defendants Defamed Her

Plaintiff alleges that Defendants defamed her by filing the UCC lien. *See* FAC ¶ 147. But Plaintiff does not describe any false language contained in that document, and because she authorized Defendants to file the UCC lien in the RSA, the mere filing of that document does not render its content false. These pleading deficiencies defeated the defamation claim of her original complaint, and they do so here as well.[5] *See* Prior Order at 10-11. The Court instructed Plaintiff to predicate any renewed defamation claim on a publication other than the UCC lien, and she has not done so. *See id.* at 11. The Court will therefore dismiss Plaintiff's defamation claim.

### G. Plaintiff Does Not Sufficiently Allege That Defendants Violated The FCA

Plaintiff alleges that Defendants violated the FCA. *See* FAC ¶ 161. But in her Opposition, Plaintiff does not address her FCA claim or oppose any arguments raised in the Motion supporting dismissal of her FCA claim. The Court, therefore, holds that Plaintiff has abandoned her FCA claim. *See, e.g.*, *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005); *Tapia Carmona v. Cnty. of San Mateo*, No. 18-cv-05232-LHK, 2019 WL 4345973, at *7 (N.D. Cal. Sept. 12, 2019); *but see Johnson v. Meta Platforms, Inc.*, No. 22-cv-05691-BLF, 2023 WL 5021784, at *3 (N.D. Cal. Aug. 4, 2023) (declining to deem claims abandoned where plaintiff did not oppose motion to dismiss).[6]

---

[5] Defendants argue that New York law governs the defamation claim, and Plaintiff does not address this issue in her Opposition. *See* Motion at 20-21. The Court need not decide whether California law or New York law applies to the defamation claim, because the law of both states requires that a plaintiff plead falsity, and Plaintiff has failed to do so here. *See Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007); *Davis v. Boeheim*, 24 N.Y.3d 262, 268 (2014).

[6] In *Jenkins*, the Ninth Circuit held that a plaintiff's failure to address two of her claims in opposing a motion for summary judgment constituted abandonment of those claims. *See Jenkins*, 398 F.3d at 1095 n.4. Relying on *Jenkins*, some courts in this district have applied that principle in the context of motions to dismiss. *See, e.g.*, *Liu v. Kaiser Permanente Emps. Pension Plan for Permanente Med. Grp., Inc.*, No. 23-cv-03109-AMO, 2024 WL 3090483, at *7 n.4 (N.D. Cal. June 20, 2024); *Drevaleva v. Ng*, No. 22-cv-01984-EMC, 2022 WL 3974492, at *2 (N.D. Cal. Aug. 31, 2022); *Tapia*, 2019 WL 4345973, at *7. Other courts have declined to follow suit: "[N]othing in *Jenkins* suggests that a plaintiff's failure to oppose a motion to dismiss constitutes abandonment." *Johnson*, 2023 WL 5021784, at *3 (citation omitted). Having considered these disparate opinions, this Court concludes that, while nothing in *Jenkins* suggests that the Ninth Circuit intended its holding to apply in the motion-to-dismiss context, neither does anything in that

Even if Plaintiff had not abandoned her FCA claim, it would still fail. "[A] successful False Claims Act claim requires: '(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due.'" *United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1017 (9th Cir. 2018) (citation omitted). Plaintiff does not offer any non-conclusory allegations that the government "pa[id] out money or forfeited moneys due" based on any knowingly false statements or fraudulent course of conduct of Defendants, as she instead alleges only that Defendants engaged in a "ploy to evade taxes." *See* FAC ¶ 159. That will not do. The Court will therefore dismiss the FCA claim.

### H. Plaintiff May Not Amend The FAC

The Court described Plaintiff's pleading deficiencies in the Prior Order concerning her non-FCA claims and provided specific instructions on how Plaintiff should address those shortcomings in an amended pleading. But the shortcomings remain, as Plaintiff's claims fail for the same reasons as before. Further amendment, therefore, would be futile. *See, e.g.*, *Snapkeys, Ltd. v. Google LLC*, No. 19-cv-02658-LHK, 2020 WL 6381354, at *7 (N.D. Cal. Oct. 30, 2020) (dismissing claim without leave to amend where, *inter alia*, plaintiff "has already failed multiple times to adequately allege a . . . claim"); *Martin v. CSAA Ins. Exch.*, No. 17-cv-04066-MEJ, 2018 WL 1242069, at *4 (N.D. Cal. Mar. 8, 2018) (denying request for leave to amend where, *inter alia*, "Plaintiffs repeatedly failed to cure deficiencies in their pleading"). With respect to Plaintiff's FCA claim, Plaintiff has abandoned that claim, and the Court need not provide leave to amend an abandoned claim. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1131 (N.D. Cal. 2008); *Clark v. Amazon.com, Inc.*, No. 23-cv-00500-JWH, 2023 WL 11053617, at *5 (C.D. Cal. Aug. 10, 2023).

///

---

decision suggest that the Ninth Circuit intended to limit its holding to the summary-judgment context. In this Court's view, the abandonment principle of *Jenkins* applies equally well at the pleading stage; where a plaintiff does not oppose an attempt to dismiss one of their claims but simultaneously does oppose an attempt to dismiss their other claims, a court may infer that the plaintiff has implicitly abandoned that claim whose dismissal it has not opposed.

IV. **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the Motion and **DISMISSES** the FAC **WITHOUT LEAVE TO AMEND**.

**SO ORDERED.**

Dated: July 11, 2024

SUSAN VAN KEULEN
United States Magistrate Judge